THE HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GREGORY MANEMAN, ANNETTE WILLIAMS, CASSANDRA WRIGHT, JAMES HOLLINS, AND PIERRE DONABY, individually and as representatives on behalf of a class of similarly situated persons,<br><br>            Plaintiffs,<br><br>    v.<br><br>WEYERHAEUSER COMPANY, WEYERHAEUSER COMPANY ANNUITY COMMITTEE, WEYERHAEUSER COMPANY ADMINISTRATIVE COMMITTEE, STATE STREET GLOBAL ADVISORS TRUST COMPANY, and JOHN DOES 1-5,<br><br>            Defendants. | No. 2:24-cv-02050-KKE<br><br>**STATE STREET GLOBAL ADVISORS TRUST COMPANY'S MOTION TO DISMISS**<br><br>**NOTE ON MOTION CALENDAR:** MARCH 24, 2025 |

1

# TABLE OF CONTENTS

2

PRELIMINARY STATEMENT ........................................................................ 1

3

BACKGROUND ............................................................................................. 2

4

    I.     SSGA Trust Co. and Its Role With Respect to The Weyerhaeuser PRT

5

          Transaction. .......................................................................................... 2

6

    II.    Plaintiffs' Allegations. ........................................................................ 4

7

ARGUMENT ................................................................................................... 5

8

    I.     Plaintiffs have failed to plead any concrete injury ................................ 5

9

    II.    The Complaint Fails to State a Claim Against SSGA Trust Co. for Breach

10

          of Fiduciary Duty. ................................................................................ 9

11

          A.     Virtually All of the Factual Allegations Postdate the Weyerhaeuser

                 PRT. .......................................................................................... 9

12

          B.     The Complaint Does Not Plausibly Allege that SSGA Trust Co.

13

                 Acted Disloyally. ..................................................................... 11

14

          C.     Plaintiffs Plead No Facts Plausibly Alleging that SSGA Trust Co.

                 Employed an Imprudent Process. .............................................. 13

15

                1.     Plaintiffs' Reliance On Interpretative Bulletin 95-1 Is

16

                     Flawed. .......................................................................... 14

17

                  2.     Athene's Supposed Credit Risk. ...................................... 18

18

                  3.     Athene's Connection to Private Equity And Supposed

                     Financial Risk. ............................................................... 20

19

                  4.     Other Purported Concerns With Athene. ........................ 22

20

          D.     Plaintiffs' Claim of Co-Fiduciary Liability Fails ...................... 23

21

    III.   Plaintiffs' Prohibited Transaction Claim (Count III) Fails as a Matter of

          Law. ................................................................................................... 24

22

CONCLUSION ............................................................................................. 24

23

24

25

26

SSGA TRUST CO.'S MOTION TO DISMISS – ii
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Bloom v. AllianceBernstein L.P.*,
    725 F. Supp. 3d 325 (S.D.N.Y. 2024)...............................................................................13, 23

5

6

*Bracalente v. Cisco Sys., Inc.*,
    2024 WL 2274523 (N.D. Cal. May 20, 2024) ........................................................................14

7

8

*Bussian v. RJR Nabisco, Inc.*,
    223 F.3d 286 (5th Cir. 2000) .................................................................................................15

9

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*,
    497 F.3d 972 (9th Cir. 2007) ..............................................................................................7, 24

10

11

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013)..........................................................................................................5, 6, 8

12

13

*Dorman v. Charles Schwab Corp.*,
    2018 WL 6803738 (N.D. Cal. Sept. 20, 2018) ......................................................................24

14

*FDA v. Alliance for Hippocratic Med.*,
    602 U.S. 367 (2024).............................................................................................................. 5-6

15

16

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)...........................................................................................................9, 16

17

18

*Hughes v. Nw. Univ.*,
    595 U.S. 170 (2022)...........................................................................................................15, 23

19

*Hutchins v. HP Inc.*,
    2025 WL 404594 (N.D. Cal. Feb. 5, 2025) .....................................................................12, 20

20

21

*Kopp v. Klein*,
    894 F.3d 214 (5th Cir. 2018) .................................................................................................12

22

23

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
    323 F.R.D. 145 (S.D.N.Y. 2017) ............................................................................................9

24

*Lee v. Verizon Commc'ns, Inc.*,
    837 F.3d 523 (5th Cir. 2016) .................................................................................................16

25

26

*Matney v. Barrick Gold of N. Am.*,
    80 F.4th 1136 (10th Cir. 2023) .............................................................................................17

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

*Moreno v. Deutsche Bank Ams. Holding Corp.*,
  2016 WL 5957307 (S.D.N.Y. Oct. 13, 2016) .........................................................................24

*O'Shea v. Littleton*,
  414 U.S. 488 (1974).................................................................................................................5

*Patterson v. Morgan Stanley*,
  2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) .........................................................................13

*Quan v. Computer Sciences Corp.*,
  623 F.3d 870 (9th Cir. 2010) ..............................................................................................9, 11

*In re RCN Litig.*,
  2006 WL 1273834 (D.N.J. Mar. 22, 2006)............................................................................19

*Riley v. Murdock*,
  83 F.3d 415 (4th Cir. 1996) ...................................................................................................15

*Robainas v. Metro. Life Ins. Co.*,
  2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015) .........................................................................16

*SEC v. Prakash*,
  718 F. Supp. 3d 1098 (N.D. Cal. 2024) ..................................................................................2

*Singh v. Deloitte LLP*,
  123 F.4th 88 (2d Cir. 2024) ...................................................................................................17

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) .................................................................................................12

*Sulyma v. Intel Corp. Inv. Pol'y Comm.*,
  909 F.3d 1069 (9th Cir. 2018) ...............................................................................................20

*Thole v. U.S. Bank N.A.*,
  590 U.S. 538 (2020)..............................................................................................................5, 8

*Tibble v. Edison Int'l*,
  729 F.3d 1110 (9th Cir. 2013) ...............................................................................................11

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ...................................................................................................2

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996)...............................................................................................................16

*Wehner v. Genentech, Inc.*,
  2021 WL 2417098 (N.D. Cal. June 14, 2021)..................................................................12, 17

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

*White v. Chevron Corp.*,
  2017 WL 2352137 (N.D. Cal. May 31, 2017) ................................................................11, 14

*Winsor v. Sequoia Benefits & Ins. Servs.*,
  LLC, 62 F.4th 517 (9th Cir. 2023) ..............................................................................7

*Wright v. Ore. Metallurgical Corp.*,
  360 F.3d 1090 (9th Cir. 2004) ................................................................................9, 14

*Wright v. SEIU*,
  48 F.4th 1112 (9th Cir. 2022) ..................................................................................6

**Statutes**

ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) ................................................................9

ERISA § 404(a)(1)(A)(ii), 29 U.S.C. § 1104(a)(1)(A)(ii) ..........................................................16

ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) ................................................1, 9, 11, 14

ERISA § 505(a), 29 U.S.C. § 1105(a) ..............................................................................4, 23

ERISA § 406(a), 29 U.S.C. § 1106(a) ..............................................................................24

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) ......................................................................4

ERISA § 502(a)(9), 29 U.S.C. § 1132(a)(9) ......................................................................4

Iowa Code § 521E ..................................................................................................17

Md. Code Regs. 31.09.07.03 ......................................................................................7

N.Y. Ins. Law § 1322 ..............................................................................................17

**Regulations**

29 C.F.R. § 2509.95-1 ..............................................................................................14

29 C.F.R. § 2509.95-1(c) ..........................................................................14, 15, 19

29 C.F.R. § 2509.95-1(d) ..........................................................................................15

49 Fed. Reg. 9494 (Mar. 13, 1984) ..............................................................................24

**Other Authorities**

Athene.com, *Our Business*, https://tinyurl.com/5yyhvh72 ..............................................3

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

*In re Athene Annuity and Life Co., Athene Holding Ltd.*, New York State Dept. of
  Fin. Servs. (Apr. 13, 2020), https://www.dfs.ny.gov/system/files/documents/
  2020/04/ea20200413_consent_order_athene.pdf. ..............................................23

Department of Labor, Employee Benefits Security Administration, *Interpretive
  Bulletin 95-1 Consultation Paper – ERISA Advisory Council* (July 2023),
  https://tinyurl.com/mtyycza8 ...........................................................................3, 6

David G. Eichhorn, *Pension Risk Transfers May be Transferring Risk to
  Beneficiaries*, NISA (Oct. 13, 2022), https://tinyurl.com/mrx8kdsx ....................18

Meg Fletcher, *ELIC'S Collapse Forces Regulatory Changes*, Business Insurance
  (May 9, 1999), https://tinyurl.com/bdzdrsh3 .........................................................3

Government Accountability Office, *Defined Benefit Pension Plans* (Feb. 2012),
  https://www.gao.gov/assets/gao-12-324.pdf ........................................................20

Dale Kintzel, *Social Security Retirement Benefits and Private Annuities*, SSA,
  Off. of Ret. & Disability Policy, Issue Paper No. 2017-01 (May 2017),
  https://tinyurl.com/3p7w9myt ...............................................................................7

