1

2

3                                                    THE HONORABLE KYMBERLY K. EVANSON

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
                                      AT SEATTLE

9

10   GREGORY MANEMAN, ANNETTE              No. 2:24-cv-02050-KKE
     WILLIAMS, CASSANDRA WRIGHT, JAMES
11   HOLLINS, AND PIERRE DONABY,           **WEYERHAEUSER DEFENDANTS'**
     individually and as representatives on behalf of a   **MOTION TO DISMISS AMENDED**
12   class of similarly situated persons,  **COMPLAINT**

13                    Plaintiffs,          **NOTE ON MOTION CALENDAR:**
                                           **OCTOBER 24, 2025**
14           v.
                                           **ORAL ARGUMENT REQUESTED**
15   WEYERHAEUSER COMPANY,
     WEYERHAEUSER COMPANY ANNUITY
16   COMMITTEE, WEYERHAEUSER COMPANY
     ADMINISTRATIVE COMMITTEE, STATE
17   STREET GLOBAL ADVISORS TRUST
     COMPANY, and JOHN DOES 1-5,
18
                      Defendants.
19

20

21

22

23

24

25

26

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT .................................................................. 1

BACKGROUND .................................................................................... 2

I.      PENSION RISK TRANSFERS ......................................................... 2

II.     FACTS ....................................................................................... 4

     A.    The Plan ............................................................................. 4

     B.    The Plan's PRT .................................................................. 5

     C.    Plaintiffs ............................................................................ 5

III.    THE AMENDED COMPLAINT ...................................................... 6

LEGAL STANDARD ............................................................................. 8

ARGUMENT ....................................................................................... 9

I.      PLAINTIFFS LACK ARTICLE III STANDING ............................... 9

     A.    Plaintiffs Do Not Plausibly Allege An Injury-In-Fact That Satisfies Article III .. 10

          1.    The Amended Complaint's Allegations Of Actual Harm Do Not Satisfy The Injury-In-Fact Requirement ...................................................... 11

               a.    Alleged Diminution In The Value Of Plaintiffs' Annuities.......... 12

               b.    Allegations Of Fiduciary Breach ................................. 13

               c.    Loss Of ERISA Coverage ........................................... 13

          2.    The Amended Complaint's Allegations Of Future Harm Do Not Satisfy The Injury-In-Fact Requirement .................................................. 14

               a.    The Amended Complaint Fails To Plausibly Allege A Substantial Likelihood That Athene Will Default And Fail To Pay Benefits ........................................................ 16

               b.    The Amended Complaint Fails To Plausibly Allege A Substantial Likelihood Of Regulatory Action That Interrupts Benefit Payments ....................................... 18

     B.    Plaintiffs' Alleged Injuries Are Not Traceable To The Weyerhaeuser Defendants ......................................................................... 20

II.    PLAINTIFFS' CLAIMS INDEPENDENTLY SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM FOR RELIEF ............................................................................... 21

     A.    The Amended Complaint Does Not Plausibly Allege Prohibited Transaction Claims .............................................................. 21

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – i
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1           1.      Section 406(a) Claims .................................................................................... 22

2           2.      Section 406(b) Claims .................................................................................... 24

B.     The Amended Complaint Does Not Plausibly Allege Co-Fiduciary Liability

3       Claims .......................................................................................................... 24

4    C.     The Amended Complaint Does Not Plausibly Allege Non-Fiduciary Knowing

       Participation Claims ..................................................................................... 26

5

D.     The Amended Complaint Does Not Plausibly Allege Failure To Monitor

6       Claims Against The Weyerhaeuser Defendants .................................................. 27

7   CONCLUSION.................................................................................................................... 28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1301 Second Avenue Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aguilar v. Coast to Coast Comput. Prods., Inc.*,
    No. 23-cv-3996, 2024 WL 635314 (C.D. Cal. Jan. 8, 2024) ................................................... 9

*Baird v. BlackRock Institutional Tr. Co., N.A.*,
    403 F. Supp. 3d 765 (N.D. Cal. 2019) ................................................................................. 25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................................ 9

*Blair v. Assurance IQ LLC*,
    No. 23-cv-16-KKE, 2023 WL 6622415 (W.D. Wash. Oct. 11, 2023) ................................... 13

*Burke v. Boeing Co.*,
    42 F.4th 716 (7th Cir. 2022) ............................................................................................... 20

*Camire v. Alcoa USA Corp.*,
    No. 24-cv-1062, 2025 WL 947526 (D.D.C. Mar. 28, 2025) ........................................... passim

*Carney v. Adams*,
    592 U.S. 53 (2020) ............................................................................................................. 17

*Carter v. San Pasqual Fiduciary Tr. Co.*,
    No. 15-cv-1507, 2016 WL 6803768 (C.D. Cal. April 18, 2016) ........................................ 27

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*,
    497 F.3d 972 (9th Cir. 2007) ............................................................................................. 9

*Chan v. Prudential Ins. Co. of Am.*,
    No. 13-cv-524, 2013 WL 4511437 (W.D. Wash. Aug. 23, 2013) ..................................... 17

*Cierco v. Mnuchin*,
    857 F.3d 407 (D.C. Cir. 2017) .......................................................................................... 19

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ....................................................................................................... passim

*Cunningham v. Cornell Univ.*,
    145 S. Ct. 1020 (2025) ...................................................................................................... 23

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – iii
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*D.L. Markham DDS, MSD, Inc. 401(K) Plan v. Variable Annuity Life Ins. Co.*,
    88 F.4th 602 (5th Cir. 2023) ................................................................23, 26

*David v. Alphin*,
    704 F.3d 327 (4th Cir. 2013) ................................................................12

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
    No. 17-cv-7243, 2019 WL 6841222 (N.D. Cal. Dec. 16, 2019)................26

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024)................................................................10

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)................................................................9

*Gamino v. SPCP Grp., LLC*,
    No. 21-cv-1466, 2022 WL 336469 (C.D. Cal. Feb. 2, 2022) ....................27

*Gelardi v. Pertec Comput. Corp.*,
    761 F.2d 1323 (9th Cir. 1985) ................................................................20

*Gleason v. Orth*,
    No. 22-cv-305, 2022 WL 4534405 (W.D. Wash. Sept. 28, 2022) ..................25, 27

*Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*,
    22 F.4th 83 (2d Cir. 2021) ................................................................8

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
    530 U.S. 238 (2000)................................................................22, 26

*In re Merrill Lynch & Co*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003)................................................................17

*Konya v. Lockheed*,
    No. 24-cv-750, 2025 WL 962066 (D. Md. Mar. 28, 2025) ....................16

*Konya v. Lockheed*,
    No. 24-cv-750, 2025 U.S. Dist. LEXIS 139240 (D. Md. July 22, 2025) ..............16

*Lauderdale v. NFP Ret., Inc.*,
    No. 21-cv-301, 2022 WL 17260510 (C.D. Cal. Nov. 17, 2022) ..........................23

*Lee v. Verizon Commc'ns, Inc.*,
    837 F.3d 523 (5th Cir. 2016) ................................................................3, 10

*Marshall v. Carroll*,
    No. 79-cv-495, 1980 U.S. Dist. LEXIS 17767 (N.D. Cal. Apr. 18, 1980)..............22

**Perkins Coie LLP**
1301 Second Avenue Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*Medina v. Clinton*,
    86 F.3d 155 (9th Cir. 1996) ...................................................................................10

*Monper v. Boeing Co.*,
    104 F. Supp. 3d 1170 (W.D. Wash. 2015) ......................................................25, 27

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
    513 U.S. 251 (1995)...............................................................................................22

*Paieri v. W. Conf. of Teamsters Pension Tr.*,
    No. 23-cv-922, 2024 WL 4554616 (W.D. Wash. Oct. 23, 2024) ...........................9

*Perez v. WPN Corp.*,
    No. 14-cv-1494, 2017 WL 2461452 (W.D. Pa. June 7, 2017) ............................28

*Ramos v. Banner Health*,
    1 F.4th 769 (10th Cir. 2021) .................................................................................23

*Ruilova v. Yale-New Haven Hosp. Inc.*,
    No. 22-cv-111, 2023 WL 2301962 (D. Conn. Mar. 1, 2023) ................................27

*Sams v. Yahoo! Inc.*,
    713 F.3d 1175 (9th Cir. 2013) ..............................................................................23

*SEC v. First City Fin. Corp.*,
    890 F.2d 1215 (D.C. Cir. 1989) ...........................................................................17

*Slayman v. FedEx Ground Package Sys., Inc.*,
    765 F.3d 1033 (9th Cir. 2014) ..............................................................................17

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)......................................................................................8, 10, 11

*Su v. Alerus Fin., N.A.*,
    No. 23-cv-537, 2024 WL 4681323 (D. Idaho Nov. 4, 2024) ................................25

*Tetra Tech EC, Inc., v. EPA*,
    No. 20-cv-8100, 2022 WL 4372073 (N.D. Cal. Sept. 21, 2022) ..........................15

*Thole v. U.S. Bank N.A.*,
    590 U.S. 538 (2020).........................................................................................passim

*Tobias v. NVIDIA Corp.*,
    No. 20-cv-6081, 2021 WL 4148706 (N.D. Cal. Sept. 13, 2021) ..........................27