Moody's, *Credit Opinion: Athene Holding Ltd.* (Sept. 10, 2024), https://bit.ly/4jQPpVl .............4

NAIC, *NAIC List of Reciprocal Jurisdictions*, https://tinyurl.com/mwvdy263 ...........................22

NAIC, *Risk-Based Capital* (May 9, 2024), https://tinyurl.com/yc88cedr ....................................17

NAIC, Risk Based Capital (RBC) for Insurers Model Act, MO-312-1 (Jan. 2012),
  https://tinyurl.com/45b7ntpb ...............................................................................17

NAIC, *State Insurance Regulators Work to Protect Consumers Who Buy
  Annuities* (Nov. 1, 2020), https://tinyurl.com/5a5hwmkr .......................................8

NAIC, *What is the NAIC and what does it do?*, https://tinyurl.com/mhpy3afz ...............................8

NISA, *Defined Benefit (DB):Pension Risk Management,*
  https://tinyurl.com/3wrkcmhc .............................................................................19

Sergio Padilla, *Moody's: Default rates for private equity-backed companies on
  the rise,* Private Debt Investor (Oct. 14, 2024),
  https://www.privatedebtinvestor.com/moodys-default-rates-for-private-equity-
  backed-companies-on-the-rise ...............................................................................20

Cezary Podkul & Gunjan Banerji, *Inflated Bond Ratings Helped Spur the
  Financial Crisis. They're Back.*, Wall St. J. (Aug. 7, 2019),
  https://bit.ly/4jQX7Ph...........................................................................................10

SSGA TRUST CO.'S MOTION TO DISMISS – vi
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

James M. Poterba, *The History of Annuities in the United States*, Nat'l Bureau of
Econ. Rsch., Working Paper 6001 (1997), https://tinyurl.com/2s4b2npu ...............................3

SEC, *In the Matter of Kroll Bond Rating Agency, LLC Admin. Proc. File No. 3-
20097*, https://www.sec.gov/divisions/enforce/claims/kroll-bond-rating-
agency.htm ...........................................................................................................................10

SEC, Off. of Credit Ratings, *Staff Report on Nationally Recognized Statistical
Rating Agencies*, (Feb. 2024), https://tinyurl.com/32u7eu7d ................................................22

Press Release, SEC, *SEC Charges Two Credit Rating Agencies, DBRS and KBRA,
with Longstanding Recordkeeping Failures* (Sept. 29, 2023),
https://www.sec.gov/newsroom/press-releases/2023-211 ......................................................10

State Street Global Advisors, *DC DNA: How Independent Fiduciary Services
Evolved and What It Means Today* (Oct. 31, 2023), https://tinyurl.com/Ex-28-
STATE-STREET .....................................................................................................................2

Weyerhaeuser.com, *Weyerhaeuser Company Named Top 100 Best Corporate
Citizens* (Mar. 2, 2010), https://tinyurl.com/yc2yhhma .......................................................13

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1

## PRELIMINARY STATEMENT

2      Plaintiffs' challenge to the widespread and legal use of pension risk transfers ("PRTs")

3  should be dismissed for lack of standing because Plaintiffs have received, and will continue to

4  receive, all promised retirement benefits.  Defendant State Street Global Advisors Trust Company

5  ("SSGA Trust Co.")[1] joins Weyerhaeuser's[2] standing arguments and elaborates on Plaintiffs'

6  failure to meet their burden of plausibly alleging an actual and concrete injury in fact.  If the Court

7  agrees, that ends the litigation—without injury there is no standing, and without standing the case

8  must be dismissed.

9      The Complaint should also be dismissed because it fails to state a claim.  To start, virtually

10  all of the allegations that Plaintiffs contend "would have compelled a truly impartial and prudent

11  fiduciary to reject Athene" (Compl. ¶116) involve facts and data that *postdate* the Weyerhaeuser

12  PRT in January 2019.  They therefore shed no light at all on whether SSGA Trust Co. appropriately

13  discharged its fiduciary duties "under the circumstances *then prevailing*"—the standard that

14  ERISA commands.  29 U.S.C. § 1104(a)(1)(B) (emphasis added).  Even if that fatal deficiency

15  could somehow be overlooked, the Complaint contains no plausible allegation that SSGA Trust

16  Co., a professional independent fiduciary that has selected numerous annuity providers for scores

17  of PRTs, acted disloyally in selecting Athene—one of the nation's largest PRT providers—for

18  Weyerhaeuser's partial PRT.  Nor does the Complaint plausibly allege that SSGA Trust Co.'s

19  process for selecting Athene was imprudent; indeed, the Complaint is entirely silent as to that

20  process.  Finally, the Complaint fails to allege any non-exempt prohibited transaction.  For these

21  reasons, and those in Weyerhaeuser's motion, the Complaint should be dismissed.

22

23

24      [1] SSGA Trust Co. is a wholly-owned subsidiary of State Street Bank and Trust Company (which
in turn is a wholly-owned subsidiary of State Street Corporation), and is one of the legal entities that

25  comprises State Street Global Advisors ("SSGA"), the global investment management business of State
Street Corporation.

26      [2] "Weyerhaeuser" refers collectively to Defendants the Weyerhaeuser Company, the Weyerhaeuser
Company Annuity Committee, and the Weyerhaeuser Company Administrative Committee.

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1

## BACKGROUND[3]

2

**I.    SSGA Trust Co. and Its Role With Respect to The Weyerhaeuser PRT Transaction.**

3

State Street Corporation ("State Street Corp.") is a global financial services firm and bank

4

holding company headquartered in Boston.[4]    Its investment management business, SSGA,

5

provides asset management, research, and advisory services to corporations, mutual funds, and

6

other institutional investors.[5]  As of December 31, 2023, SSGA had approximately $4.13 trillion

7

in assets under management ("AUM").[6]  SSGA is not the beneficial owner of these assets.  Rather,

8

these assets are held in trust for the benefit of its clients, the investment funds it advises, and those

9

funds' beneficial owners.[7]

10

SSGA Trust Co.'s Independent Fiduciary Services Team ("IFS") separately offers

11

independent fiduciary services.[8]    Through IFS, SSGA Trust Co. is a leading provider of

12

independent fiduciary services for PRTs and has served as independent fiduciary for over 80 PRTs,

13

including some of the largest on record.[9]

14

PRTs are a secure way to fulfill an employer's pension obligations because annuities are

15

backed by a significant amount of assets, including assets transferred from the original plan, and

16

are managed by regulated insurers who specialize in such products.  Annuity contracts have been

17

18

[3] Weyerhaeuser's motion to dismiss contains additional facts with respect to the Weyerhaeuser Plan; SSGA Trust Co. has endeavored to avoid duplication and therefore limits this section to the facts relevant to SSGA Trust Co.'s additional arguments for dismissal.

19

20

[4] Ex. 4, State Street Corp., Annual Report (Form 10-K) at 1, 6-7 (Feb. 15, 2024).  All "Ex. __" cites are to the exhibits attached to the accompanying Declaration of Jaime A. Santos and all emphasis is added and internal quotations and citations are omitted.  The Court may consider these exhibits because they are either "documents incorporated by reference in the complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see SEC v. Prakash*, 718 F. Supp. 3d 1098, 1105-06 (N.D. Cal. 2024) (taking judicial notice of SEC filings and other public records).

21

22

[5] *Id.* at 7-8, 180.

23

[6] *Id.* at 8.

24

[7] For example, the SPDR Series Trust holds securities (*i.e.*, stocks) in trust for the beneficial interest of the 83 investment funds established under the trust. Ex. 5, SPDR Series Trust Annual Report (Form N-CSR) at 234 (Sept. 7, 2023).

25

[8] *DC DNA: How Independent Fiduciary Services Evolved and What It Means Today*, State Street Global Advisors (Oct. 31, 2023), https://tinyurl.com/Ex-28-STATE-STREET.

26

[9] *Id.* at 2.

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

used widely for over a century to fund pension plan obligations.[10]  They have become even safer after improvements in regulatory oversight prompted by watershed moments such as the collapse of Executive Life Insurance Company (Compl. ¶36) and the 2008 financial crisis.[11]  Today, annuitants benefit from numerous structural protections including strict regulation under state insurance law, separation of assets used to fund annuity payments through a "separate account" structure, reinsurance, and backing by State Guarantee Associations ("SGAs") in the event of the insurer's insolvency.  ERISA Advisory Council, *Consultation Paper on Interpretive Bulletin 95-1*, at 1, 24, 29, 33-35 (July 2023), https://tinyurl.com/mtyycza8 ("*Consultation Paper*") (cited in Compl. ¶48).

Weyerhaeuser decided to transfer some of its pension obligations to an annuity provider through a partial PRT; the Plan fiduciaries hired SSGA Trust Co.'s IFS Team to select an annuity provider.  Compl. ¶23.  In January 2019, SSGA Trust Co. selected Athene Annuity and Life Company ("Athene") as the annuity provider for a $1.5 billion partial PRT for the Weyerhaeuser Plan.  Compl. ¶¶107-110.  Athene is an insurance and retirement services company that, among other things, issues retirement savings products including annuities.[12]  Like multiple other insurers, Athene is owned by a company that also has a private equity arm—here, Apollo Global Management, Inc. ("Apollo").