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021) .......................................................................................11, 13

**Perkins Coie LLP**
1301 Second Avenue Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*Truong v. KPC Healthcare, Inc.*,
    No. 8:23-cv-1384, 2024 WL 1984569 (C.D. Cal. May 3, 2024) ...........................................26

*Voss v. Sutardja*,
    No. 14-cv-01581-LHK, 2015 WL 349444 (N.D. Cal. Jan. 26, 2015) ....................................15

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
    62 F.4th 517 (9th Cir. 2023) ...................................................................................9, 10, 12, 13

*Wright v. SEIU Loc. 503*,
    48 F.4th 1112 (9th Cir. 2022) ..........................................................................................14, 19

*Zavala v. Kruse-W., Inc.*,
    No. 19-cv-239, 2021 WL 5883125 (E.D. Cal. Dec. 13, 2021) ..............................................25

STATUTES

29 U.S.C. § 1002(14)(B) ...............................................................................................................22

29 U.S.C. § 1056(d)(1) ..................................................................................................................12

29 U.S.C. § 1105(a)(1)-(3) ..........................................................................................................6, 24

29 U.S.C. § 1106(a)(1) ..................................................................................................................22

29 U.S.C. § 1106(b) ...................................................................................................................22, 24

29 U.S.C. § 1108(b)(2) ..................................................................................................................23

29 U.S.C. § 1132(a)(9) ...............................................................................................................7, 26

29 U.S.C. § 1142 .............................................................................................................................4

Ala. Code § 27-44-3(c)(2)(a)(3) ......................................................................................................4

Iowa Code § 507C.12(1) ...............................................................................................................20

Miss. Code Ann. § 83-23-205 .........................................................................................................4

N.Y. Ins. Law § 3402 ....................................................................................................................20

Wash. Rev. Code Ann. § 48.32A.025(3)(b)(1)(C) ..........................................................................4

OTHER AUTHORITIES

71 Fed. Reg. 5887 (Feb. 3, 2006) .................................................................................................23

DOL Opinion Letter No. 76-36, 1976 WL 5051 (Jan. 15, 1976) ..................................................22

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – vi
(No. 2:24-CV-02050-KKE)

I.R.S. Gen. Couns. Mem. 39882, 1992 WL 311700 (Oct. 26, 1992) ...........................................12

Consumer Protection Comparison: The Federal Pension System and the State
    Insurance System, Nat'l Org. of Life and Health Ins. Guar. Ass'ns (May 22,
    2016), https://www.athene.com/binaries/content/assets/ausa-
    assets/advocacy/national-organization-of-life-and-health-insurance-guaranty-
    associations_pension-report.pdf................................................................................................3

Department of Labor Report to Congress on Employee Benefits Security
    Administration's Interpretive Bulletin 95-1 (June 2024),
    https://www.dol.gov/sites/dolgov/files/EBSA/laws-and-
    regulations/laws/secure-2.0/report-to-congress-on-interpretive-bulletin-95-
    1.pdf .........................................................................................................................................2

*Statement of the 2023 Advisory Council on Employee Welfare and Pension
    Benefit Plans to the U.S. Department of Labor Regarding Interpretive Bulletin
    95-1* (Aug. 29, 2023), https://www.dol.gov/sites/dolgov/files/ebsa/about-
    ebsa/about-us/erisa-advisory-council/statement-regarding-interpretive-
    bulletin-95-1.pdf. ......................................................................................................................4

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – vii
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

## PRELIMINARY STATEMENT

2

Plaintiffs, five former participants of the Weyerhaeuser Pension Plan (the "Plan"), assert

3   claims under the Employee Retirement Income Security Act of 1974 ("ERISA") challenging a

4   transaction that resulted in the transfer of responsibility for paying their pension annuities from

5   the Plan to a third-party insurer.  The type of transaction in question, known as a pension risk

6   transfer ("PRT"), is very common and is expressly authorized by ERISA.  Nevertheless,

7   Plaintiffs challenge this PRT because of the selection of the annuity provider, Athene Annuity

8   and Life Company ("Athene").  Their challenge fails for lack of standing and for failure to state a

9   claim.

10

The United States Supreme Court has expressly decided that there is no ERISA exception

11   to Article III; the constitutional requirement of injury-in-fact thus applies to ERISA claims, such

12   as those alleged here.  But the Amended Complaint ("AC," Dkt. 62) is devoid of any allegation

13   of cognizable injury to the Plaintiffs, as it does not allege that Plaintiffs have failed to receive

14   any of the payments due to them.  As a recent district court ruling dismissing virtually identical

15   claims confirms, the "harm" that is alleged—increased risk to future payment and diminution in

16   value of annuities—is not actual or imminent harm and thus fails to satisfy Article III's standing

17   requirement.  *See Camire v. Alcoa USA Corp.*, No. 24-cv-1062, 2025 WL 947526, at *8 (D.D.C.

18   Mar. 28, 2025).

19

In an effort to distinguish the ruling in *Camire*, Plaintiffs amended their complaint before

20   briefing was completed on Defendants' original motions to dismiss.  The new complaint adds to

21   their allegations of a substantial risk of default by Athene, and presents new allegations of a

22   substantial risk of government intervention that would interrupt or delay Athene's payment of

23   benefits.  But the recast allegations of harm, like the original allegations, fail to satisfy Article

24   III's requirement because they fail to plausibly allege that the risk of harm is "certainly

25   impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 410 (2013), and fail to alter the

26   fact that there is a "highly attenuated chain of possibilities" that would have to occur for

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 1
(No. 2:24-CV-02050-KKE)

1    Plaintiffs' benefits to be discontinued or delayed.  *Id*. at 410.

2        The Amended Complaint also should be dismissed for failure to state a claim.  To start,

3    the breach of fiduciary duty and "prohibited transaction" claims are fundamentally misdirected

4    against Weyerhaeuser Company ("Weyerhaeuser"), Weyerhaeuser Company Annuity

5    Committee, and Weyerhaeuser Company Administrative Committee (collectively the

6    "Weyerhaeuser Defendants") because, as the Amended Complaint acknowledges, they did not

7    act as fiduciaries in connection with the Plan's PRT: sole authority for retaining the annuity

8    provider was delegated to an independent fiduciary, State Street Global Advisors Trust Company

9    ("SSGA Trust Co.").  In any event, Plaintiffs' "prohibited transaction" claims fail because the

10   PRT does not satisfy the elements of any of ERISA's prohibited transaction provisions.

11   Recognizing the weakness of these claims against the Weyerhaeuser Defendants, Plaintiffs

12   stretch to assert claims of co-fiduciary liability, non-fiduciary liability, and failure to monitor, but

13   these claims similarly fail to cross the line of plausibility.

14       For the reasons further stated below and those in SSGA Trust Co.'s motion, in which the

15   Weyerhaeuser Defendants join, the Amended Complaint should be dismissed with prejudice.

16   ## BACKGROUND

17   ## I.    PENSION RISK TRANSFERS

18       The transfer of pension obligations through PRTs is a common transaction authorized by

19   ERISA.  *See* Julie A. Su, Acting Secretary of Labor, Department of Labor Report to Congress on

20   Employee Benefits Security Administration's Interpretive Bulletin 95-1 (June 2024)[1] (reporting

21   that single employer PRTs involved 2.2 million plan participants between 2000 and 2022, and

22   $52 billion in benefit obligations in 2022 alone).  In a "buyout" PRT, the "settlor"—or sponsor—

23   of an ERISA-governed pension plan transfers to an annuity provider the liabilities associated

24   with plan participants and beneficiaries through the purchase, with plan assets, of group annuity

25   _____

26   [1] Available at https://www.dol.gov/sites/dolgov/files/EBSA/laws-and-regulations/laws/secure-2.0/report-to-congress-on-interpretive-bulletin-95-1.pdf.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 2
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   contracts from the provider.  AC ¶¶ 39-41.  The annuity provider then assumes exclusive

2   responsibility for paying the benefits previously paid by the plan.  *Id.* ¶ 39.  In a "partial buyout"

3   PRT—as occurred in this case—the transfer is limited to a specified group of plan participants

4   and beneficiaries.  *Id.* ¶ 41.

5           There is no dispute that the amendment of a plan to require a PRT is a settlor function

6   that is exempt from ERISA's fiduciary requirements.  *See id.* ¶ 4 (describing decision to

7   complete a PRT as "a business decision not subject to [ERISA's] fiduciary standards"); *see also*

8   *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 538 (5th Cir. 2016) ("[T]he transfer of pension

9   liabilities from an ongoing plan through an annuity transaction amendment is a settlor function,

10  permitted under ERISA, [and] . . . such transactions are not subject to fiduciary duty

11  requirements.").  The selection of the annuity provider, however, is a fiduciary function.  *See id.*

12  at 536.  So long as certain standards with respect to the annuity and annuity provider are met—

13  and Plaintiffs do not allege that these were not met here—participants in an ERISA-governed

14  plan whose benefits are transferred to an annuity provider cease to be participants in the plan

15  after the PRT is completed.  *See id.* at 538 (citing 29 C.F.R. § 2510.3-3(d)(2)(ii)).