Athene is subject to the same insurance requirements and oversight by regulators as other insurers and is a recognized leader in the pension annuity field; in 2023, Athene ranked first in pension group annuity sales ($10.4 billion).[13]  As Plaintiffs acknowledge, "Athene maintains an A rating issued by Moody's." Compl. ¶97. That Moody's rating states that "the A1 insurance financial strength (IFS) rating of [the Athene] US and Bermuda-based life insurance operating

---

[10] *See generally* James M. Poterba, *The History of Annuities in the United States*, Nat'l Bureau of Econ. Rsch., Working Paper 6001 (1997), https://tinyurl.com/2s4b2npu.

[11] Meg Fletcher, *ELIC'S Collapse Forces Regulatory Changes*, Business Insurance (May 9, 1999), https://tinyurl.com/bdzdrsh3.

[12] Ex. 7, Athene Holding Ltd. 2023 10-K at 10.

[13] Athene.com, *Our Business*, https://tinyurl.com/5yyhvh72 (last visited Dec. 5, 2024).

1    companies reflects the company's strong market position in its core insurance products"—and

2    Moody's overall "outlook" for Athene is "stable."[14]

3         Once the Weyerhaeuser PRT was executed, Athene became responsible in perpetuity for

4    the monthly payments of plan participants receiving $1,085 or less per month. *Id.* ¶32; Ex. 3,

5    Amendment No. 7 to Weyerhaeuser Pension Plan at 1-3 (Jan. 23, 2019). The Weyerhaeuser PRT

6    was structured such that Athene would pay the pension benefits from "a dedicated separate account

7    and guaranteed by its general account." Ex. 1, Commitment Agreement at 1 (Jan. 23, 2019);

8    Compl. ¶¶73-74 (same). If that separate account were to be overdrawn, Athene must cover the

9    liabilities from its general account; if the general account could not cover the liabilities, then

10   Athene's reinsurers would be on the hook. *Id.*

11        Athene began making monthly payments to Plaintiffs and other Weyerhaeuser retirees in

12   May 2019. Compl. ¶111. Plaintiffs do not allege that Athene has ever missed a payment.

13   **II.    Plaintiffs' Allegations.**

14        Relevant to SSGA Trust Co., Count I alleges that SSGA Trust Co. breached its fiduciary

15   duties of loyalty and prudence by selecting Athene as the annuity provider for the Weyerhaeuser

16   PRT. Compl. ¶139. Plaintiffs do not allege a single fact concerning the process utilized by SSGA

17   Trust Co. in making that selection in January 2019. Rather, they assert that SSGA Trust Co. "was

18   conflicted, and its selection … of Athene was influenced by its relationships with Weyerhaeuser,

19   Athene, and affiliates." *Id.* Counts I and II also alternatively allege that SSGA Trust Co. is liable

20   as Weyerhaeuser's co-fiduciary under 29 U.S.C. § 1105(a), or as a non-fiduciary under 29 U.S.C.

21   §§ 1132(a)(3) and 1132(a)(9). Compl. ¶¶142, 146. Count III asserts that SSGA Trust Co. engaged

22   in a prohibited transaction under ERISA on the theory that "Athene was a party in interest because

23   it provided services to the Plan," and "received more than reasonable compensation for its

24   services." *Id.* ¶¶151-153.

25

26

---

[14] Moody's, *Credit Opinion: Athene Holding Ltd.* at 1 (Sept. 10, 2024), https://bit.ly/4jQPpVl.

SSGA TRUST CO.'S MOTION TO DISMISS – 4
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1

**ARGUMENT**

2

**I.    Plaintiffs have failed to plead any concrete injury.**

3        Plaintiffs lack standing because they "have failed to plausibly and clearly allege a concrete

4    injury" as a result of the partial PRT.  *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544 (2020).  As

5    Weyerhaeuser's MTD explains (at 13-14), Plaintiffs were "promised … a guaranteed monthly

6    benefit payment during retirement" (Compl. ¶3), and following the PRT, they have continued to

7    receive that monthly benefit and are still "legally entitled to receive the same monthly payments

8    for the rest of their lives."  *Thole*, 590 U.S. at 547.  Accordingly, under *Thole*, Plaintiffs lack

9    standing to sue for an alleged ERISA violation that has caused them no harm.  As Weyerhaeuser

10   further explains (at 14), Plaintiffs' diminution-in-present-day-value theory of standing is legally

11   defective under *Thole* and other precedents, and their allegation of a risk of a future default by

12   Athene is insufficient to plausibly establish an "imminent" injury in fact.

13       SSGA Trust Co. joins Weyerhaeuser's standing arguments in full and further elaborates on

14   Plaintiffs' failure to adequately plead injury-in-fact based on the risk of a future default by Athene.

15   To avoid *Thole*, Plaintiffs assert that "Athene's risky… activities may render it insolvent and thus

16   unable to perform its obligations to Plaintiffs" at some point in the future.  Compl. ¶113.  The

17   problem with that future-injury theory of standing is two-fold.  To start, the Supreme Court has

18   "repeatedly reiterated" that where a plaintiff does not rely on *past* injury but rather the threat of

19   *future* injury, "that threatened injury must be *certainly impending* to constitute injury in fact," and

20   "allegations of *possible* future injury are not sufficient."  *Clapper v. Amnesty Int'l USA*, 568 U.S.

21   398, 409-410 (2013) (emphasis in original) (brackets omitted); *see also O'Shea v. Littleton*, 414

22   U.S. 488, 494 (1974) (plaintiffs must allege they are "'immediately in danger of sustaining some

23   direct injury' as the result of the challenged" conduct).  Plaintiffs' allegations that various activities

24   "may render [Athene] insolvent" at some point (Compl. ¶113) do not satisfy this standard.

25       To satisfy the injury-in-fact requirement, "the injury must be actual or imminent, not

26   speculative—meaning that the injury must have already occurred or be likely to occur soon."  *FDA*

*v. Alliance for Hippocratic Med.*, 602 U.S. 367, 381 (2024).  Where the allegation of future injury "relies on a highly attenuated chain of possibilities," a plaintiff cannot plausibly establish standing. *Clapper*, 568 U.S. at 410; *see also Wright v. SEIU*, 48 F.4th 1112, 1119 (9th Cir. 2022) (rejecting assertion of possible future injury as "too speculative to confer standing").  And here, far from facing "certainly impending" harm, Plaintiffs have myriad layers of protections to ensure they receive their benefits.

*First*, there is Athene's essential contractual promise to pay Plaintiffs their benefits, backed by Athene itself, which Plaintiffs concede has a surplus and a positive surplus-to-liability ratio. Compl. ¶58.

*Second*, Weyerhaeuser transferred plan assets to Athene, which are held in a "separate account," to fund the annuity.  Compl. ¶73.  Accordingly, that separate account would have to become "insufficient to cover its liabilities" for there to even be a *chance* of Plaintiffs not receiving their benefits.  *Id.*  But Plaintiffs plead no facts plausibly alleging that the health of the separate account is in danger of being unable to pay their pension benefits, let alone imminent danger. Indeed, Plaintiffs offer *no* allegations regarding that separate account—they nowhere allege it is being poorly managed or imprudently invested.[15]

*Third*, Athene's "separate account" structure insulates the assets that fund its obligations to Plaintiffs from Athene's general liabilities.  Compl. ¶74.  And while insurers cannot support their "general account" liabilities using "separate account" assets, "general account" assets *guarantee* "separate account" obligations, adding another layer of protection.  Ex. 1, Commitment Agreement at 1.  As Plaintiffs acknowledge, *both* the separate account and Athene's *general account* would need to become insolvent for Plaintiffs' benefits to be jeopardized.  Compl. ¶77; *Consultation Paper* 29.  The odds of both those insolvencies occurring can only be described as slim given the Complaint's acknowledgment that "Athene maintains an A rating issued by

---

[15] Plaintiffs offer a vague and conclusory allegation about the investment of "[a]nnuities issued by Athene" generally, Compl. ¶5, but they make no allegations regarding the investment of the separate account backing their annuities.

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

Moody's" and that, historically, 95% of corporations with that rating do not default over a 20-year horizon. *Id.* ¶97. The Court should not "accept as true conclusory allegations" about the theoretical possibility of default "which are contradicted by documents referred to in the complaint." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). The facts alleged do not provide "a sufficient basis to draw the inference" that Athene faces substantial risk of default. *Winsor v. Sequoia Benefits & Ins. Servs.*, LLC, 62 F.4th 517, 525 (9th Cir. 2023).[16]

*Fourth*, strict state insurance regulations require Athene to maintain specified reserve levels to adequately support its annuity obligations and imposes auditing requirements to ensure compliance.[17]

*Fifth*, even if those state insurance regulations proved inadequate and *both* the relevant separate account and Athene's general account somehow failed, Athene protects annuitants by using reinsurance. Compl. ¶73.