16          Although Plaintiffs contend that the loss of participant status in an ERISA-governed plan

17  in conjunction with a PRT is, in itself, an adverse event (*see, e.g.,* AC ¶¶ 11-13, 15), publicly-

18  available information demonstrates to the contrary.  To begin with, insurers serving as annuity

19  providers are subject to stricter financial standards and oversight than single-employer pension

20  plans.  Most notably, whereas "life insurers must at all times maintain assets significantly in

21  excess of their insurance obligations," ERISA pension plans "can and oftentimes do run for years

22  at a time with total assets lower than their pension obligations."  Consumer Protection

23  Comparison: The Federal Pension System and the State Insurance System, Nat'l Org. of Life and

24  Health Ins. Guar. Ass'ns (May 22, 2016)[2] at 19.  Not surprisingly, therefore, single-employer

25

26  [2] Available at https://www.athene.com/binaries/content/assets/ausa-assets/advocacy/national-organization-of-life-
    and-health-insurance-guaranty-associations_pension-report.pdf.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 3
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

ERISA plans fail at a higher rate than insurers: since 2008, at least 931 single-employer plans covering more than 560,000 participants have failed. *See id*. at 4. By contrast, "over the past 30+ years, no one has lost a penny under a PRT annuity." *Statement of the 2023 Advisory Council on Employee Welfare and Pension Benefit Plans to the U.S. Department of Labor Regarding Interpretive Bulletin 95-1* (Aug. 29, 2023);[3] at 4; *see* 29 U.S.C. § 1142.

Furthermore, even if an annuity provider that assumes benefit obligations pursuant to a PRT should happen to fail, the annuitants would still receive protection from state guaranty associations ("SGAs"). *See, e.g*., Wash. Rev. Code Ann. § 48.32A *et seq*.; Miss. Code Ann. § 83-23-201 *et seq*.; Ala. Code § 27-44-1 *et seq*. The states in which the Plaintiffs reside—Washington, Mississippi and Alabama—guarantee up to $250,000 to $500,000 of the present value of annuitant's future benefits, respectively. *See* Wash. Rev. Code Ann. § 48.32A.025(3)(b)(1)(C) ($500,000); Miss. Code Ann. § 83-23-205 ($250,000); Ala. Code § 27-44-3(c)(2)(a)(3) ($250,000).

## II.    FACTS

Unless otherwise indicated, this statement of facts is based on the allegations in the Amended Complaint.

### A.    The Plan

The Plan is a defined benefit pension plan governed by ERISA. AC ¶ 19. Weyerhaeuser is the settlor and sponsor of the Plan. *Id*. ¶ 28. The Weyerhaeuser Company Administrative Committee (the "Administrative Committee") is the Plan administrator. *See id*. ¶ 30. As a defined benefit plan, the Plan provides retirees "a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole v. U.S. Bank N.A*., 590 U.S. 538, 540 (2020). Benefits provided by the Plan are funded by contributions from Weyerhaeuser as Plan sponsor. *See* AC ¶ 37.

---

[3] Available at https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/about-us/erisa-advisory-council/statement-regarding-interpretive-bulletin-95-1.pdf.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 4
(No. 2:24-CV-02050-KKE)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**B.    The Plan's PRT**

On January 23, 2019, Weyerhaeuser entered into an agreement (the "Commitment Agreement") with SSGA Trust Co., acting as independent fiduciary on behalf of the Plan, and Athene, pursuant to which the Plan purchased a group annuity contract from Athene, and Athene assumed responsibility for paying annuities to approximately 28,500 former Plan participants (the "Transferred Group").  *See* AC ¶ 130.  Upon assuming these benefit obligations, Athene established a "separate account" that is used specifically to pay benefits to the Transferred Group and may be used for other purposes only to the extent the assets in that account exceed Athene's liabilities pursuant to the PRT.  *See id.* ¶ 98.

Prior to the Commitment Agreement, a duly appointed committee of the Plan—the Weyerhaeuser Company Annuity Committee (the "Annuity Committee")—appointed SSGA Trust Co. to serve as an independent fiduciary with respect to a PRT transaction.  *See id.* ¶ 131.  The Weyerhaeuser Defendants expressly delegated to SSGA Trust Co. the "sole" responsibility for selecting the annuity provider for the PRT transaction.  *Id.*  Accordingly, SSGA Trust Co.— and not the Weyerhaeuser Defendants—was the fiduciary responsible for selecting Athene as the annuity provider for the Plan's PRT.  Pursuant to its appointment, SSGA Trust Co. also assumed fiduciary responsibility for representing the interests of the Plan and its participants and beneficiaries in negotiating the terms of the PRT transaction, and directing the Plan to purchase, with Plan assets, the group annuity contract from the annuity provider.  *Id.*

**C.    Plaintiffs**

Plaintiffs are former employees of Weyerhaeuser, and former participants in the Plan. AC ¶¶ 21-25.  Pursuant to the PRT, as of May 1, 2019, Athene assumed responsibility for each Plaintiff's monthly annuity payments.  *Id.*  None of the Plaintiffs allege that in the six years since Athene assumed this responsibility, they have ever failed to receive their monthly pension benefits, in the correct amount and in timely fashion.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 5
(No. 2:24-CV-02050-KKE)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

III.    **THE AMENDED COMPLAINT**

Plaintiffs commenced this action on December 12, 2024.  On February 24, 2025, the Weyerhaeuser Defendants and SSGA Trust Co. each moved to dismiss, but before briefing of the motions had been completed, the district court in *Camire* dismissed a virtually identical complaint for failing to satisfy Article III's standing requirements.  (*See supra* p. 1).  Plaintiffs then filed their Amended Complaint on May 29, 2025.  The Amended Complaint asserts four claims against Weyerhaeuser, the Administrative Committee, the Annuity Committee, and SSGA Trust Co., all of which purport to arise from "Athene's selection and the consummation of the PRT with Athene."  *See* AC ¶¶ 131-32, 144, 176, 186.

In Count I, Plaintiffs claim that all Defendants breached their ERISA fiduciary duties of prudence and loyalty, in violation of ERISA Sections 404(a)(1)(A) & (a)(1)(B), 29 U.S.C. §§ 1104 (a)(1)(A) & (a)(1)(B), or their responsibilities as co-fiduciaries under ERISA Sections 405(a)(1)-(3), 29 U.S.C. §§ 1105(a)(1)-(3), by selecting Athene as the annuity provider for the PRT, because Athene allegedly was neither the safest available annuity for the transaction nor was the annuity provider that would best promote the interests of the Transferred Group.  AC ¶¶ 167-69, 172.

In Count II, Plaintiffs claim that any Defendants that were not acting as fiduciaries in connection with the selection of Athene are liable as non-fiduciaries who knowingly participated in violations of ERISA.  *Id.* ¶ 176.

In Count III, Plaintiffs claim that all Defendants engaged in prohibited transactions under ERISA Sections 406(a) and 406(b), 29 U.S.C. §§ 1106(a) & (b), by: (i) exchanging property with, receiving services from, and/or transferring Plan assets to Athene, an alleged "party in interest" as defined by ERISA; and (ii) dealing with Plan assets "in their own interest" and "for their own account," allegedly because Athene was a lower-cost annuity provider that Defendants selected in order to save money and increase Weyerhaeuser's profits.  AC ¶¶ 179-83.  This Count also includes claims of co-fiduciary liability and liability for non-fiduciary participation in

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 6
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    the underlying prohibited transactions.  *Id.* ¶¶ 185-86.

2          In Count IV, Plaintiffs claim that the Weyerhaeuser Defendants breached their fiduciary

3    duty to monitor SSGA Trust Co.'s process for selecting an annuity provider.  AC ¶¶ 188-90.

4          All four claims are brought pursuant to ERISA Section 502(a)(9), 29 U.S.C. § 1132(a)(9),

5    which provides PRT annuitants a cause of action "to obtain appropriate relief, including the

6    posting of security if necessary, to assure receipt by the participant or beneficiary of the amounts

7    provided or to be provided by [the] insurance contract or annuity, plus reasonable prejudgment

8    interest on such amounts."  Counts I through III also purport to seek *individual* relief for the

9    Plaintiffs under ERISA Section 502(a)(3), 29 U.S.C. § 1132(a)(3), and in addition or in the

10   alternative Counts I and III purport to seek relief *for the Plan* under ERISA Section 502(a)(2),

11   29 U.S.C. § 1132(a)(2).

12         Even though the Amended Complaint does not allege any loss of annuity payments,

13   Plaintiffs contend they have been harmed due to: (i) Athene's allegedly risky features, which

14   allegedly caused the "value" of Plaintiffs' annuities in the "marketplace" to be "quantifiably and

15   substantially impaired" (*see*, *e.g.*, AC ¶¶ 11, 158, 161, 170); (ii) Defendants' fiduciary breaches,

16   which allegedly caused "intangible, yet concrete injuries—namely, the invasion of legally

17   protected interests—that were actionable at common law" and for which Plaintiffs seek equitable

18   relief under ERISA (*id.* ¶ 14); and (iii) the loss of "critical rights and benefits that they enjoyed

19   under ERISA."  *Id.* ¶ 15.

20         In addition, Plaintiffs claim that Athene is "substantially likely to fail in the near future,"

21   and thus "there is a substantial likelihood that Plaintiffs will not receive their benefits."  *Id.* ¶ 9.