And *sixth*, if that reinsurance somehow would not cover Plaintiffs' entire monthly payments, Plaintiffs' benefits are guaranteed by their state guaranty associations ("SGAs"), which provide at least $250,000 in coverage for each annuitant. *Id.* ¶¶34-35. Because the *maximum* monthly payment for each named Plaintiff is $1,085,[18] the SGAs would guarantee coverage for *at least* 19 years following any insurer insolvency (even assuming *zero dollars* are available from the separate account, Athene's general account, *and* reinsurance coverage). Only after that winding path of contingencies could Plaintiffs—all of whom have been retired for many years—experience a missed payment.

---

[16] As further discussed *infra*, pp. 18-23, the Complaint's allegations purporting to show that Athene is at risk do not plausibly support that inference.

[17] *E.g.*, Md. Code Regs. 31.09.07.03; *see* Dale Kintzel, *Social Security Retirement Benefits and Private Annuities* 6, SSA, Off. of Ret. & Disability Policy Issue Paper No. 2017-01 (May 2017), https://tinyurl.com/3p7w9myt.

[18] Ex. 3 (Amendment No. 7) at 3.

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1    Plaintiffs' substantial risk-of-default theory thus relies on a chain of speculative

2    possibilities: (i) Athene would have to so egregiously mismanage the assets in *both* the separate

3    account that funds the Weyerhaeuser PRT *and* its general account that it could not pay Plaintiffs'

4    benefits; (ii) that mismanagement would have to escape insurance regulators; (iii) Athene's

5    reinsurers would have to experience egregious mismanagement and failure; and (iv) the SGAs

6    insuring Plaintiffs' benefits would have to fail.[19]  Plaintiffs do not allege facts suggesting that *any*

7    of these possibilities—much less *all* of them—is likely. This is precisely the type of "highly

8    attenuated chain of possibilities" that *Clapper* held "does not satisfy the requirement that

9    threatened injury must be certainly impending." 568 U.S. at 410.

10    Finally, Plaintiffs' attempt to allege a certainly impending injury by comparing Athene to

11    other insurers, like Executive Life, falls flat. Compl. ¶¶36-42, 80-88.  For one thing, Plaintiffs fail

12    to acknowledge the significant improvements in state regulation since the troubles with Executive

13    Life three decades ago, including overhauling the standardized valuation techniques used by NAIC

14    (the standard-setting organization governed by the chief insurance regulators of all 50 states[20]), the

15    adoption of risk-based capital requirements, and the enactment of individual state investment laws

16    addressing investment risk.  *See supra* note 11, at 3.

17    As Plaintiffs acknowledge, the regulatory landscape continues to evolve in light of changes

18    in the industry as a result of highly engaged and responsive regulators.[21] Compl. ¶68.  Indeed,

19    Plaintiffs' own examples of contemporary troubled insurers actually evidence highly active

20    regulators who stepped in to protect annuitants from losses.  Compl. ¶¶81-83.  Plaintiffs explain

21    that regulators identified deficiencies in Columbian Life's and PHL Variable's reserves and

---

22    [19] Notably, *Thole* indicates that the risk-of-default theory "might not be available" at all for those "whose benefits are guaranteed in full" by PBGC—the SGA equivalent. 540 U.S. at 546 n.2.

23    [20] *What is the NAIC and what does it do?*, NAIC, https://tinyurl.com/mhpy3afz (last visited Dec.

24    5, 2024). Plaintiffs repeatedly cite NAIC's analysis and standards to support their allegations. *E.g.*, Compl. ¶¶49, 68, 98, 99.

25    [21] For example, NAIC continually updates its model regulations and a high percentage of States adjust their own laws to mirror those changes. *See* NAIC, *State Insurance Regulators Work to Protect*

26    *Consumers Who Buy Annuities* (Nov. 1, 2020) ("40 states have now adopted the NAIC's February 2020 updates" to its model regulation), https://tinyurl.com/5a5hwmkr.

1   ultimately took steps to rehabilitate those insurers—but conspicuously fail to allege that the

2   annuitants experienced any financial loss whatsoever.  Instead, Plaintiffs vaguely allege that

3   "policyholders remain at substantial risk."  Compl. ¶82.  Thus, Plaintiffs' suggestion that history

4   will soon repeat itself with another Executive-Life type collapse is, understood in context,

5   particularly implausible.

6          For these reasons, and as further explained in Weyerhaeuser's motion, the Complaint

7   should be dismissed for lack of standing.

8   **II.    The Complaint Fails to State a Claim Against SSGA Trust Co. for Breach of
             Fiduciary Duty.**

9          Count I alleges that SSGA Trust Co. violated ERISA § 404(a)(1)(A) (duty of loyalty) and

10  404(a)(1)(B) (duty of prudence), 29 U.S.C. § 1104(a)(1)(A), (B).  Compl. ¶¶135-139.  The

11  Complaint fails to state a claim against SSGA Trust Co. for breach of either duty.

12         **A.  Virtually All of the Factual Allegations Postdate the Weyerhaeuser PRT.**

13         It is blackletter law that "the content of the duty of prudence turns on 'the circumstances

14  ... prevailing' at the time the fiduciary acts." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409,

15  425 (2014) (quoting 29 U.S.C. § 1104(a)(1)(B)).  "A court's task in evaluating a fiduciary's

16  compliance with this standard is to inquire 'whether the individual trustees, *at the time they*

17  *engaged in the challenged transactions*, employed the appropriate methods to investigate the

18  merits of the investment and to structure the investment.'"  *Wright v. Ore. Metallurgical Corp.*,

19  360 F.3d 1090, 1097 (9th Cir. 2004) (emphasis added; citation omitted); *see also Leber v.

20  Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 157 (S.D.N.Y. 2017) (duty of loyalty is

21  similarly process-based because the standard for evaluating a breach "asks whether the fiduciary

22  took 'all steps necessary to prevent conflicting interests from entering into the decision-making

23  process'" (citation omitted)).  Thus, a breach cannot be established through "hindsight."  *Quan v.

24  Computer Sciences Corp.*, 623 F.3d 870, 884-85 (9th Cir. 2010), *overruled on other grounds by

25  Dudenhoeffer*, 573 U.S. 409.

26

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

Plaintiffs' claim of fiduciary breach fails because it is a prototypical example of hindsight pleading. The alleged breach—selecting Athene—occurred in January 2019. Compl. ¶107. Yet the Complaint alleges effectively nothing about the state of the world as of January 2019. It purports to raise various supposedly troubling facts about Athene and Apollo that a prudent fiduciary would have investigated—for example, it claims that the growth rate of Athene's total liabilities "over the past five years" compared with its surplus eclipsed the growth rate of "[o]ther peer insurers" and that "[a] diligent and thorough investigation" by fiduciaries "would have disqualified Athene … based on these factors alone." Compl. ¶61. But "these factors" and the other supposed risk factors alleged *postdate* the PRT at issue. *See also, e.g.*, Compl. ¶¶52-53 (Apollo merging with Athene in 2022), ¶55 (Athene's Collateralized Loan Obligations in 2023), ¶¶58-61 (Athene's surplus-to-liability ratio in 2023), ¶¶62-64 (Athene's "risky assets" in 2022 and 2023), ¶65 (Athene's "affiliated investments" "[f]rom 2019 through 2023"), ¶¶68-69 (concerns expressed by regulators "[j]ust this year, in March 2024"); ¶70 (Athene's reinsurance to captive affiliates in 2023), ¶¶71-74 (Athene's Modified Coinsurance transactions in 2022 and 2023), ¶76 (Athene's transfer activity among affiliates in 2021), ¶¶80-88 (problems faced by purportedly similar insurance companies in 2024), ¶¶89-95 (2022 report from NISA Investment Advisors purportedly establishing appropriate and inappropriate candidates for PRT annuities as of late 2022), ¶99 (August 2019 article in Wall Street Journal),[22] ¶100 (SEC fines to two ratings agencies in 2020 and 2023),[23] ¶101 (unrelated penalty paid by Athene to New York regulators in 2020), ¶103 (listing SSGA Trust Co.'s parent corporation's holdings in Apollo at various times after the Weyerhaeuser PRT). Indeed, the only Athene-related allegation that precedes the PRT is the allegation that Athene sold its life insurance business in 2013—which Plaintiffs do not even

---

[22] Cezary Podkul & Gunjan Banerji, *Inflated Bond Ratings Helped Spur the Financial Crisis. They're Back.*, Wall St. J. (Aug. 7, 2019), https://bit.ly/4jQX7Ph.

[23] SEC, *In the Matter of Kroll Bond Rating Agency, LLC Admin. Proc. File No. 3-20097*, https://www.sec.gov/divisions/enforce/claims/kroll-bond-rating-agency.htm; Press Release, SEC, *SEC Charges Two Credit Rating Agencies, DBRS and KBRA, with Longstanding Recordkeeping Failures* (Sept. 29, 2023), https://www.sec.gov/newsroom/press-releases/2023-211.

SSGA TRUST CO.'S MOTION TO DISMISS – 10
(No. 2:24-cv-02050-KKE)

Fennemore Craig, P.C.
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1  attempt to argue would have put fiduciaries on notice in 2019 that Athene was an imprudent option

2  for a *non-life-insurance* product. Compl. ¶78.