22   Alternatively, their new complaint argues that it is "substantially likely" that Athene's weakened

23   financial condition will cause state insurance regulators to take action against Athene in a

24   manner than will at least delay payment of Plaintiffs' benefits.  *Id.* ¶ 10.  Plaintiffs' contentions

25   supporting these claims of future harm can be characterized as follows:

26         First, Plaintiffs allege that, following the completion of Athene's merger with Apollo

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 7
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Global Management, Inc. ("Apollo") in 2022, Athene's investment strategy shifted from being "conservative" to being overweight in illiquid, volatile, and high-risk assets, including a high percentage of investments in Apollo-owned portfolio companies that Plaintiffs describe as heavily reliant on debt financing, and therefore risky. *See* AC ¶¶ 64-67. According to Plaintiffs, this shift in investment strategy makes Athene a significantly riskier insurer than "traditional" insurers that historically have served as annuity providers, such as New York Life Insurance Company. *See*, *e.g.*, *id*. ¶¶ 66, 68, 69, 75, 92. Plaintiffs further allege that Athene's risk of default has been exacerbated by the "dramatic losses" in the financial markets since February 2025 due to the "recent dramatic rise in interest rates," "international instability, and United States tariff policies," which have "had an enormous negative impact on private equity companies in general, and Athene and its parent company Apollo specifically." AC ¶ 64, 78.

Second, Plaintiffs assert that Athene is more reliant than "traditional" insurers on affiliated, Bermuda-based reinsurers, which creates additional risks because (i) Bermuda imposes laxer capital, investment and reporting requirements for insurers and (ii) the financial health of affiliated reinsurers is correlated with Athene's financial health. AC ¶¶ 68, 83-88.[4]

Third, Plaintiffs claim that "Athene's practices . . . closely resemble" those of four insurers that, in 2024, "failed" or were subject to intervention by state insurance regulators. AC ¶¶ 102-11.

## LEGAL STANDARD

To withstand a motion to dismiss for lack of standing pursuant to Fed R. Civ. P. 12(b)(1), plaintiffs bear the burden of establishing that the Court has jurisdiction under Article III of the U.S. Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "There is no ERISA exception to Article III." *Thole*, 590 U.S. at 547. As in any case, the Court need not "accept as

---

[4] "Reinsurance is the insurance of one insurer (the 'reinsured') by another insurer (the 'reinsurer') by means of which the reinsured is indemnified for loss under insurance policies issued by the reinsured to the public." *Glob. Reinsurance Corp. of Am. v. Century Indem. Co.*, 22 F.4th 83, 88 n.3 (2d Cir. 2021).

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 8
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    true conclusory allegations which are contradicted by documents referred to in the complaint,"

2    *Cedars-Sinai Medical Center v. National League of Postmasters of United States*, 497 F.3d 972,

3    975 (9th Cir. 2007), and "sparse and conclusory allegations are insufficient to open the Article

4    III door."  *Aguilar v. Coast to Coast Comput. Prods., Inc*., No. 23-cv-3996, 2024 WL 635314, at

5    *3 (C.D. Cal. Jan. 8, 2024).

6        To withstand a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P.

7    12(b)(6), plaintiffs must allege facts plausibly supporting each element of their claims.  *Bell Atl.*

8    *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  To do so, plaintiffs must allege "more than labels

9    and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*.

10    Rather, a complaint's well-pleaded facts must "raise a right to relief above the speculative

11    level[.]"  *Id*.  The Supreme Court specifically has observed that in ERISA cases, Rule 12(b)(6) is

12    an "important mechanism for weeding out meritless claims."  *Fifth Third Bancorp v.*

13    *Dudenhoeffer*, 573 U.S. 409, 425 (2014).

14        When evaluating a facial challenge to standing under Rule 12(b)(1), or a Rule 12(b)(6)

15    motion, "a court may consider 'materials incorporated into the complaint by reference, and

16    matters of which [it] may take judicial notice.'"  *See Paieri v. W. Conf. of Teamsters Pension Tr*.,

17    No. 23-cv-922, 2024 WL 4554616, at *4 (W.D. Wash. Oct. 23, 2024).

18                                    **ARGUMENT**

19    **I.    PLAINTIFFS LACK ARTICLE III STANDING.**

20        As a threshold matter, the Amended Complaint should be dismissed because it fails to

21    satisfy the constitutional standing requirements.  To establish standing under Article III of the

22    Constitution, a plaintiff bears the burden of demonstrating that: (i) she suffered an injury-in-fact;

23    (ii) the injury is traceable to the challenged conduct, *i.e.*, was caused by the defendant; and

24    (iii) the injury likely would "be redressed by the requested judicial relief."  *Thole*, 590 U.S. at

25    540 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Winsor v. Sequoia*

26    *Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) ("At the pleading stage, plaintiffs

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 9
(No. 2:24-CV-02050-KKE)

must 'clearly . . . allege facts demonstrating each element'" of Article III standing).

To satisfy the requirement of showing injury-in-fact, a plaintiff must show an "invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Winsor*, 62 F.4th at 523. To be "concrete," an injury must be "real and not abstract"—that is, "it must actually exist." *Spokeo*, 578 U.S. at 340. And to be "actual or imminent," the injury must "not [be] speculative—meaning that the injury must have already occurred or be likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).

To establish traceability, a plaintiff must allege a "substantial probability" that the defendant caused the alleged harm. *Winsor*, 62 F.4th at 525. The alleged injury cannot be "the result of the independent action of some third party." *Medina v. Clinton,* 86 F.3d 155, 157 (9th Cir. 1996); *Clapper*, 568 U.S. at 414.

As explained further below, the Amended Complaint fails to satisfy both the injury-in-fact and traceability requirements of Article III.

## A. Plaintiffs Do Not Plausibly Allege An Injury-In-Fact That Satisfies Article III.

A defined-benefit plan participant may establish injury-in-fact in one of two ways: *first*, by showing that his benefits already have been reduced or terminated, *see Thole*, 590 U.S. at 542; or *second*, by alleging that the plan faces an imminent risk of default, such that benefit payments will be impacted. *See Lee*, 837 F.3d at 545-46. Accordingly, an "injury" relating to benefit payments that has not yet occurred, and is not imminent, is too speculative to establish standing. *See id.* at 546.

In *Thole*, the Supreme Court applied the Article III standing requirements to ERISA breach of fiduciary duty claims brought by participants in a defined benefit plan, who alleged that defendants breached their fiduciary duties through mismanagement of the plan's investments, causing the plan to become underfunded. 590 U.S. at 546-47. The Court held that

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

plaintiffs lacked Article III standing because they "failed to plausibly and clearly allege a concrete injury": whether they won or lost the lawsuit, plaintiffs "would still receive the exact same monthly benefits that they are already slated to receive." *Id*. at 541, 544. In so holding, the Court cited its previous ruling in *Spokeo*, which (i) "emphasized that 'Article III standing requires a concrete injury even in the context of a statutory violation'" and (ii) "rejected the argument that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Id.* at 544 (quoting *Spokeo*, 578 U.S. at 341).

*Thole* and *Spokeo* make clear that the requirements for Article III standing are independent of the requirements of statutory standing. As a result, former plan participants whose benefits were annuitized pursuant to a PRT must still satisfy each of Article III's conditions, notwithstanding Congress's enactment of ERISA Section 502(a)(9) or any other ERISA provision under which they purport to sue. *See Spokeo*, 578 U.S. at 339 ("[I]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing." (quotation omitted)); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021) ("[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court").

For the reasons explained below, the Amended Complaint fails to satisfy these requirements.

### 1.    The Amended Complaint's Allegations Of Actual Harm Do Not Satisfy The Injury-In-Fact Requirement.

The Amended Complaint contends that Plaintiffs have suffered harm in three ways, none of which constitutes an Article III injury-in-fact.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 11
(No. 2:24-CV-02050-KKE)

a.     <u>Alleged Diminution In The Value Of Plaintiffs' Annuities</u>.

First, Plaintiffs advance a theory of harm that finds no precedent in Article III jurisprudence as it relates to defined benefit plans, and that the court in *Camire* found to be foreclosed by *Thole*: Athene's selection as annuity provider for the PRT transaction caused a diminution in the "value" of their annuities.  AC ¶¶ 11, 156, 161.  *See Camire*, 2025 WL 947526, at *3-4 (holding that *Thole* foreclosed theory of harm based on diminution in market value of annuities).  This theory is predicated on the misplaced assumption that Plaintiffs have a legally-protected interest in the market value of their annuities, such that a reduction in that value constitutes an Article III injury.  *See id.* ¶ 156; *see also Winsor*, 62 F.4th at 523 (plaintiff must show an "invasion of a legally protected interest" for Article III injury).  As Plan participants, Plaintiffs had "an interest in [their] fixed future payments only," *David v. Alphin*, 704 F.3d 327, 338 (4th Cir. 2013), which would not be impacted by any change in whatever market value could hypothetically be ascribed to these annuities.  *See Thole*, 590 U.S. at 540, 542-43 (explaining that payments made to defined benefit participants "do not fluctuate with the value of the plan" and "are not tied to the value of the plan").  In any event, a change in the hypothetical market value of the annuities would have had no impact on Plaintiffs because, as they appear to acknowledge (AC ¶¶ 139-40), they could not assign or alienate their annuities.  *See* 29 U.S.C. § 1056(d)(1) (prohibiting assignment and alienation of pension benefits); I.R.S. Gen. Couns. Mem. 39882, 1992 WL 311700 (Oct. 26, 1992) (applying anti-assignment rule to annuities following a PRT).  Plaintiffs thus cannot plausibly claim to have been harmed, for purposes of Article III, based on any alleged diminution in the market value of their annuities that allegedly resulted from the PRT.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 12
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

b.    Allegations Of Fiduciary Breach.