3      In short, Plaintiffs allege nothing relevant about Athene or Apollo as of January 2019, apart

4  from admitting that "State Street held no publicly traded shares in Apollo" at that time. *Id.* ¶103.

5  Stripped of the factual allegations that postdate the Weyerhaeuser PRT, almost nothing remains.

6  But the statute and case law are clear: because fiduciaries' actions are judged based on "the

7  circumstances then prevailing," 29 U.S.C. § 1104(a)(1)(B), factual developments occurring *after*

8  the relevant fiduciary decision cannot support a claim for breach, *see Tibble v. Edison Int'l*, 729

9  F.3d 1110, 1136 (9th Cir. 2013) ("hindsight is the wrong metric for evaluating fiduciary duty"),

10  *vacated in unrelated part,* 575 U.S. 523 (2015); *White v. Chevron Corp.*, 2017 WL 2352137, at

11  *20-21 (N.D. Cal. May 31, 2017) (dismissing fiduciary-breach claim premised on "hindsight

12  judgments"), *aff'd*, 752 F. App'x 453 (9th Cir. 2018); *Quan*, 623 F.3d at 884-85 (similar).

13  Plaintiffs' fiduciary-breach claims can be dismissed for this reason alone.

14      **B. The Complaint Does Not Plausibly Allege that SSGA Trust Co. Acted Disloyally.**

15      Plaintiffs' claim for disloyalty also fails for an independent reason: it is based on

16  conclusory assertions that "State Street was conflicted, and its selection … of Athene was

17  influenced by its relationships with Weyerhaeuser, Athene, and affiliates." Compl. ¶139. The

18  premise for this assertion: that SSGA Trust Co. was "one of the largest shareholders of Apollo"

19  and therefore "had a financial incentive to use Athene as the annuity provider in PRTs." *Id.* ¶121.

20  The fundamental problem with this theory, however, is that Plaintiffs do not allege that SSGA

21  Trust Co. had any relationship with Athene or its affiliates (*e.g.*, Apollo) prior to January 2019. In

22  fact, it affirmatively alleges that "[p]rior to the PRT transaction at issue, State Street held *no*

23  *publicly traded shares in Apollo*." *Id.* ¶103 (emphasis added). It also acknowledges that Athene

24  did not become a subsidiary of Apollo until two years *after* the Weyerhaeuser PRT. *Id.* ¶52. Thus,

25  the purported predicate for Plaintiffs' inference of disloyalty is belied by the Complaint's own

26

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1    allegations. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("[A]

2    plaintiff can … plead himself out of a claim" by pleading contradictory facts).

3        Plaintiffs' remaining theory of disloyalty by SSGA Trust Co. is predicated on a supposed

4    "conflicted" relationship with its "corporate partner," Weyerhaeuser. Compl. ¶139. But the

5    Complaint fails to plead any factual basis for such a conflict.

6        "To state a claim for breach of the duty of loyalty, the complaint must allege facts from

7    which it plausibly can be inferred that the Plan's fiduciaries *subjectively intended* to benefit

8    themselves or a third party at the expense of the Plan's participants." *Wehner v. Genentech, Inc.*,

9    2021 WL 2417098, at *10 (N.D. Cal. June 14, 2021) (emphasis added). Allegations supporting

10   "at most the *potential* for a conflict of interest" do not state a claim for disloyalty, because "the

11   'potential for a conflict, without more, is not synonymous with a plausible claim of fiduciary

12   disloyalty.'" *Id.* at *11 (citation omitted); *see also Kopp v. Klein*, 894 F.3d 214, 222 (5th Cir.

13   2018) (declining to "infer that the Defendants acted with inappropriate motivations because they

14   stood to gain financially from [the employer's] success"). Thus, "a plaintiff seeking to establish a

15   claim of disloyalty under ERISA must provide specific facts that move the needle on his claim

16   from 'speculative' to 'plausible.'" *Hutchins v. HP Inc.*, 2025 WL 404594, at *5 (N.D. Cal. Feb.

17   5, 2025).

18       The Complaint does not plead those specific facts. Plaintiffs' assertion that SSGA Trust

19   Co. was "conflicted" is apparently based on the allegation that its parent company, SSGA, "has

20   held a substantial ownership interest in Weyerhaeuser's publicly traded securities," Compl. ¶102,

21   and thus "had an interest in favoring Weyerhaeuser by selecting an annuity provider that provided

22   reduced premium payments …, thereby providing a direct financial benefit to Weyerhaeuser and

23   its shareholders." *Id.* ¶106. This theory fails for two reasons.

24       ***First***, SSGA's purported Weyerhaeuser "holdings" in fact belong to SSGA-advised *funds*;

25   SSGA is merely the nominal holder on behalf of its clients, who are the beneficial owner of the

26   shares. *See supra* p. 2. Accordingly, SSGA had no economic interest in the share price of

SSGA TRUST CO.'S MOTION TO DISMISS – 12
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

Weyerhaeuser's stock. Moreover, over 98% of SSGA's $2.5 *trillion* in equity assets under management are held in index funds,[24] as to which the portfolio manager (SSGA) invests in the securities comprising an underlying index (like the Russell 1000 Index) that is generated by a third party (Russell). And Weyerhaeuser is a component of the Russell 1000 Index.[25] In other words, *SSGA* doesn't choose to invest in Weyerhaeuser stock; Russell does and could change its Index's holdings to add or remove whatever stocks it deems appropriate. Given this context, it simply is not plausible to suggest that SSGA acted out of corporate favoritism. *See, e.g.*, *supra* n.7, at 2.

**Second**, courts routinely hold that such "incidental" benefits arising from "a common business relationship" do not support an inference of disloyalty. *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *14 (S.D.N.Y. Oct. 7, 2019) ("[T]he mere fact that Morgan Stanley might incidentally benefit from its relationship with BlackRock is not enough to raise an inference of disloyalty by Defendants."); *see also Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 337 (S.D.N.Y. 2024) (similar).

"Put simply, the mere existence of a business relationship between two large financial institutions is not enough to lift Plaintiffs' otherwise deficient disloyalty claims above the bar set by *Twombly*." *Patterson*, 2019 WL 4934834, at *14. The same is true here of Plaintiffs' allegations that SSGA Trust Co. and Weyerhaeuser have a "corporate partner[ship]." Compl. ¶139. Plaintiffs fail to plausibly allege anything more than a *potential* conflict arising from SSGA Trust Co.'s parent company's nominal holdings. Accordingly, this claim must be dismissed.

### C. Plaintiffs Plead No Facts Plausibly Alleging that SSGA Trust Co. Employed an Imprudent Process.

Plaintiffs also allege that SSGA Trust Co. imprudently selected Athene because, based on "objective criteria and relative to other providers in the market," SSGA Trust Co. failed to select the "safest annuity available," which, they claim, is required under the DOL's Interpretive Bulletin

---

[24] Ex. 4, State Street Corp., Annual Report (Form 10-K) at 8, 70 (Feb. 15, 2024).

[25] Ex. 13, *Weyerhaeuser Company Named Top 100 Best Corporate Citizens*, Weyerhaeuser.com (Mar. 2, 2010), https://bit.ly/4hvDNWg (Weyerhaeuser listed "among the large-cap Russell 1000 companies").

95-1 ("IB 95-1"), 29 C.F.R. § 2509.95-1.  Compl. ¶¶138-139.  Even aside from the temporal disconnect between Plaintiffs' claim and allegations, *see supra* pp. 9-11, Plaintiffs' conclusory allegations do not plausibly raise an inference of imprudence.  To the contrary, the Complaint affirmatively shows that the choice was squarely consistent with decisions made by other fiduciaries in like circumstances, in keeping with industry standards.

ERISA's prudence obligation requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  As noted above, the relevant question is not whether the outcome was optimal, but rather whether the fiduciary *process* for reaching a decision was sound. *See Wright*, 360 F.3d at 1097; *supra* p. 9.  "Plaintiffs may state a breach of the duty of prudence either through direct allegations of the fiduciary's 'knowledge, methods, or investigations at the relevant times' or 'circumstantial factual allegations from which the Court may reasonably 'infer from what is alleged that the process was flawed.'"  *Bracalente v. Cisco Sys., Inc.*, 2024 WL 2274523, at *5 (N.D. Cal. May 20, 2024) (emphases and brackets omitted) (citation omitted).

Here, the Complaint does not contain a single allegation concerning SSGA Trust Co.'s process for selecting Athene.  Instead, Plaintiffs rely on speculative and conclusory allegations about Athene, which they say support an inference that its selection by a leading, professional independent fiduciary could not have been the product of a prudent decision-making process. These allegations are insufficient to raise an inference of imprudence because they plead no facts "showing that the process by which the fiduciaries chose [Athene] was somehow flawed or imprudent."  *White*, 2017 WL 2352137, at *11.

### 1.  Plaintiffs' Reliance On Interpretative Bulletin 95-1 Is Flawed.

The only authority Plaintiffs cite in support of their prudence claim is the DOL's non-binding guidance in IB 95-1, which sets forth a non-exhaustive list of six factors fiduciaries "should consider" in selecting an annuity provider for a PRT.  *See* 29 C.F.R. § 2509.95-1(c).