2       Second, Plaintiffs argue that they suffered "intangible" harm due to Defendants' alleged

3   ERISA violations.  The plaintiffs in *Thole* similarly alleged a violation of ERISA's statutory

4   fiduciary obligations, but the Supreme Court concluded that this did not change the calculus

5   because "'Article III standing requires a concrete injury even in the context of a statutory

6   violation.'" *Id*. at 544 (quoting *Spokeo*, 578 U.S. at 341); *see also TransUnion*, 594 U.S. 413

7   (2021) (alleged statutory violation without cognizable "adverse effects" does not satisfy Article

8   III).  Accordingly, absent an alleged underlying concrete injury, the alleged statutory violation by

9   itself does not confer standing.  And insofar as Plaintiffs contend that they need not meet this

10  requirement because they seek equitable relief—specifically, disgorgement—this position is

11  foreclosed by *Thole* as well.  *See Thole*, 590 U.S. at 544 (rejecting argument that plaintiffs had

12  standing to bring claim under ERISA Section 502(a)(3) merely because "ERISA affords . . . a

13  general cause of action to sue for . . . equitable relief"); *Winsor*, 62 F.4th at 527-29 (rejecting

14  plaintiffs' argument that because they sought equitable remedies of disgorgement and surcharge,

15  they need not allege "tangible out-of-pocket loss"); *Blair v. Assurance IQ LLC*,

16  No. 23-cv-16-KKE, 2023 WL 6622415, at *4 (W.D. Wash. Oct. 11, 2023) ("The fact that a

17  statute . . . provides for injunctive relief does not automatically convey standing to seek such

18  relief. . . . a plaintiff must still show that his injury is concrete and likely to be redressed by the

19  relief he seeks").

20                      c.    Loss Of ERISA Coverage.

21       Third, Plaintiffs claim to have suffered harm merely due to the loss of coverage by an

22  ERISA-governed plan.  *See* AC ¶¶ 14, 160.  But there can be no cognizable harm resulting from

23  the loss of ERISA coverage because Plaintiffs have no right to indefinite participation in an

24  ERISA plan to begin with.  To the contrary, as Plaintiffs acknowledge, ERISA specifically

25  authorizes the loss of ERISA protections pursuant to PRTs.  *See supra* pp. 2-3.  Furthermore,

26

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 13
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

even if the loss of ERISA coverage were considered a legally-cognizable injury, for the reasons previously discussed (*supra* p. 3), the loss of coverage pursuant to a PRT is attributable to a settlor—rather than fiduciary—decision, and, as such, cannot satisfy Article III's traceability requirements.

### 2.    The Amended Complaint's Allegations Of Future Harm Do Not Satisfy The Injury-In-Fact Requirement.

In addition to arguing—unsuccessfully—that Plaintiffs already have been harmed, the Amended Complaint claims that there is a substantial likelihood that Athene either: (i) will fail in the near future, in which case Plaintiffs will not receive their benefit payments; or (ii) will be subjected to state regulatory intervention that will necessitate an interruption in Plaintiffs' benefit payments.  Neither assertion satisfies Article III's actual or imminent harm requirement.

The Supreme Court recognizes that, under limited circumstances, a plaintiff who has not suffered actual harm may establish an Article III injury based on the risk or threat of future injury, so long as that threatened future injury satisfies the Article III "imminence" requirement. In *Clapper*, the Supreme Court explained that for a plaintiff to satisfy Article III's requirements this way, the threatened injury must be "certainly impending." 568 U.S. at 409 ("[a]lthough imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is certainly impending").  The Court also stated that the "certainly impending" requirement is not satisfied by a threatened harm that "relies on a highly attenuated chain of possibilities."  *Id.* at 410.

Consistent with *Clapper*, the Ninth Circuit and district courts therein have held that allegations of hypothetical, possible, or even probable injury do not meet the *Clapper* standard; nor do allegations of threatened harm based on the hypothetical occurrence of a series of events. *See Wright v. SEIU Loc. 503*, 48 F.4th 1112, 1118-20 (9th Cir. 2022) (holding that plaintiff's

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 14
(No. 2:24-CV-02050-KKE)

allegations of future harm were "too speculative to confer standing" because they rested on "a 'highly attenuated chain' of inferences"); *Tetra Tech EC, Inc., v. EPA*, No. 20-cv-8100, 2022 WL 4372073, at *2 (N.D. Cal. Sept. 21, 2022) (granting motion to dismiss for lack of Article III standing where plaintiff alleged it was "reasonably probable," but not "likely," that it would suffer alleged future harm); *Voss v. Sutardja*, No. 14-cv-01581-LHK, 2015 WL 349444, at *11-12 (N.D. Cal. Jan. 26, 2015) (granting motion to dismiss for lack of standing where "claimed injury would, as of now, be the product of a series of hypotheticals" and therefore was "[f]ar from being '*certainly* impending,'" and instead "too speculative for Article III purposes").

Applying these principles, the district court in *Camire* dismissed on standing grounds a complaint which, like the Amended Complaint, alleged a risk of future loss of or reduction in plaintiffs' benefits because those benefits were transferred to Athene pursuant to a PRT. *Camire*, 2025 WL 947526, at *6-7. With respect to plaintiffs' claims of future harm, the court found the complaint's allegations insufficient for two reasons: first, the allegations were "comparative – focusing on why Athene is riskier than other annuity providers . . . rather than absolute." *Id.* at *7. Second, applying *Clapper's* instruction that a threatened injury does not satisfy Article III if it "relies on a highly attenuated chain of possibilities," the court concluded that several distinct events would need to occur before plaintiffs "could ever experience the harm they are concerned about":

> First, Athene would need to fail, which means that it would have to (1) "suffer[] catastrophic losses;" (2) "fail[] to sufficiently mitigate any such losses to preserve Plaintiffs' benefits;" and (3) fail "to secure alternative funding sources." . . . Then, Plaintiffs would need to have benefits that actually exceed the amount that their SGAs cover, which is over $250,000 in most states. . . . Finally, Athene's accounts would need to be underfunded or insufficient to cover participants' losses in the event of failure. Because Plaintiffs' allegations do not plausibly suggest that this "highly attenuated chain of possibilities" is likely, *Clapper*, 568 U.S. at 410, the court cannot conclude that any harm to Plaintiffs is "certainly impending."

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 15
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    *Id.*[5]

2         The Amended Complaint, filed shortly after the motion to dismiss ruling in *Camire*,

3    appears designed to remedy these shortcomings by adding to the original complaint's allegations

4    of future harm.  But these allegations do not alter the conclusion that Plaintiffs have failed to

5    satisfy the Article III requirements.

6              a.    The Amended Complaint Fails To Plausibly Allege A Substantial
                     Likelihood That Athene Will Default And Fail To Pay Benefits.
7

8         First, the Amended Complaint fails to plausibly allege an Article III injury-in-fact based

9    on allegations that Athene is "substantially likely to fail in the near future." AC ¶ 9.  Like the

10   complaint in *Camire*, the Amended Complaint's allegations regarding the risk of default are

11   primarily based on comparisons to other "traditional" annuity providers, rather than Athene's

12   "absolute" risk, and thus do not plausibly show that Athene itself is at a high risk of failure.  For

13   example, the Amended Complaint compares Athene to "traditional" annuity providers with

14   respect to its "surplus to liability ratio," "growth rate of liabilities," "ratio of high risk assets to

15   reported surplus," and use of "affiliated reinsurance."  *See, e.g.,* AC ¶¶ 69-76, 88-92.  Whatever

16   allegations are made in support of the conclusion that Athene faces an absolute risk of failure are

17   too speculative to satisfy the plausibility requirement.  *See Clapper*, 568 U.S. at 401 (explaining

18   that for an alleged future injury to satisfy the imminence requirement, it cannot be "too

19   speculative for Article III purposes," and holding that plaintiffs lacked standing because their

20   "theory of future injury is too speculative to satisfy the well-established requirement that

21   _____

22   [5] A different district court recently denied a motion to dismiss a similar complaint, finding that it "barely" satisfied
     and "eked out" the requirements for pleading Article III standing.  *Konya v. Lockheed*, No. 24-cv-750, 2025 WL
23   962066, at *9 (D. Md. Mar. 28, 2025).  Respectfully, the *Lockheed* court's motion to dismiss decision is not well-
     reasoned, as it failed even to recognize or apply the Supreme Court's holding in *Clapper* that allegations of
24   increased risk of harm cannot satisfy Article III standing requirements absent a showing that the risk is certainly
     impending.  In any event, the district court recently granted Lockheed's motion for certification of an interlocutory
     appeal and stayed the proceedings, and in so doing acknowledged that there is "a substantial basis for difference of
25   opinion" as to whether the plaintiffs sufficiently alleged an Article III injury, and that the *Camire* court reached the
     opposite conclusion.  *Konya v. Lockheed,* No. 24-cv-750, 2025 U.S. Dist. LEXIS 139240, at *8 (D. Md. July 22,
26   2025).