1    Tellingly, Plaintiffs do not allege that  SSGA Trust Co. failed to consider the IB 95-1 (or other)

2    factors.  Instead, Plaintiffs focus on language in IB 95-1 that, they claim, requires fiduciaries "to

3    obtain the 'safest annuity available.'"  Compl. ¶26.  They are incorrect.

4        ***First***, "no federal court has adopted" the "'safest available' standard" Plaintiffs proffer.

5    *Riley v. Murdock*, 83 F.3d 415, 415 (4th Cir. 1996) (unpublished).  Indeed, that interpretation is

6    unmoored from ERISA's text, which contemplates a wide "range of reasonable judgments a

7    fiduciary may make" for any given decision.  *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022).  A

8    prescriptive, outcome-oriented "safest annuity available" rule contravenes ERISA's flexible,

9    process-based standard, which is why courts have rejected it as inconsistent with the statutory text.

10   *See Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 297-298 (5th Cir. 2000).  This Court should not

11   be the first to adopt it.

12       ***Second***, even IB 95-1 expressly states that the purported "safest" provider need not be

13   chosen if, "under the circumstances it would be in the interests of participants and beneficiaries to

14   do otherwise."  29 C.F.R. § 2509.95-1(c).  *See also id.* § 2509.95-1(d) ("there are situations where

15   it may be in the interest of the participants and beneficiaries to purchase other than the safest

16   available annuity").  A partial PRT like Weyerhaeuser's provides one such obvious situation in

17   which taking costs into account makes particularly good sense.  Here, the Plan was not terminated

18   in connection with the PRT, and SSGA Trust Co. owed fiduciary duties to Plan participants whose

19   benefit obligations were not assumed by Athene and who remained in the Plan.[26]  If, as Plaintiffs

20   conclusorily suggest,[27] Athene charged less than its competitors (Compl. ¶¶122-125), the resulting

21   savings would necessarily benefit those participants who remained in the Plan after the PRT and

22   for whom the remaining Plan assets would pay their benefits in retirement.  Indeed, taking costs

23   into account is demonstrably consistent with ERISA's fiduciary obligations to the participants

---

24       [26] Ex. 2, SSGA Trust Co. Agreement § 2(ii) (SSGA Trust Co. must "[r]epresent the interests of the

25   Plan and ***all of its participants***") (emphasis added).

26       [27] It is conspicuous that, in a lawsuit repeatedly criticizing the purported selection of an annuity
     based on cost rather than safety, Plaintiffs' Complaint provides *no* allegations regarding the comparative
     costs of available annuities.

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1    remaining in the Plan not to incur unreasonable expenses in effecting the PRT.  *See* 29 U.S.C.

2    § 1104(a)(1)(A)(ii) (a fiduciary shall "defray[] reasonable expenses of administering the plan");

3    *see also Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996) (fiduciaries "need to preserve assets to

4    satisfy future, as well as present, claims" and must consider "the interests of all beneficiaries");

5    *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 540-541 (5th Cir. 2016) (discussing competing

6    claims of plan transferees and those remaining in the plan premised in part on the potential for

7    incurring unreasonable expenses in purchasing annuity contracts).

8        ***Third***, Plaintiffs' allegations about Athene's unsuitability are largely untethered to the

9    actual IB 95-1 factors.  Plaintiffs allege that unnamed "[i]ndustry professionals" focus on four

10   "prevalent factors" in assessing an insurer's risk profile that do not appear in IB 95-1.  Compl. ¶57.

11   And where Plaintiffs challenge Athene's suitability based on factors that do appear in the Bulletin,

12   their allegations are implausible.  For example, Plaintiffs challenge the adequacy of the "level of

13   [Athene's] capital and surplus" (IB 95-1 factor 3) by claiming that Athene had a low surplus-to-

14   liability ratio.  *Id.* ¶¶45, 58-61.  But Plaintiffs do not allege that surplus-to-liability ratio is a

15   commonly used industry metric.  Rather, an insurer's risk-based capital ratio (RBC) is the primary

16   measure by which insurance regulators evaluate the capital adequacy of insurers.  *See Robainas v.*

17   *Metro. Life Ins. Co.*, 2015 WL 5918200, at *1 (S.D.N.Y. Oct. 9, 2015).  Plaintiffs do not even

18   attempt to allege that Athene's RBC was inadequate.  Nor could they: the Commitment Agreement

19   includes an express representation that Athene's RBC "is at least 350%," as calculated "consistent

20   with the requirements and methodologies prescribed under Iowa law."[28]  And Athene's recent SEC

21   filings show $26 billion in regulatory capital and a RBC ratio of 416%,[29] which is double the

22

23

24

25

26        [28] Ex. 1, Commitment Agreement §§ 7(a)(xi), 9(iii).
          [29] Ex. Ex. 7, Athene Holding Ltd. 2023 10-K at 80-81, 108.

SSGA TRUST CO.'S MOTION TO DISMISS – 16
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1    amount required by the NAIC model statute adopted by Iowa and New York[30] and exceeds the

2    RBC ratios of other large pension annuity providers.[31]

3        Even assuming that surplus-to-liability ratio is relevant, Plaintiffs' allegations offer an

4    improper apples-to-oranges comparison.  Plaintiffs allege that the surplus-to-liability ratio of

5    Athene Annuity and Life Co. (*i.e.*, one subsidiary of Athene Holding Ltd.)—which, they claim, is

6    "calculated by dividing an insurer's surplus by its liabilities"—was 1.44% as of year-end 2023,

7    Compl. ¶¶56, 58,[32] which they say compares unfavorably to the ratio of several "peer insurers,"

8    including New York Life, which "maintained a surplus-to-liability ratio of 12.24%." *Id.* ¶58.  But

9    Plaintiffs' 12.24% figure is based on New York Life Insurance Company, which is a *parent*

10   *company* that operates several insurance subsidiaries, including New York Life Insurance and

11   Annuity Company.[33]  This sleight of hand is no mistake: Parent Athene Holding Ltd.'s 2023

12   surplus and liabilities were $21.8 billion and $279 billion, respectively,[34] resulting in a surplus-to-

13   liability ratio of 7.8%, which exceeds the national average and the ratios of Nationwide Life

14   Insurance Company (6.77%) and Pacific Life Insurance Company (6.50%) alleged by Plaintiff.

15   Compl. ¶58.   In short, Plaintiffs surplus-to-liability allegation is an "apples to oranges"

16   comparison, which courts have consistently held cannot support any inference of imprudence

17   under ERISA.  *See, e.g.*, *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1149 (10th Cir. 2023);

18   *Singh v. Deloitte LLP*, 123 F.4th 88, 94 (2d Cir. 2024); *Wehner*, 2021 WL 2417098, at *10.

---

19   ³⁰ Ex. 21, NAIC, Risk-Based Capital (May 9, 2024); Ex. 22, NAIC Risk Based Capital (RBC) for

20   Insurers Model Act, MO-312-1 (Jan. 2012); *see* Iowa Code § 521E; N.Y. Ins. Law § 1322.

     ³¹ *See* Ex. 24, MetLife, Inc. 2023 10-K at 18 (risk-based capital ratio of 380%); Ex. 25, Prudential

21   Fin'l, Inc. 2023 10-K at 122 (risk-based capital ratio of 383%).

     ³² It is clear from publicly-available documents that the 1.44% surplus-to-liability ratio that

22   Plaintiffs attribute to "Athene" (Compl. ¶58) is the surplus-to-liability ratio for subsidiary Athene Annuity

23   and Life Co., whose reported surplus and liabilities as of year-end 2023 were $2,865,879,257 and
     $199,104,571,460, respectively, resulting in the 1.44% ratio Plaintiffs allege.  Ex. 8, Fourth Quarter 2023
     Statutory Financial Statement for Athene Annuity and Life Company at 3.

24   ³³ Ex. 9, New York Life Insurance Company Audited Financial Statements (December 31, 2023),

25   https://tinyurl.com/NY-Life-financials, at 3 (reporting total surplus of $25.3 billion and total liabilities of
     $206.6 billion); *see also id.* at 8, 97, 101, 102 ("New York Life Insurance Company … and its subsidiaries

26   offer a wide range of insurance and investment products.").

     ³⁴ Ex. 7, Athene Holding Ltd. 2023 10-K at 108, 122-123.

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1    Similarly, Plaintiffs allege "on information and belief" that Athene's separate account used

2    to pay Weyerhaeuser retirees (IB 95-1 factor 5) "may also be used to support Athene's payment

3    obligations under other, separate [group annuity contracts] issued by Athene." Compl. ¶74. This

4    allegation does nothing to undermine the security of Athene's separate account. Regulatory filings

5    show that Athene's separate account maintains a surplus of $875 million in excess of the $50

6    billion it holds to cover liabilities.[35] In other words, Athene's separate account has on hand today

7    the money necessary to cover all of its future obligations under separate group annuity contracts,

8    and then some.