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 16
(No. 2:24-CV-02050-KKE)

1    threatened injury must be 'certainly impending'"); *Chan v. Prudential Ins. Co. of Am.,*

2    No. 13-cv-524, 2013 WL 4511437, at *1 (W.D. Wash. Aug. 23, 2013) (confirming that "[i]f the

3    plaintiff 'ha[s] not nudged [its] claims across the line from conceivable to plausible, [the]

4    complaint must be dismissed'" and "a pleading that only offers 'labels and conclusions' or 'a

5    formulaic recitation of the elements of a cause of action will not do'" (quoting *Twombly*, 550

6    U.S. at 555)).

7         For example, the Amended Complaint purports to create an inference that Athene is at

8    risk of default because of its investment in Apollo-affiliated companies, several of which

9    allegedly have failed. *Supra* pp. 7-8. However, the Amended Complaint provides no

10   information about the circumstances in which these other companies defaulted or if they even are

11   insurance companies, let alone whether their default should have any bearing on Athene's

12   financial health.

13        Similarly unpersuasive is the Amended Complaint's effort to draw an inference that

14   Athene is suddenly facing a substantial risk of default because of recent events in the financial

15   markets that have caused interest rates to rise. As a threshold matter, these assertions should be

16   ignored because they post-date the December 2024 filing of the original complaint. *See, e.g.,*

17   *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1047 (9th Cir. 2014) ("Standing is

18   determined by the facts that exist at the time the complaint is filed." (quoting *Am. C.L. Union of*

19   *Nevada v. Lomax,* 471 F.3d 1010, 1015 (9th Cir. 2006))*; see also Carney v. Adams*, 592 U.S. 53,

20   59-60 (2020) (plaintiffs must establish "standing as of the time [they] brought this lawsuit")

21   (collecting cases); AC ¶ 66. In any event, the new assertions are "inherently speculative," and

22   thus an insufficient basis for establishing Article III standing. *In re Merrill Lynch & Co*, 273

23   F. Supp. 2d 351, 367–77 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005); *see also SEC v.*

24   *First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989) (even with "sophisticated

25   econometric modelling, predicting stock market responses to alternative variables is . . . at best

26   speculative"). Even in the Amended Complaint's telling, Athene would be materially impacted

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 17
(No. 2:24-CV-02050-KKE)

1   only by "a severe correction in the financial marketplace," AC ¶ 66, and there are no well-

2   pleaded facts plausibly suggesting that such a severe correction is taking place.

3           Plaintiffs' claims regarding recently "failed" insurers (*supra* p. 8) fare no better, since the

4   Amended Complaint provides little information about the nature or extent of these four insurers'

5   financial decline, and makes no effort to establish any similarity between them and Athene.  It

6   does not even allege that these insurers were annuity providers for ERISA plans engaging in

7   PRTs.

8           Finally, none of the contentions regarding the risk of Athene's failure alter the fact that,

9   in order for Plaintiffs to be at imminent risk of harm, there would also have to be a substantial

10  risk of each of the following events occurring: (i) Athene's separate account, specifically created

11  for Weyerhaeuser annuitants (AC ¶¶ 95, 98), becomes insufficient to satisfy Athene's obligations

12  to Plaintiffs;[6] (ii) Athene's general account is unable to serve as a backstop; (iii) Athene's

13  hypothetical mismanagement of the separate and general accounts (necessary for (i) and (ii) to

14  occur) somehow goes unnoticed by state insurance regulators; (iv) Athene's reinsurers fail;

15  (v) Athene fails to protect Plaintiffs' benefits by securing alternative funding; *and* (vi) the SGAs

16  fail to provide back-up benefit payments to annuitants.  This is precisely the type of "highly

17  attenuated chain of possibilities" that the Supreme Court in *Clapper* found to be fatal to an

18  assertion of Article III standing.  *Clapper*, 568 U.S. at 410-11; *see Camire*, 2025 WL 947526, at

19  *7, *supra* pp. 14-15.

20                    b.      The Amended Complaint Fails To Plausibly Allege A Substantial
                              Likelihood Of Regulatory Action That Interrupts Benefit Payments.
21

22          Plaintiffs separately seek to satisfy Article III by contending that unknown government

23  representatives will place Athene into rehabilitation or conservation even before it defaults.  *See,*

24

25  ―――――――――――――――
    [6] Notably, Plaintiffs do not allege that the separate account is presently insufficient to cover the PRT liabilities.
26  Rather, they speculate that Athene *may* choose to use excess assets in the separate account to satisfy other financial
    obligations, and this could one day hinder Athene's ability to pay benefits to the Transferred Group if the market
    value of the assets in the separate account should fall below the value of the liabilities.  AC ¶ 98.

    WEYERHAEUSER DEFENDANTS'                          **Perkins Coie LLP**
    MOTION TO DISMISS – 18                            1301 Second Avenue, Suite 4200
    (No. 2:24-CV-02050-KKE)                           Seattle, Washington 98101-3804
                                                      Phone: +1.206.359.8000
                                                      Fax: +1.206.359.9000

1   *e.g.,* AC ¶¶ 10, 72, 97.  Insofar as this theory of Article III harm is predicated on the same

2   allegations of Athene suffering a financial decline, it fails for the reasons previously stated.  But

3   even if there were a plausible risk that Athene would fall into financial decline, Plaintiffs have

4   failed to plausibly allege a certainly impending risk of government interference that will

5   endanger their annuities.  As *Clapper* recognizes, plaintiffs cannot establish Article III standing

6   by relying on "speculation about 'the unfettered choices made by independent actors not before

7   the court.'"  *Clapper*, 568 U.S. at 414 & n.5*; see also Wright*, 48 F.4th at 1119-20 (holding that

8   alleged future harm based on "inferences in which independent actors must act in a certain

9   manner . . . rest[ed] on nothing more than rank speculation" and was not "certainly impending"

10  (citations omitted)); *Cierco v. Mnuchin*, 857 F.3d 407, 418 (D.C. Cir. 2017) ("It is well

11  understood that standing is substantially more difficult to establish when it depends on the

12  unfettered choices made by independent actors not before the courts and whose exercise of broad

13  and legitimate discretion the courts cannot presume either to control or to predict.") (quotations

14  omitted).

15          Plaintiffs do not allege that any government actors are currently contemplating regulatory

16  action or are investigating Athene.  They merely make a bare conclusory assertion that Athene

17  "will likely be subject to regulatory actions." AC ¶ 10.  Furthermore, the forms of intervention

18  identified in the Amended Complaint, rehabilitation and conservation, are severe remedies that

19  rarely are invoked.  This is evident from the examples cited in the Amended Complaint of other

20  failed insurers.  In each case, the insurer was put into rehabilitation only after it had collapsed or

21  was on the brink of failure.  *See id.* ¶ 109 (contending 777 Re had ceased insurance activities and

22  dissolved); ¶¶ 105-06 (contending Columbian Mutual was put into rehabilitation months after its

23  subsidiary, Columbian Life, had collapsed, which occurred only after completion of an

24  "independent actuarial analysis" by New York regulators); ¶ 107 (contending state regulators

25  intervened with PHL Variable only after insurer was facing a crisis and "attempted to stabilize

26  itself").

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 19
(No. 2:24-CV-02050-KKE)

In Iowa and New York, where the relevant Athene insurers are located, the government can apply for rehabilitation or conservation only by showing that an insurer has engaged in specific prohibited conduct, willfully violated the law, or is in a "condition that the further transaction of business" would be "financially hazardous to its policyholders, creditors, or the public." Iowa Code § 507C.12(1); N.Y. Ins. Law § 3402. The Amended Complaint does not allege that any of these conditions have been satisfied.

Finally, Plaintiffs fail to offer any nonconclusory allegations establishing why, even if regulatory action were taken, it would cause a delay or cessation in their benefit payments. *See, e.g.*, AC ¶¶ 9, 75, 111–12. If anything, their references to the four recently failed insurers cut against their argument since only one of the four (PHL Variable) issued a moratorium on benefits payments. *Id.* ¶¶ 10, 105-09. Thus, taking the Amended Complaint at face value, even if state regulators took action against Athene, Plaintiffs' forecast that such action would impact Plaintiffs' benefits is entirely speculative and fails to meet both the *Clapper* standard and generally-applicable pleading rules.