9                    **2.  Athene's Supposed Credit Risk.**

10    Plaintiffs allege that SSGA Trust Co.'s process must have been deficient based, in part, on

11    an October 2022 report authored by NISA Investment Advisors—which, again, post-dated the

12    PRT transaction. Compl. ¶¶89-97. The NISA report purportedly quantifies a 14% economic loss

13    for Athene PRT beneficiaries as a result of Athene's purported "credit risk." Compl. ¶89. NISA

14    quantifies this supposed credit risk by taking a given insurance company's bond spread and

15    subtracting the bond spread of New York Life (NISA's preferred provider). *Id.* This analysis is

16    not relevant here. Despite acknowledging that the "use of a separate account will indeed improve

17    the credit risk of all the insurers [analyzed by NISA], assuming each is willing to offer that

18    additional safeguard," the NISA report does not even attempt to measure risk for such products or

19    inquire whether all the insurers it analyzed provide the separate account feature.[36] Because Athene

20    utilizes a separate account to pay Weyerhaeuser retirees, the NISA report does not offer an "apples-

21    to-apples" comparison that could support any inference of imprudence. *See supra* p. 6.

22    Moreover, the NISA Report offers a single data point that is subject to significant

23    fluctuation, and therefore is not probative of the absence of a prudent process—particularly one

24        [35] *See* Ex. 14, Ann. Stmt. of the Condition and Affairs of the Sep. Accts. of Athene Annuity & Life
Co. at 3, line 21 (Dec. 31, 2023).

25        [36] Ex. 10, David G. Eichhorn, *Pension Risk Transfers May be Transferring Risk to Beneficiaries*,
NISA (Oct. 13, 2022), https://tinyurl.com/mrx8kdsx ("Calculating the adjusted ELB [for separate-account
26    annuities] is outside the scope of this paper ….") (cited in Compl. ¶¶89-95).

SSGA TRUST CO.'S MOTION TO DISMISS – 18
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1    that *preceded* by years the date of the NISA analysis.  For example, NISA's December 2024 report

2    shows that the supposed "loss" from Athene has declined nearly two-thirds, from 14% in 2022

3    (Compl. ¶¶89-90) to 4.5% in 2024.[37]  That fluctuation undermines Plaintiffs' reliance on this

4    metric, and it especially undermines any inference to be drawn from an outdated number.

5    Moreover, NISA's December 2024 report identifies Prudential as NISA's current preferred

6    provider—yet, two weeks after this Complaint was filed, Plaintiffs' counsel separately sued SSGA

7    Trust Co. for selecting *Prudential* for a different PRT.  *See* Compl., *Dempsey v. Verizon*, No. 1:24-

8    cv-10004 (S.D.N.Y. Dec. 30, 2024).  That underscores the implausibility of relying on NISA as a

9    circumstantial indicator of an imprudent process.

10          In all events, NISA simply represents one opinion of one market actor (an asset manager

11    and competitor of Athene's[38]), who "argue[s]" that fiduciaries should not "ignore" certain factors

12    under IB 95-1.[39]  But citing that one opinion is not tantamount to plausibly alleging that *SSGA*

13    *Trust Co.* "ignored" relevant information or failed to conduct an "objective, thorough and

14    analytical search."  Compl. ¶26.  If all market participants shared the precise same view as to

15    credit-worthiness, then there would be no need for the "objective, thorough and analytical search"

16    that Plaintiffs' own authority—IB 95-1—suggests.  *See* 29 C.F.R. § 2509.95-1(c) (listing factors).

17    Indeed, courts recognize that "negative analyst reports," like NISA's, "are insufficient to create a

18    duty …. to question the prudence of [an investment]."  *In re RCN Litig.*, 2006 WL 1273834, at *8

19    (D.N.J. Mar. 22, 2006) (dismissing complaint).

20

21

22

23          [37] Ex. 12, PRT Credit Risk Monitor, NISA, https://tinyurl.com/yc2yhhma.

24          [38] NISA's website notes that it is a "leader in liability-driven investing (LDI) and de-risking strategies for defined benefit (DB) pension plans and other liability-driven investors"—*i.e.*, a de-risking

25    alternative to a PRT.  Ex. 11, NISA, *Defined Benefit (DB):Pension Risk Management,* https://tinyurl.com/3wrkcmhc.

26          [39] Ex. 10, David G. Eichhorn, *Pension Risk Transfers May be Transferring Risk to Beneficiaries*, NISA (Oct. 13, 2022), https://tinyurl.com/mrx8kdsx (cited in Compl. ¶¶89-95).

SSGA TRUST CO.'S MOTION TO DISMISS – 19
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

### 3. Athene's Connection to Private Equity And Supposed Financial Risk.

The Complaint asserts that Athene's affiliation with Apollo, which separately engages in private equity investing, prevents Athene from being a prudent annuity provider for a PRT because the "mission of private equity does not align with the interests of annuitants." Compl. ¶47. But the Complaint acknowledges that Apollo's merger with Athene happened years *after* the Weyerhaeuser PRT. *Id.* ¶52. In any event, Plaintiffs acknowledge that involvement with private equity is common in the industry. *Id.* ¶46. Moreover, Plaintiffs' conclusory assertion that "[t]he mission of private equity" is inconsistent with the needs of retirees completely ignores the reality of pension plans—as courts have recognized, it is common for employer pension plans to be heavily invested in private equity. *See Sulyma v. Intel Corp. Inv. Pol'y Comm.*, 909 F.3d 1069, 1077 (9th Cir. 2018), *aff'd*, 589 U.S. 178 (2020).[40] Plaintiffs' generalized grievances with private equity-affiliated insurers are "conclusory and insufficient, given that Plaintiff[s] fail[] to offer specific facts about [SSGA Trust Co.'s] purportedly flawed process." *Hutchins*, 2025 WL 404594, at *7.

Plaintiffs' insinuation that Athene is at risk of default because "nearly 25% of Apollo-owned companies have defaulted since 2022," Compl. ¶53 (emphasis deleted), is likewise implausible because it fundamentally misconstrues Athene's affiliation with Apollo. Unlike the Apollo portfolio companies referenced in the Moody report Plaintiff relies upon,[41] Athene is *not* owned by Apollo's private-equity arm. Instead, Athene is separately regulated by state insurance commissioners and is part of Apollo's "retirement services" business line, which is separate and distinct from its private equity business.[42]

---

[40] GAO, *Defined Benefit Pension Plans* (Feb. 2012), https://www.gao.gov/assets/gao-12-324.pdf (in 2010, 92% of large defined-benefit plans invested in private equity).

[41] Sergio Padilla, *Moody's: Default rates for private equity-backed companies on the rise*, Private Debt Investor (Oct. 14, 2024), https://www.privatedebtinvestor.com/moodys-default-rates-for-private-equity-backed-companies-on-the-rise/.

[42] Ex. 6, Apollo Global Management, Inc., 2023 10-K at 13, 17 (Athene is part of Apollo's "Retirement Services" business, whereas Apollo's private equity franchise is part of its "Asset Management" business).

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

Plaintiffs also assert that "20% of Athene's portfolio is invested in risky asset-backed securities and leveraged loans" and that Athene has held a "higher ratio" of "unfavorable BBB" collateralized loan obligations (CLOs) "than most other U.S. life industry participants." Compl. ¶¶52, 55. First, this allegation does not plausibly raise an inference of imprudence; Plaintiffs do not even explain what "U.S. life industry participants" means. They do not allege that they are comparing Athene only to other insurers, let alone insurers that participate in the PRT market.

In any event, the allegation that Athene's portfolio is "risky" is directly refuted by Athene's SEC-filed financial statements, which show that over 95% of Athene's investments are "investment grade," bearing the highest NAIC ratings of 1 or 2.[43] And Plaintiffs' conclusory allegation about BBB CLOs—citing an unnamed "prominent market reporter," Compl. ¶55—is similarly unavailing: a BBB rating corresponds to the second-highest NAIC rating and is considered "investment grade."[44] Indeed, all credit ratings agencies have affirmed Athene's creditworthiness with A1 or A+ ratings.[45] Compl. ¶¶95-97. Plaintiffs themselves allege that 95% of issuers holding an average rating of "A" from the rating agencies—a rating that is inferior to Athene's average rating—do not default over a twenty-year horizon. *Id.* ¶97.

Next, Plaintiffs suggest that Athene is an imprudent choice because it uses Bermuda-based reinsurers and Bermuda law is less stringent than other jurisdictions. Compl. ¶¶54-55, 66-75. That contention is a red herring: judicially noticeable public disclosures demonstrate that Athene requires its Bermuda subsidiaries to adhere to the same capital, risk, and disclosure standards ***as its U.S. subsidiaries***.[46] Accordingly, at the end of 2023, Athene's Bermuda-based reinsurance

---

[43] Ex. 7, Athene Holding Ltd. 2023 10-K at 86-87. Plaintiffs do not allege that the less than 5% of Athene's portfolio comprised of "below investment grade" holdings is out of step with industry norms.

[44] *Id.* at 85-87.

[45] *Id.*, Item 1 at 20-21 ("each of our significant insurance subsidiaries is rated 'A+', 'A1' or 'A' by the four rating agencies").

[46] Ex. 7, Athene Holding Ltd. 2023 10-K at 19 ("We maintain the same reserving principles for our Bermuda reinsurance subsidiaries as we do for our US insurance subsidiaries."); *id.* at 25 ("Under the Bermuda rules, our Bermuda reinsurance subsidiaries are required to file with the BMA group audited financial statements prepared using accounting principles generally accepted in the US (US GAAP).").