## B.    Plaintiffs' Alleged Injuries Are Not Traceable To The Weyerhaeuser Defendants.

Independent of their failure to allege an injury-in-fact, Plaintiffs have failed to allege an injury that is traceable to a fiduciary breach by the Weyerhaeuser Defendants. There is no dispute that SSGA Trust Co. was delegated sole fiduciary responsibility for selecting the annuity provider. *See* AC ¶¶ 131-32, 137. The Weyerhaeuser Defendants' role in connection with the PRT was limited to Weyerhaeuser's *settlor* decision to complete a PRT. *See Gelardi v. Pertec Comput. Corp.*, 761 F.2d 1323, 1325 (9th Cir. 1985) (holding that fiduciary that delegated discretion for deciding benefits claims to plan administrator "was no longer a fiduciary because it retained no discretionary control over the disposition of claims"), *overruled on other grounds by Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011); *Burke v. Boeing Co.*, 42 F.4th 716, 725-28 (7th Cir. 2022) (affirming dismissal of fiduciary breach claims based

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 20
(No. 2:24-CV-02050-KKE)

on retention of company stock in 401(k) plan, brought against plan sponsor and committee otherwise responsible for plan's management and investments, because responsibility relating to plan's company stock holdings had been delegated to an independent fiduciary and defendants therefore did not act as fiduciaries in connection with challenged conduct). Thus, as a matter of law, any of Plaintiffs' claims that are premised on fiduciary misconduct cannot be traced to the Weyerhaeuser Defendants.

In short, for all of the reasons stated above, Plaintiffs lack Article III standing to proceed against Defendants.

## II. PLAINTIFFS' CLAIMS INDEPENDENTLY SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM FOR RELIEF.

Even if not dismissed for lack of Article III standing, Plaintiffs' claims should be dismissed for failure to state a claim. For the reasons stated in SSGA Trust Co.'s Motion to Dismiss the Amended Complaint, with which the Weyerhaeuser Defendants join, there are no viable fiduciary breach claims against *any* of the Defendants, as the allegations in the Amended Complaint fail to support Plaintiffs' contention that at the time Athene was selected, it was an inferior annuity provider. Even if that were not the case, there would be no viable claims against the Weyerhaeuser Defendants since, as explained above (*supra* pp. 2, 5), the Weyerhaeuser Defendants exercised no fiduciary responsibility with respect to the selection of Athene. There are no viable prohibited transaction claims against the Weyerhaeuser Defendants either. And Plaintiffs' claims against the Weyerhaeuser Defendants for co-fiduciary breach, knowing participation in a fiduciary breach, and fiduciary breach for failure to monitor SSGA Trust Co. all fail to allege the requisite elements of these claims.

### A. The Amended Complaint Does Not Plausibly Allege Prohibited Transaction Claims.

As a threshold matter, there are no viable prohibited transaction claims against the Weyerhaeuser Defendants because such claims can be asserted only against plan fiduciaries.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 21
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1    Both of the prohibited transaction sections of ERISA on which Plaintiffs base their claims are

2    directed specifically at the conduct of plan fiduciaries.  *See* ERISA Section 406(a), 29 U.S.C.

3    § 1106(a)(1) ("A fiduciary with respect to a plan shall not cause the plan to engage in" the types

4    of transactions listed in subsections (a)(1)(A)-(a)(1)(E)); ERISA Section 406(b), 29 U.S.C.

5    § 1106(b) ("A fiduciary with respect to a plan shall not" engage in conduct set forth in

6    subsections (b)(1)-(b)(3)); *see also Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530

7    U.S. 238, 245 (2000) (Section 406(a) "imposes a duty only on the fiduciary that causes the plan

8    to engage in the transaction").  As previously stated, the Weyerhaeuser Defendants did not

9    exercise fiduciary responsibility with respect to the PRT.  The prohibited transaction claims are

10   also dismissible for independent reasons, as discussed below.

### 1.    Section 406(a) Claims.

12       Plaintiffs' claims under ERISA Section 406(a) are all predicated on the assumption that

13   Athene is a "party-in-interest" as that term is defined by ERISA, because it provides services to

14   the Plan.  *See* 29 U.S.C. § 1002(14)(B) (defining "party in interest" as, in relevant part, "a person

15   providing services to" an employee benefit plan).  The Plaintiffs' assumption is misplaced, for

16   two reasons.

17       First, Athene's sale of annuity contracts was not a provision of services.  Rather, it was

18   the sale of a good.  *See NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S.

19   251, 259 (1995) ("[A]nnuities are widely recognized as . . . *investment products*." (emphasis

20   added)); DOL Opinion Letter No. 76-36, 1976 WL 5051 (Jan. 15, 1976) ("[T]he sale by an

21   insurance company of a group insurance policy to an employer to fund an employee benefit plan

22   would not alone cause the insurance company to become a party in interest to the plan.");

23   *Marshall v. Carroll*, No. 79-cv-495, 1980 U.S. Dist. LEXIS 17767, at *27-28 (N.D. Cal. Apr. 18,

24   1980) ("[T]hat an insurance company provides insurance to a plan does not transform it into a

25   party in interest within the meaning of [§ 1002(14)(B)].")*, aff'd sub nom. Donovan v. Carroll*,

26   673 F.2d 1337 (9th Cir. 1982).

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 22
(No. 2:24-CV-02050-KKE)

1    Second, a "party in interest" is limited to persons *already* "providing services" to the plan

2    at the time of the challenged transaction. *See, e.g.*, *D.L. Markham DDS, MSD, Inc. 401(K) Plan*

3    *v. Variable Annuity Life Ins. Co.*, 88 F.4th 602, 610 (5th Cir. 2023) (holding that "entities that are

4    not already providing services to a particular plan at the time of contracting with that plan . . . are

5    not 'parties in interest' under ERISA"); *Lauderdale v. NFP Ret., Inc.*, No. 21-cv-301, 2022 WL

6    17260510, at *22 (C.D. Cal. Nov. 17, 2022) (concluding that "a 'fiduciary does not cause a

7    prohibited transaction by entering into a contract that makes that counterparty a party in interest.'

8    . . . To do so would be 'circular'").  A contrary rule, whereby an "initial agreement with a service

9    provider would simultaneously transform that provider into a party in interest," would be

10    "absurd," since that would mean that each retention of a service provider is a prohibited

11    transaction. *Ramos v. Banner Health*, 1 F.4th 769, 787 (10th Cir. 2021).  Here, the Amended

12    Complaint does not allege that Athene had any relationship at all with the Plan prior to the PRT

13    transaction.

14    Plaintiffs' Section 406(a) claims also fail because the allegations in the Amended

15    Complaint could not possibly circumvent the multiple prohibited exemptions that apply,

16    including: Department of Labor Prohibited Transaction Exemption 84-24 ("PTE 84-24"), which

17    permits a "purchase, with plan assets, of an . . . annuity contract from an insurance company" so

18    long as no more than "*reasonable compensation*" is paid; 71 Fed. Reg. 5887, 5889 (Feb. 3, 2006)

19    (emphasis added); ERISA Section 408(b)(2), 29 U.S.C. § 1108(b)(2), which exempts

20    transactions for "necessary" plan services that involve a "reasonable arrangement" and "no more

21    than *reasonable compensation*"; and ERISA Section 408(b)(17), which exempts transactions

22    where the plan pays "*adequate consideration*," or "the fair market value of the asset as

23    determined in good faith by a fiduciary." (emphases added).[7]  Since the Amended Complaint

24

25    ───────────────

[7] The Supreme Court's recent ruling in *Cunningham v. Cornell University*, 145 S. Ct. 1020 (2025), does not

26    foreclose this argument.  *Cunningham* merely holds that a complaint need not plead facts that disprove the applicability of a prohibited transaction exemption.  *Id.* at 1027, 1032.  But where, as here, the pleadings confirm the availability of the exemption, the court may dismiss the underlying claim for lack of plausibility.  *See, e.g., Sams v.*

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 23
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1   contends that Athene cost the Plan *less* than other available annuity providers, it effectively

2   confirms that the compensation for Athene's services did not exceed reasonable compensation,

3   and thus that these exemptions apply.

4                        **2.    Section 406(b) Claims.**

5           ERISA Section 406(b) prohibits a fiduciary from "deal[ing] with the assets of the plan in

6   his own interest or for his own account," or "act[ing] in any transaction involving the plan on

7   behalf of a party . . . whose interests are adverse to the interests of the plan or the interests of its

8   participants or beneficiaries." 29 U.S.C. §§ 1106(b)(1), (b)(2).  First, Plaintiffs cannot plausibly

9   allege that the Weyerhaeuser Defendants "dealt" with plan assets in connection with the PRT,

10  since the Amended Complaint acknowledges that SSGA Trust Co. had sole responsibility for

11  directing the transfer of Plan assets in connection with the transaction.  Second, on its face, the

12  Amended Complaint fails to allege that the PRT transaction was adverse to the interests of the

13  Plan, since it asserts that the Plan purchased the annuities from Athene for *less* – rather than

14  more – that what the Plan would have paid to another annuity provider.  AC ¶¶ 149, 155, 183.

15  The PRT also is exempted from Section 406(b) liability under PTE 84-24 and ERISA Section

16  408(b)(2), for the same reasons these exemptions apply to the Section 406(a) claims.

17          Accordingly, Count III of the Amended Complaint should be dismissed.

18          **B.    The Amended Complaint Does Not Plausibly Allege**
19                  **Co-Fiduciary Liability Claims.**

20          Under ERISA Sections 405(a)(1)-(3), 29 U.S.C. §§ 1105(a)(1)-(3), a fiduciary is liable as

21  a co-fiduciary if he: knowingly participated in or concealed another fiduciary's breach (Section

22  405(a)(1)); breached his own fiduciary responsibilities in enabling another fiduciary's breach

23  (Section 405(a)(2)); or had knowledge of a breach and failed to take steps to remedy it (Section

24

25

26  *Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (explaining rule that "affirmative defenses routinely serve as a
    basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the complaint").