SSGA TRUST CO.'S MOTION TO DISMISS – 21
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1  affiliates had billions in surplus assets, a risk-based capital ratio of 400% (double U.S.

2  requirements), and the same A+ and A1 ratings as Athene.[47]   In all events, Bermuda is an

3  established, well-regulated jurisdiction for insurance, one of only three globally to be deemed

4  regulatorily equivalent to the U.S. by NAIC.  Compl. ¶68.[48]

5      Moreover, the use of Bermudian reinsurers is commonplace, as Plaintiffs' own sources

6  show.   Other major life insurers that similarly leverage Bermuda reinsurance include AIG,

7  MetLife, and Prudential—one of NISA's preferred providers.  *See supra* p.19.

8                    **4.  Other Purported Concerns With Athene.**

9      Plaintiffs further allege that Athene "relies on unreliable private letter ratings" from

10  "smaller, private credit rating agencies" Kroll Bond Rating Agency ("KBRA") and DBRS Inc.

11  ("DBRS") to make its investment portfolio appear to be of higher quality.  Compl. ¶¶98-100.  But

12  KBRA and DBRS are not "suspect" ratings agencies; they are among the ten Nationally

13  Recognized Statistical Rating Organizations (NRSROs), commonly known as credit ratings

14  agencies, recognized by the SEC.[49]   Moreover, Athene discloses both the "NAIC's [quality]

15  designation" and the "NRSRO rating agency designation" of its investments (including CLOs).[50]

16  In other words, Athene discloses NAIC's purportedly more "stringent" ratings that Plaintiffs

17  prefer.  Compl. ¶98.  In any event, Athene does not rely exclusively on KBRA and DBRS.  Athene

18  utilizes the ratings of S&P, Moody's, and Fitch (Plaintiffs' preferred ratings agencies) as well as

19

20

---

[47] Ex. 7, Athene Holding Ltd. 2023 10-K at 21, 108, 187-188.

21

[48] *NAIC List of Reciprocal Jurisdictions*, NAIC, https://tinyurl.com/mwvdy263 (last visited Dec. 5, 2024).

22

23

[49] Ex. 23, U.S. SEC, Off. of Credit Ratings, Staff Report on Nationally Recognized Statistical Rating Agencies at 3-4 (Feb. 2024), https://tinyurl.com/32u7eu7d.  Plaintiffs also assert that "KBRA and DBRS have been subject to investigations by the SEC regarding their rating practices, resulting in millions of dollars in fines."  Compl. ¶100.  Those fines postdate the Weyerhaeuser PRT.  *See supra* note 23, at 10. In any event, each of Plaintiffs' preferred "major rating agencies ... S&P, Moody's, and Fitch," *id.*, have been fined millions ***or billions*** of dollars in connection with their ratings practices.  *See* Exs. 16-19 (Settlement Agreements with SEC and DOJ reflecting penalties ranging from $15,000,000.00 to $1,375,000,000.00).

24

25

26

[50] Ex. 7, Athene Holding Ltd. 2023 10-K at 85-86.

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

KBRA and DBRS.[51]  Thus, the notion that Athene's additional use of KBRA's and DBRS's ratings should have been a cause of concern to SSGA Trust Co. is implausible.

Plaintiffs also allege that in 2019 Athene was investigated by the State of New York regarding its PRT business.  Compl. ¶101.  This investigation, however, did not relate to the alleged riskiness of Athene's annuities.   Rather, it related to a purely jurisdictional matter—the involvement of employees of Athene's non-New York-domiciled subsidiary in insurance transactions involving New York residents.[52]  Athene cooperated fully with the investigation and its New York-domiciled subsidiary was allowed to continue its PRT business in New York.[53]

*****

In short, Plaintiffs' fiduciary-breach claims fail.  Their allegations—facts and data that they say, if taken into account, would have caused fiduciaries to not select Athene—almost entirely *postdate* the Weyerhaeuser PRT and therefore are irrelevant to whether SSGA Trust Co. acted appropriately "under the circumstances … prevailing" in 2019.  In any event, with the relevant context taken into account, none plausibly suggests that the selection of Athene was outside of the wide "range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595 U.S. at 177.

### D.  Plaintiffs' Claim of Co-Fiduciary Liability Fails.

Plaintiffs assert that SSGA Trust Co. is "liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a)."  Compl. ¶142.  As Weyerhaeuser argues in its brief, it is not a relevant fiduciary, did not breach any duties, and did not commit any prohibited transactions.  "Plaintiffs' claims for co-fiduciary liability must therefore be dismissed."  *Bloom*, 725 F. Supp. 3d at 344.

---

[51] *Id.* at 86.

[52] Ex. 15, Consent Order, *In re Athene Annuity and Life Co., Athene Holding Ltd.*, New York State Dept. of Fin. Servs. (Apr. 13, 2020), https://www.dfs.ny.gov/system/files/documents/2020/04/ea20200413_consent_order_athene.pdf.

[53] *Id.* ¶¶18, 23-28.

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1

**III.**    **Plaintiffs' Prohibited Transaction Claim (Count III) Fails as a Matter of Law.**

2

Count III alleges that SSGA Trust Co. committed a prohibited transaction under ERISA

3

§ 406(a), 29 U.S.C. § 1106(a), by "caus[ing] the Plan to engage in the transactions" because

4

Athene was supposedly a party in interest.  Compl. ¶¶148-153.  This claim fails for the reasons

5

identified in Weyerhaeuser's MTD, which SSGA Trust Co. joins.

6

Furthermore, the prohibited transaction claim against SSGA Trust Co. must be dismissed

7

for an additional independent reason: PTE 84-14, the Qualified Professional Asset Manager

8

exemption ("QPAM Exemption"), also applies.  Under the QPAM Exemption, the "restrictions of

9

ERISA section 406(a)(1)(A) through (D) … shall not apply to a transaction between a party in

10

interest … and an investment fund … which is managed by a [QPAM]."  49 Fed. Reg. 9494, 9504

11

(Mar. 13, 1984).  SSGA Trust Co. expressly represented that it was a QPAM in connection with

12

the Weyerhaeuser PRT.[54]  Because it is apparent from the face of the Complaint and the documents

13

referenced therein that the QPAM Exemption applies, the prohibited transaction claim against

14

SSGA Trust Co. must be dismissed.  *See Dorman v. Charles Schwab Corp.*, 2018 WL 6803738,

15

at *6 (N.D. Cal. Sept. 20, 2018); *Moreno v. Deutsche Bank Ams. Holding Corp.*, 2016 WL

16

5957307, at *6 (S.D.N.Y. Oct. 13, 2016); *Cedars-Sinai*, 497 F.3d at 975.

17

<b>CONCLUSION</b>

18

For the foregoing reasons, and those asserted by Weyerhaeuser, the Complaint should be

19

dismissed with prejudice.

20

21

//

22

//

23

//

24

//

25

26

---

[54] Ex. 2, SSGA Trust Co. Agreement §4b (Dec. 6, 2018).

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1    DATED: February 24, 2025.

2                              FENNEMORE CRAIG, P.C.

3

4                              By    *s/ James P. Savitt*
                                     James P. Savitt, WSBA #16847
5                                    Jacob P. Freeman, WSBA #54123
                                     1425 Fourth Avenue, Suite 800
6                                    Seattle, WA  98101-2272
                                     Tel: (206) 749-0500
7                                    Fax  (206) 749-0600
                                     Email: jsavitt@fennemorelaw.com
8                                    Email: jfreeman@fennemorelaw.com

9                              GOODWIN PROCTER LLP

10                                   Jaime A. Santos (*pro hac vice*)
                                     1900 N Street NW
11                                   Washington, D.C. 20036
                                     Tel.: (202) 346-4000
12                                   Email: JSantos@goodwinlaw.com

13                                   James O. Fleckner (*pro hac vice*)
                                     Alison V. Douglass (*pro hac vice*)
14                                   Benjamin S. Reilly (*pro hac vice*)
                                     100 Northern Avenue
15                                   Boston, MA 02210
                                     Tel.: (617) 570-1000
16                                   Fax: (617) 523-1231
                                     Email: JFleckner@goodwinlaw.com
17                                   Email: ADouglass@goodwinlaw.com
                                     Email: BReilly@goodwinlaw.com
18

19                                   *Attorneys for Defendant State Street*
                                     *Global Advisors Trust Company*
20

21                                   *I certify that this memorandum contains 8,399 words, in*
                                     *compliance with the Local Civil Rules*
22

23

24

25

26

SSGA TRUST CO.'S MOTION TO DISMISS – 25
(No. 2:24-cv-02050-KKE)

1

**CERTIFICATE OF SERVICE**

2

I hereby declare under penalty of perjury under the laws of the United States of America

3

that on this date, the foregoing document was filed electronically with the Court and thus served

4

simultaneously upon all counsel of record.

5

I declare under penalty of perjury that the foregoing is true and correct.

6

EXECUTED on February 24, 2025.

7

8

_____

9

Amanda Saeteurn

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600