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 24
(No. 2:24-CV-02050-KKE)

1  405(a)(3)).  The co-fiduciary liability claims against the Weyerhaeuser Defendants fail to satisfy

2  any of these requirements.

3  First, for the reasons stated previously and in SSGA Trust Co.'s Motion to Dismiss,

4  Plaintiffs have failed to state an underlying fiduciary breach claim against any of the Defendants.

5  *See Monper v. Boeing Co.*, 104 F. Supp. 3d 1170, 1180 (W.D. Wash. 2015) (concluding that co-

6  fiduciary liability claims "are derivative claims that necessarily fail where there is no underlying

7  violation").

8  Second, the Amended Complaint does not plausibly allege that the Weyerhaeuser

9  Defendants had knowledge that SSGA Trust Co. had breached its fiduciary duties.  *See Su v.*

10  *Alerus Fin., N.A.*, No. 23-cv-537, 2024 WL 4681323, at *5 (D. Idaho Nov. 4, 2024) (dismissing

11  co-fiduciary liability claim where complaint lacked sufficient factual support for concluding that

12  defendant knew of other fiduciary's breaches); *see also. Zavala v. Kruse-W., Inc.*, No. 19-cv-

13  239, 2021 WL 5883125, at *10 (E.D. Cal. Dec. 13, 2021) (explaining that to be subject to co-

14  fiduciary liability under ERISA Sections 405(a)(1) and (a)(3), "[t]he defendant fiduciary must

15  know the other person is a fiduciary with respect to the plan, must know that he participated in

16  the act that constituted a breach, and must know that it was a breach." (quotation omitted)).

17  Finally, the Amended Complaint fails to plausibly allege that the Weyerhaeuser

18  Defendants breached their fiduciary duties in enabling another breach.  Indeed, for the reasons

19  stated, Plaintiffs have failed to plausibly allege any fiduciary conduct by the Weyerhaeuser

20  Defendants at all in connection with the PRT.  *See Gleason v. Orth*, No. 22-cv-305, 2022 WL

21  4534405, at *8 (W.D. Wash. Sept. 28, 2022) (dismissing claim under ERISA Section 405(a)(2)

22  because plaintiffs failed to adequately plead that defendants breached their fiduciary duties by

23  failing to monitor other allegedly breaching fiduciary); *Baird v. BlackRock Institutional Tr. Co.,*

24  *N.A.*, 403 F. Supp. 3d 765, 789 (N.D. Cal. 2019) (dismissing ERISA Section 405(a)(2) claim

25  against fiduciary investment consultant because complaint "d[id] not adequately plead that

26  [consultant] committed an underlying breach").

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 25
(No. 2:24-CV-02050-KKE)

1    Accordingly, Plaintiffs' co-fiduciary liability claims (asserted as parts of Counts I and III)

2    should be dismissed.

3    **C.    The Amended Complaint Does Not Plausibly Allege**
          **Non-Fiduciary Knowing Participation Claims.**
4

5    To state a claim against a nonfiduciary for knowing participant in a breach of fiduciary

6    duty, "the plaintiff must plead facts sufficient to show: '(1) that there is a remediable wrong, *i.e.*,

7    that the plaintiff seeks relief to redress a violation of ERISA or the terms of a plan; (2) that the

8    relief sought is appropriate equitable relief; and (3) that the defendant has actual or constructive

9    knowledge of the circumstances'" that rendered the ERISA violation wrongful. *Truong v. KPC*

10   *Healthcare, Inc.*, No. 8:23-cv-1384, 2024 WL 1984569, at *12 (C.D. Cal. May 3, 2024).  To

11   begin with, Plaintiffs lack statutory standing to assert this claim because: (i) as former

12   participants of the Plan, they lack standing to assert a claim under Section 502(a)(3), and Section

13   502(a)(9) does not afford a claim for equitable relief.  *See* 29 U.S.C. §§ 1132(a)(3) & (a)(9);

14   *Harris*, 530 U.S. at 247 ("ERISA's 'comprehensive and reticulated' scheme warrants a cautious

15   approach to inferring remedies not expressly authorized by the text"); *D.L. Markham*, 88 F.4th at

16   611 ("This court has previously acknowledged that Congress acts intentionally and purposely

17   when it includes particular language in one section of a statute but omits it from another.").  In

18   any event, Plaintiffs fail to satisfy any of the other required elements of the claim since, for the

19   reasons stated above and in SSGA Trust Co.'s Motion, the Amended Complaint fails to plausibly

20   allege an underlying fiduciary breach or prohibited transaction, or that the Weyerhaeuser

21   Defendants knew that the underlying conduct was unlawful.  *See Harris*, 530 U.S. at 251

22   (holding that to sustain a non-fiduciary knowing participation claim in connection with an

23   underlying prohibited transaction, plaintiff must show that the non-fiduciary entered the

24   transaction with knowledge that the fiduciary was knowingly violating ERISA); *Del Castillo v.*

25   *Cmty. Child Care Council of Santa Clara Cnty., Inc.*, No. 17-cv-7243, 2019 WL 6841222, at *6

26   (N.D. Cal. Dec. 16, 2019) ("[M]ere knowledge that a transaction is (or might be) 'prohibited' . . .

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 26
(No. 2:24-CV-02050-KKE)

does not mean that [defendants] knew or should have known of any wrongdoing, as required under *Harris*"); *Ruilova v. Yale-New Haven Hosp. Inc.*, No. 22-cv-111, 2023 WL 2301962, at *23 (D. Conn. Mar. 1, 2023) (dismissing non-fiduciary knowing participation claim that was based on conclusory statements that defendant had requisite knowledge of and knowingly participated in alleged fiduciary breaches); *cf. Gamino v. SPCP Grp., LLC*, No. 21-cv-1466, 2022 WL 336469, at *5 (C.D. Cal. Feb. 2, 2022) (denying motion to dismiss non-fiduciary knowing participation claim where complaint plausibly alleged that Defendant "was aware" that challenged transaction was imprudent and fees received in connection with transaction were unreasonable).

Accordingly, Count II of the Amended Complaint should be dismissed.

### D.    The Amended Complaint Does Not Plausibly Allege Failure To Monitor Claims Against The Weyerhaeuser Defendants.

Finally, the claim against the Weyerhaeuser Defendants for breaching their fiduciary duty to monitor SSGA Trust Co. fails for two reasons.  First, the Amended Complaint fails to plausibly allege any underlying breaches.  *See Monper*, 104 F. Supp. 3d at 1180 (concluding that failure to monitor claims "are derivative claims that necessarily fail where there is no underlying violation"); *Tobias v. NVIDIA Corp.*, No. 20-cv-6081, 2021 WL 4148706, at *16 (N.D. Cal. Sept. 13, 2021) ("Plaintiffs' failure to monitor claim necessarily fails because Plaintiffs have failed to state an underlying ERISA violation").  Second, the Amended Complaint contains no specific allegations as to how the Weyerhaeuser Defendants failed to monitor SSGA Trust Co.'s conduct, or as to how they were on notice of a potential breach.  *See Carter v. San Pasqual Fiduciary Tr. Co.*, No. 15-cv-1507, 2016 WL 6803768, at *5 (C.D. Cal. April 18, 2016) (granting motion to dismiss duty to monitor claim where "Plaintiffs allege[d] no facts regarding whether, when, and to what extent Defendants monitored" their appointees); *Gleason*, 2022 WL 4534405, at *7-8 (concluding that "[t]o defeat a motion to dismiss for failure to monitor, the nonmovant must point to allegations of specific facts about the extent a fiduciary did not monitor

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 27
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

its appointee," and dismissing duty to monitor claim because "[t]he complaint [did] not show how [defendant] specifically failed to monitor" his appointee); *see also Perez v. WPN Corp.*, No. 14-cv-1494, 2017 WL 2461452, at *12 (W.D. Pa. June 7, 2017) (one that appoints an ERISA fiduciary "is not exposed to liability *unless* something 'put [them] on notice of possible misadventure by their appointees'").

Accordingly, the Court should dismiss Count IV of the Amended Complaint.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Weyerhaeuser Defendants' Motion and dismiss the Amended Complaint with prejudice.

\*\*\*

I certify that this memorandum contains 9,324 words, in compliance with the Local Civil Rules and Dkts. 61 & 63.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 28
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1

July 31, 2025

Respectfully submitted,

2

3

By: *s/ Kathleen M. O'Sullivan*
Kathleen M. O'Sullivan, WSBA No. 27850
Hannah E.M. Parman, WSBA No. 58897
**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000
KOSullivan@perkinscoie.com
HParman@perkinscoie.com

4

5

6

7

8

Myron D. Rumeld (*pro hac vice*)
Joseph E. Clark (*pro hac vice*)
**Proskauer Rose LLP**
Eleven Times Square
New York, NY 10036-8299
Telephone: 212-969-3000
mrumeld@proskauer.com
jclark@proskauer.com

9

10

11

12

Attorneys for Defendants Weyerhaeuser
Company, Weyerhaeuser Company Annuity
Committee, and Weyerhaeuser Company
Administrative Committee

13

14

15

16

17

18

19

20

21

22

23

24

25

26

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 29
(No. 2:24-CV-02050-KKE)