1

THE HONORABLE KYMBERLY K. EVANSON

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

GREGORY MANEMAN, ANNETTE
WILLIAMS, CASSANDRA WRIGHT, JAMES
HOLLINS, AND PIERRE DONABY,
individually and as representatives on behalf of a
class of similarly situated persons,

No. 2:24-cv-02050-KKE

12

**STATE STREET GLOBAL
ADVISORS TRUST COMPANY'S
MOTION TO DISMISS
PLAINTIFFS' AMENDED
COMPLAINT**

13

14

Plaintiffs,

15

v.

**NOTE ON MOTION CALENDAR:**
OCTOBER 24, 2025 (per Dkt. No. 63)

16

WEYERHAEUSER COMPANY,
WEYERHAEUSER COMPANY ANNUITY
COMMITTEE, WEYERHAEUSER COMPANY
ADMINISTRATIVE COMMITTEE, STATE
STREET GLOBAL ADVISORS TRUST
COMPANY, and JOHN DOES 1-5,

ORAL ARGUMENT REQUESTED

17

18

19

Defendants.

20

21

22

23

24

25

26

SSGA TRUST CO.'S MOTION TO DISMISS – i
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 2

I.  SSGA Trust Co. and Its Role With Respect to The Weyerhaeuser PRT
    Transaction. ......................................................................................................... 2

II.  Plaintiffs' Allegations. ........................................................................................ 4

LEGAL STANDARD .............................................................................................................. 5

ARGUMENT ........................................................................................................................ 6

I.  The Amended Complaint Fails to State a Claim Against SSGA Trust Co.
    for Breach of Fiduciary Duty (Count I). .............................................................. 6

    A.  Plaintiffs' Factual Allegations Regarding Athene and Its Purported
        Risks Postdate the Weyerhaeuser PRT and Thus Impermissibly
        Operate From the Vantage Point of Hindsight. ...................................... 6

    B.  The Complaint Does Not Plausibly Allege that SSGA Trust Co.
        Acted Disloyally. .................................................................................. 11

    C.  Plaintiffs Plead No Facts Plausibly Alleging that SSGA Trust Co.
        Employed an Imprudent Process. .......................................................... 13

        1.  Plaintiffs' Reliance On Interpretative Bulletin 95-1 Is
            Flawed ...................................................................................... 14

        2.  Athene's Supposed Credit Risk ................................................. 18

        3.  Athene's Connection to Private Equity....................................... 20

        4.  Bermuda-Based Reinsurers ........................................................ 22

        5.  ModCo and Affiliated Transactions............................................ 22

        6.  Other Purported Concerns With Athene. .................................... 23

    D.  Plaintiffs' Claim of Co-Fiduciary Liability Fails.................................... 25

II.  Count II Is Moot as to SSGA Trust Co........................................................... 25

III.  Plaintiffs' Prohibited Transaction Claim (Count III) Fails as a Matter of
      Law. .................................................................................................................. 25

CONCLUSION.................................................................................................................... 25

SSGA TRUST CO.'S MOTION TO DISMISS – ii
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
5
137 F.4th 1015 (9th Cir. 2025) .......................................2, 5, 6, 9, 10, 11, 12, 14, 17, 19, 20, 21

6

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
2021 WL 229235 (N.D. Cal. Jan. 21, 2021) ............................................................................10
7

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
8
579 F. Supp. 3d 1133 (N.D. Cal. 2022) .........................................................................2, 10, 12

9

*Ashcroft v. Iqbal*,
10
556 U.S. 662 (2009) ................................................................................................................5

11

*Bloom v. AllianceBernstein L.P.*,
725 F. Supp. 3d 325 (S.D.N.Y. 2024) ..............................................................................12, 25
12

*Bussian v. RJR Nabisco, Inc.*,
13
223 F.3d 286 (5th Cir. 2000) ..................................................................................................15

14

*Davis v. Wash. Univ. in St. Louis*,
15
960 F.3d 478 (8th Cir. 2020) ..................................................................................................17

16

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014) ....................................................................................................6, 16, 24
17

*Friend v. Sanwa Bank California*,
18
35 F.3d 466 (9th Cir. 1994) ....................................................................................................12

19

*Hughes v. Northwestern Univ.*,
20
595 U.S. 170 (2022)......................................................................................................5, 15, 24, 24

21

*Hutchins v. HP Inc.*,
767 F. Supp. 3d 912 (N.D. Cal. 2025) ...............................................................................12, 20
22

*Izzarelli v. Rexene Prods. Co.*,
23
24 F.3d 1506 (5th Cir. 1994) ..................................................................................................25

24

*Kopp v. Klein*,
25
894 F.3d 214 (5th Cir. 2018) .............................................................................................11-12

26

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
  323 F.R.D. 145 (S.D.N.Y. 2017) ................................................................................... 7

*Lee v. Verizon Commc'ns, Inc.*,
  837 F.3d 523 (5th Cir. 2016) ....................................................................................... 16

*Matney v. Barrick Gold of N. Am.*,
  80 F.4th 1136 (10th Cir. 2023) .................................................................................... 17

*Patterson v. Morgan Stanley*,
  2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) .......................................................... 10, 12

*PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv.*
  *Mgmt, Inc.*,
  712 F.3d 705 (2d Cir. 2013) ...................................................................................... 6, 9

*In re RCN Litig.*,
  2006 WL 1273834 (D.N.J. Mar. 22, 2006) ................................................................. 20

*Riley v. Murdock*,
  83 F.3d 415 (4th Cir. 1996) ......................................................................................... 15

*Robainas v. Metro. Life Ins. Co.*,
  2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015) ................................................................ 16

*SEC v. Prakash*,
  718 F. Supp. 3d 1098 (N.D. Cal. 2024) ........................................................................ 2

*Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*,
  733 F.3d 1251 (9th Cir. 2013) ....................................................................................... 5

*Singh v. Deloitte LLP*,
  123 F.4th 88 (2d Cir. 2024) ......................................................................................... 17

*Slack v. Int'l Union of Operating Eng'rs*,
  2014 WL 4090383 (N.D. Cal. Aug. 19, 2014) ............................................................ 25

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ....................................................................................... 11

*Sulyma v. Intel Corp. Inv. Pol'y Comm.*,
  909 F.3d 1069 (9th Cir. 2018) ..................................................................................... 20

*Tibble v. Edison Int'l*,
  729 F.3d 1110 (9th Cir. 2013) ..................................................................................... 10

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ................................................................2

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996)................................................................... 15-16

*Wehner v. Genentech, Inc.*,
   2021 WL 2417098 (N.D. Cal. June 14, 2021) ....................................11

*White v. Chevron Corp.*,
   2017 WL 2352137 (N.D. Cal. May 31, 2017) ...............................10, 14

*Wright v. Ore. Metallurgical Corp.*,
   360 F.3d 1090 (9th Cir. 2004) ............................................................ 6-7

**Statutes**

ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) ...................................6

ERISA § 404(a)(1)(A)(ii), 29 U.S.C. § 1104(a)(1)(A)(ii) ........................15

ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) .................6, 9, 14, 23

ERISA § 405(a), 29 U.S.C. § 1105(a) ................................................5, 25

ERISA § 406(a), 29 U.S.C. § 1106(a) .....................................................25

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) .............................................5

ERISA § 502(a)(9), 29 U.S.C. § 1132(a)(9) .............................................5

Iowa Code § 521E.....................................................................................16

N.Y. Ins. Law § 1322................................................................................16

**Regulations**

29 C.F.R. § 2509.95-1...............................................................................13

29 C.F.R. § 2509.95-1(c) ...........................................................14, 15, 20

29 C.F.R. § 2509.95-1(d) ..........................................................................15

**Other Authorities**

Athene.com, *Our Business*, https://tinyurl.com/5yyhvh72 ..........................4

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

*In re Athene Annuity and Life Co., Athene Holding Ltd.*, New York State Dept. of
Fin. Servs. (Apr. 13, 2020), https://www.dfs.ny.gov/system/files/documents/
2020/04/ea20200413_consent_order_athene.pdf. ...................................................................24

Department of Labor, Employee Benefits Security Administration, *Interpretive
Bulletin 95-1 – ERISA Advisory Council* (July 2023),
https://tinyurl.com/mtyycza8 .................................................................................3

David G. Eichhorn, *Pension Risk Transfers May be Transferring Risk to
Beneficiaries*, NISA (Oct. 13, 2022), https://tinyurl.com/mrx8kdsx......................................19

Meg Fletcher, *ELIC'S Collapse Forces Regulatory Changes*, Business Insurance
(May 9, 1999)............................................................................................................3

Government Accountability Office, *Defined Benefit Pension Plans* (Feb. 2012),
https://www.gao.gov/assets/gao-12-324.pdf ...........................................................20

Moody's, *Credit Opinion: Athene Holding Ltd.* (Sept. 10, 2024), https://bit.ly/4jQPpVl .............4

Moody's Ratings, *Offshore reinsurance goes mainstream, raising counterparty risk*,
(Feb. 4, 2025)...........................................................................................................22

NAIC, *NAIC List of Reciprocal Jurisdictions*, https://tinyurl.com/mwvdy263......................22

NAIC, *Risk-Based Capital* (May 9, 2024), https://tinyurl.com/yc88cedr ....................................16

NAIC, Risk Based Capital (RBC) for Insurers Model Act, MO-312-1 (Jan. 2012),
https://tinyurl.com/45b7ntpb.....................................................................................16

NISA, *Defined Benefit (DB):Pension Risk Management*,
https://tinyurl.com/3wrkcmhc...................................................................................19

Sergio Padilla, *Moody's: Default rates for private equity-backed companies on
the rise,* Private Debt Investor (Oct. 14, 2024),
https://www.privatedebtinvestor.com/moodys-default-rates-for-private-equity-
backed-companies-on-the-rise ..................................................................................21

Cezary Podkul & Gunjan Banerji, *Inflated Bond Ratings Helped Spur the
Financial Crisis. They're Back.*, Wall St. J. (Aug. 7, 2019),
https://bit.ly/4jQX7Ph................................................................................................8

James M. Poterba, *The History of Annuities in the United States*, Nat'l Bureau of
Econ. Rsch., Working Paper 6001 (1997), https://tinyurl.com/2s4b2npu ...............................3

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

SEC, *In the Matter of Kroll Bond Rating Agency, LLC Admin. Proc. File No. 3-20097*, https://www.sec.gov/divisions/enforce/claims/kroll-bond-rating-agency.htm; ........................8

SEC, Off. of Credit Ratings, *Staff Report on Nationally Recognized Statistical Rating Agencies*, (Feb. 2024), https://tinyurl.com/32u7eu7d ..................................................23

SEC, *SEC Charges Two Credit Rating Agencies, DBRS and KBRA, with Longstanding Recordkeeping Failures* (Sept. 29, 2023), https://www.sec.gov/newsroom/press-releases/2023-211 .......................................8

State Street Global Advisors, *DC DNA: How Independent Fiduciary Services Evolved and What It Means Today*, State Street Global Advisors (Oct. 31, 2023), https://tinyurl.com/Ex-28-STATE-STREET ..............................................................2

*Weyerhaeuser Company Named Top 100 Best Corporate Citizens* (Mar. 2, 2010), https://bit.ly/4hvDNWg ........................................................................................13

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1

**PRELIMINARY STATEMENT**

2       Plaintiffs' challenge to the widespread and legal use of pension risk transfers ("PRTs")

3   should be dismissed for lack of standing because Plaintiffs have received, and will continue to

4   receive, all promised retirement benefits.  Defendant State Street Global Advisors Trust Company

5   ("SSGA Trust Co.")[1] joins Weyerhaeuser's[2] arguments that Plaintiffs lack standing because they

6   do not allege any actual and concrete injury in fact.  If the Court agrees, that ends the litigation—

7   without injury there is no standing, and without standing the case must be dismissed.

8       The Amended Complaint ("AC") should also be dismissed because it fails to state a claim.

9   To start, virtually all of the allegations that Plaintiffs contend "would have compelled a truly

10  impartial and prudent fiduciary to reject Athene" (AC ¶143) rest on facts and data that *postdate*

11  the Weyerhaeuser PRT in January 2019.  They therefore shed no light at all on whether SSGA

12  Trust Co. appropriately discharged its fiduciary duties "under the circumstances *then*

13  *prevailing*"—the standard that ERISA commands.  29 U.S.C. § 1104(a)(1)(B) (emphasis added).

14  Indeed, Plaintiffs affirmatively plead that, until 2022, Athene's assets were invested in "a 'squeaky

15  clean' portfolio of government bonds and highly rated financial instruments."  AC ¶67.  There are

16  no well-pled facts plausibly suggesting that Athene was an imprudent or disloyal choice *in 2019*.

17  And although ERISA's fiduciary standards are *process based*—they police the fiduciary decision-

18  making process, rather than dictate any particular *outcome*—the Amended Complaint pleads no

19  facts plausibly suggesting that SSGA Trust Co. had a flawed or disloyal process for selecting

20  Athene; to the contrary, it is entirely silent as to that process.  For these reasons, and those in

21  Weyerhaeuser's motion, the Amended Complaint should be dismissed.

22

23

24       [1] SSGA Trust Co. is a wholly-owned subsidiary of State Street Bank and Trust Company (a wholly-owned subsidiary of State Street Corporation), and is one of the legal entities that comprises State Street

25  Investment Management ("State Street IM"), formerly State Street Global Advisors ("SSGA"), the global investment management business of State Street Corporation.

26       [2] "Weyerhaeuser" refers collectively to Defendants the Weyerhaeuser Company, the Weyerhaeuser Company Annuity Committee, and the Weyerhaeuser Company Administrative Committee.

SSGA TRUST CO.'S MOTION TO DISMISS – 1
(No. 2:24-cv-02050-KKE)

1

**BACKGROUND[3]**

2

**I.    SSGA Trust Co. and Its Role With Respect to The Weyerhaeuser PRT Transaction.**

3

State Street Corporation ("State Street Corp.") is a global financial services firm and bank

4

holding company headquartered in Boston.[4]  Its investment management business, State Street IM,

5

provides asset management, research, and advisory services to corporations, mutual funds, and

6

other institutional investors.[5]  As of December 31, 2023, State Street IM had approximately $4.13

7

trillion in assets under management ("AUM").[6]  State Street IM is not the beneficial owner of these

8

assets.  Rather, these assets are held in trust for the benefit of its clients, the investment funds it

9

advises, and those funds' beneficial owners.[7]

10

SSGA  Trust  Co.'s  Independent  Fiduciary  Services  Team  ("IFS")  separately  offers

11

independent  fiduciary  services.[8]    Through  IFS,  SSGA  Trust  Co.  is  a  leading  provider  of

12

independent fiduciary services for PRTs and has served as independent fiduciary for over 80 PRTs,

13

including some of the largest on record.[9]

14

PRTs are a secure way to fulfill an employer's pension obligations because annuities are

15

backed by a significant amount of assets, including assets transferred from the original plan, and

16

---

17

[3] Weyerhaeuser's motion to dismiss contains additional facts with respect to the Weyerhaeuser Plan; SSGA Trust Co. has endeavored to avoid duplication and therefore limits this section to the facts relevant to SSGA Trust Co.'s additional arguments for dismissal.

18

[4] Ex. 4, State Street Corp., Annual Report (Form 10-K) at 1, 6-7 (Feb. 15, 2024).  All "Ex. ___" cites

19

are to the exhibits attached to the accompanying Declaration of Jaime A. Santos.  The Court may consider these exhibits because they are either "documents incorporated by reference in the complaint, or matters of

20

judicial notice." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see Anderson v. Intel Corp. Inv. Pol'y Comm.*, 579 F. Supp. 3d 1133, 1145 (N.D. Cal. 2022), *aff'd*, 137 F.4th 1015 (9th Cir. 2025)

21

("[C]ourts may consider materials referenced in the complaint under the incorporation by reference doctrine, even if a plaintiff failed to attach those materials to the complaint."); *SEC v. Prakash*, 718 F. Supp.

22

3d 1098, 1105-06 (N.D. Cal. 2024) (taking judicial notice of SEC filings and other public records).

[5] *Id.* at 7-8, 180.

23

[6] *Id.* at 8.

24

[7] For example, the SPDR Series Trust holds securities (*i.e.*, stocks) in trust for the beneficial interest of the 83 investment funds established under the trust.  Ex. 5, SPDR Series Trust Annual Report (Form N-CSR) at 234 (Sept. 7, 2023).

25

[8] *DC DNA: How Independent Fiduciary Services Evolved and What It Means Today*, State Street Global Advisors (Oct. 31, 2023), https://tinyurl.com/Ex-28-STATE-STREET.

26

[9] *Id.* at 2.

1   are managed by regulated insurers who specialize in such products. Annuity contracts have been

2   used widely for over a century to fund pension plan obligations.[10] They have become even safer

3   after improvements in regulatory oversight prompted by watershed moments such as the collapse

4   of Executive Life Insurance Company (AC ¶52) and the 2008 financial crisis.[11] Today, annuitants

5   benefit from numerous structural protections including strict regulation under state insurance law,

6   separation of assets used to fund annuity payments through a "separate account" structure,

7   reinsurance, and backing by State Guaranty Associations ("SGAs") in the event of the insurer's

8   insolvency. ERISA Advisory Council, *Consultation Paper on Interpretive Bulletin 95-1*, at 1, 24,

9   29, 33-35 (July 2023), https://tinyurl.com/mtyycza8 ("*Consultation Paper*") (cited in AC ¶58).

10          Weyerhaeuser decided to transfer some of its pension obligations to an annuity provider

11  through a partial PRT; the Plan fiduciaries hired SSGA Trust Co.'s IFS Team to select an annuity

12  provider. AC ¶31. In January 2019, SSGA Trust Co. selected Athene Annuity and Life Company

13  ("Athene") as the annuity provider for a $1.5 billion partial PRT for the Weyerhaeuser Plan. AC

14  ¶¶130-137. Athene is an insurance and retirement services company that, among other things,

15  issues retirement savings products including annuities.[12] Like multiple other insurers, Athene is

16  today owned by a company that also has a private equity arm—here, Apollo Global Management,

17  Inc. ("Apollo"). AC ¶62. As the Amended Complaint notes, Apollo became Athene's parent

18  company through a merger that took place years *after* the Weyerhaeuser PRT. AC ¶62; *see* Press

19  Release, Apollo Global Management, Inc., *Apollo Completes Merger with Athene and Finalizes*

20  *Key Governance Enhancements* (Jan. 3, 2022), https://www.apollo.com/insights-

21  news/pressreleases/2022/01/apollo-completes-merger-with-athene-and-finalizes-key-

22  governance-enhancements-120051006.

23

24          [10] *See generally* James M. Poterba, *The History of Annuities in the United States*, Nat'l Bureau of
        Econ. Rsch., Working Paper 6001 (1997), https://tinyurl.com/2s4b2npu.

25          [11] Meg Fletcher, *ELIC'S Collapse Forces Regulatory Changes*, Business Insurance (May 9, 1999),
        https://tinyurl.com/bdzdrsh3.

26          [12] Ex. 7, Athene Holding Ltd. 2023 10-K at 10.

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1    Athene is subject to the same insurance requirements and oversight by regulators as other

2  insurers and is a recognized leader in the pension annuity field; in 2023, Athene ranked first in

3  pension group annuity sales ($10.4 billion).[13]  As Plaintiffs acknowledge, "Athene has a Moody's

4  rating of A1." AC ¶119. That Moody's rating states that "the A1 insurance financial strength (IFS)

5  rating of [the Athene] US and Bermuda-based life insurance operating companies reflects the

6  company's strong market position in its core insurance products"—and Moody's overall "outlook"

7  for Athene is "stable."[14]

8    Once the Weyerhaeuser PRT was executed, Athene became responsible in perpetuity for

9  the monthly payments of plan participants receiving $1,085 or less per month.  AC ¶¶130, 138-

10  140; Ex. 3, Amendment No. 7 to Weyerhaeuser Pension Plan at 1-3 (Jan. 23, 2019).  The

11  Weyerhaeuser PRT was structured such that Athene would pay the pension benefits from "a

12  dedicated separate account and guaranteed by its general account."  Ex. 1, Commitment

13  Agreement at 1 (Jan. 23, 2019); AC ¶¶95, 98 (same).  If that separate account were to be

14  overdrawn, Athene must cover the liabilities from its general account; if the general account could

15  not cover the liabilities, then Athene's reinsurers would be on the hook.  *Id.*

16    Athene began making monthly payments to Plaintiffs and other Weyerhaeuser retirees in

17  May 2019. AC ¶138.  Plaintiffs do not allege that Athene has ever missed a payment.

18  **II.    Plaintiffs' Allegations.**

19    Relevant to SSGA Trust Co., Count I alleges that SSGA Trust Co. breached its fiduciary

20  duties of loyalty and prudence by selecting Athene as the annuity provider for the Weyerhaeuser

21  PRT.  AC ¶169.  Plaintiffs do not allege a single fact concerning SSGA Trust Co.'s process for

22  making that selection in January 2019.  Rather, they assert "[o]n information and belief" that

23  Athene was selected for Weyerhaeuser's PRT "not because" Athene "was in the interest of

24  participants, their beneficiaries, and the security of their retirement benefits, but because it

25

26
    _____
    [13] Athene.com, *Our Business*, https://tinyurl.com/5yyhvh72 (last visited Dec. 5, 2024).
    [14] Moody's, *Credit Opinion: Athene Holding Ltd.* at 1 (Sept. 10, 2024), https://bit.ly/4jQPpVl.

1    advanced corporate interests by saving Weyerhaeuser money and enhancing corporate profits."

2    *Id.*  Counts I and II also alternatively allege that SSGA Trust Co. is liable as Weyerhaeuser's co-

3    fiduciary under 29 U.S.C. § 1105(a), or as a non-fiduciary under 29 U.S.C. §§ 1132(a)(3) and

4    1132(a)(9).   AC ¶¶172, 176.   Count III asserts that SSGA Trust Co. engaged in a prohibited

5    transaction under ERISA on the theory that "Athene was a party in interest because it provided

6    services to the Plan," and "received more than reasonable compensation for its services."  AC

7    ¶¶181-183.

8                                   **LEGAL STANDARD**

9         "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

10   accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

11   U.S. 662, 678 (2009) (citation omitted).  A plaintiff must plead "factual content that allows the

12   court to draw the reasonable inference that the defendant is liable for the misconduct alleged,"

13   which must go beyond pleading "facts that are 'merely consistent with' a defendant's liability."

14   *Id.* (citation omitted).  Likewise, "naked assertions" or "conclusory statements" are insufficient.

15   *Id.* (brackets and citation omitted).  And courts "are not 'required to accept as true allegations that

16   contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or

17   allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

18   inferences.'"  *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th

19   Cir. 2013) (citation omitted).

20        It is particularly important that courts rigorously enforce these standards in ERISA cases

21   because, as the Supreme Court and Ninth Circuit have explained, "the circumstances facing an

22   ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of

23   reasonable judgments a fiduciary may make based on her experience and expertise."  *Anderson v.*

24   *Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1021 (9th Cir. 2025) (quoting *Hughes v.*

25   *Northwestern Univ.*, 595 U.S. 170, 177 (2022)).  That is why, in applying *Twombly* and *Iqbal*'s

26   pleading standards, courts do not engage in Monday morning quarterbacking of fiduciary

SSGA TRUST CO.'S MOTION TO DISMISS – 5
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

decisions—they "assess a fiduciary's actions based upon information available to the fiduciary at the time of" the relevant fiduciary decision, "and not from the vantage point of hindsight." *Id.* (quoting *PBGC ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013)).  Accordingly, "it is not enough for a plaintiff simply to allege that the fiduciaries could have obtained better results—whether higher returns, *lower risks*, or reduced costs." *Id.* (emphasis added).

## ARGUMENT

### I.    The Amended Complaint Fails to State a Claim Against SSGA Trust Co. for Breach of Fiduciary Duty (Count I).

Count I alleges that SSGA Trust Co. violated ERISA § 404(a)(1)(A) (duty of loyalty) and 404(a)(1)(B) (duty of prudence), 29 U.S.C. § 1104(a)(1)(A), (B).  AC ¶¶165-169.  The Complaint fails to state a claim against SSGA Trust Co. for breach of these duties.

#### A.    Plaintiffs' Factual Allegations Regarding Athene and Its Purported Risks Postdate the Weyerhaeuser PRT and Thus Impermissibly Operate From the Vantage Point of Hindsight.

It is blackletter law that courts must "assess a fiduciary's actions based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight." *Anderson*, 137 F.4th at 1021.  Indeed, that principle is codified in ERISA's text itself, which explains that ERISA's fiduciaries must act "with the care, skill, prudence, and diligence *under the circumstances then prevailing* that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B); *see also Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014).

As the Ninth Circuit recently explained, then, "ERISA 'requires prudence, not prescience,'" and therefore courts "assess 'a fiduciary's actions based upon information available to the fiduciary at the time of each [fiduciary] decision and not from the vantage point of hindsight.'" *Anderson*, 137 F.4th at 1021 (citations omitted).  Thus, the inquiry is "whether the

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1    individual trustees, *at the time they engaged in the challenged transactions*, employed the

2    appropriate methods" in carrying out their fiduciary duties. *Id.* (quoting *Wright v. Ore.*

3    *Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004) (emphasis added)); *see also Leber v.*

4    *Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 157 (S.D.N.Y. 2017) (duty of loyalty is

5    similarly process-based because the standard for evaluating a breach "asks whether the fiduciary

6    took 'all steps necessary to prevent conflicting interests from entering into the decision-making

7    process'" (citation omitted)).

8         Plaintiffs' claim of fiduciary breach fails because it is a prototypical example of hindsight

9    pleading.  The alleged breach—the selection of Athene—was finalized in January 2019.  AC ¶ 130.

10   Yet the Amended Complaint alleges next to nothing about the state of the world as of January

11   2019.  It purports to raise various supposedly troubling facts about Athene and Apollo that a

12   prudent fiduciary would have investigated—for example, it claims that the growth rate of Athene's

13   total liabilities from 2019-2023 compared with its surplus eclipsed the growth rate of "[o]ther peer

14   insurers," and that SSGA Trust Co. and Weyerhaeuser "failed to adequately evaluate the many

15   deficiencies they would have discovered if they thoroughly evaluated Athene as a candidate."  AC

16   ¶¶ 70, 169.  But these alleged "deficiencies" *postdate* the PRT at issue.  They have no bearing on

17   whether SSGA Trust Co. acted appropriately *in January 2019.*

18        Examining the allegations in the Amended Complaint as a whole, it immediately becomes

19   apparent that almost nothing pertains to the relevant time period of January 2019.  For example,

20   Plaintiffs point to (all emphases added):

21       • Apollo's merger with Athene *in 2022*, Athene's investments "in the second quarter of

22         2024," and "Apollo-owned companies [that] have defaulted *since 2022*" (¶¶ 62-64, 65-

23         66);

24       • general default rates of "private equity-owned companies" "[b]etween *January 2022*

25         *and August 2024* according to Moody's" (¶ 64)

26

SSGA TRUST CO.'S MOTION TO DISMISS – 7
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

- Athene's collateralized loan obligations *in 2023*, Athene's surplus-to-liability ratio in 2023, and "the growth rate of Athene's liabilities … *from 2019-2023*" (¶¶68-72, 75-76);

- an increase in "Athene's affiliated investments" "*[f]rom 2019 through 2023*," and Athene's "risky assets *in 2023 and 2024*" (¶¶73-74, 92);

- "[t]he growth rate of Athene's liabilities … *from 2019-2023*" in comparison with other insurers' growth rates during that post-Weyerhaeuser-PRT period (¶70);

- The comparative "surplus to liabilities ratios of the universe of insurance carriers" *in 2023* (¶71);

- Athene's quantity of reinsurance to purportedly captive affiliates *in 2020-2023* (¶¶88, 96);

- The "reserve credit" being provided to U.S. life insurers from offshore reinsurers "[b]y the end *of 2023*" (¶86);

- Athene's modified co-insurance arrangements "*[f]or 2022*" and "*[f]or 2023*" (¶¶89, 90);

- the concentration of Athene's "risky assets relative to its surplus" "*as of 2022*" (¶92);

- warnings provided to the industry in "*December 2023*" (¶93), in 2024 (¶87 & n.15), and in 2025 (¶87 & n.14);

- a NISA study purportedly establishing appropriate and inappropriate candidates for PRT annuities *as of late 2022* (¶¶112-120);

- an *August 2019* article in the Wall Street journal identifying concerns with the use of private credit ratings agencies (¶122[15]);

- SEC fines issued to two private ratings agencies *in 2020 and 2023* (¶123[16]);

---

[15] Cezary Podkul & Gunjan Banerji, *Inflated Bond Ratings Helped Spur the Financial Crisis. They're Back.*, Wall St. J. (Aug. 7, 2019), https://bit.ly/4jQX7Ph.

[16] SEC, *In the Matter of Kroll Bond Rating Agency, LLC Admin. Proc. File No. 3-20097*, https://www.sec.gov/divisions/enforce/claims/kroll-bond-rating-agency.htm; Press Release, SEC, *SEC*

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1       • an unrelated penalty paid by Athene to New York regulators *in 2020* (¶124 & n.23);

2         and

3       • SSGA Trust Co.'s parent corporation's holdings in Apollo at various times *after* the

4         Weyerhaeuser PRT (¶126).[17]

5        Moreover, the Amended Complaint pleads several affirmative allegations that *undermine*

6 any reasonable inference that Athene was a problematic insurer in January 2019. For instance, the

7 Amended Complaint affirmatively alleges that, until 2022, Athene's assets were deployed in "a

8 'squeaky clean' portfolio of government bonds and highly rated financial instruments," AC ¶67,

9 and that Athene's "affiliated investments" in 2019 were *four times less* than New York Life's at

10 the time, and over ten times less than Athene's affiliated investments in 2024, AC ¶73. The only

11 allegation with facts preceding the Weyerhaeuser PRT is that Athene sold most of its life insurance

12 business to another insurance company in 2013, and "completely transitioned out of the [life-

13 insurance] business" by 2016." AC ¶100. But Plaintiffs do not even *attempt* to explain how a life-

14 insurance spinoff 6 years before the PRT transaction plausibly suggested that Athene PRT

15 annuities "were so plainly risky at the relevant times that an adequate investigation would have

16 revealed their imprudence." *St. Vincent*, 712 F.3d at 719.

17        In short, Plaintiffs allege nothing relevant about Athene or Apollo as of January 2019—

18 and what they do allege tends to *undermine* any inference of imprudence or disloyalty. Stripped

19 of the factual allegations that postdate the Weyerhaeuser PRT, almost nothing remains. But the

20 statute and case law are clear: because fiduciaries' actions are judged based on "the circumstances

21 then prevailing," 29 U.S.C. § 1104(a)(1)(B), factual developments occurring *after* the relevant

22 fiduciary decision cannot support a claim for breach, *see Anderson*, 137 F.4th at 1021 (courts must

23 "assess 'a fiduciary's actions based upon information available to the fiduciary at the time of each

---

24 *Charges Two Credit Rating Agencies, DBRS and KBRA, with Longstanding Recordkeeping Failures* (Sept. 29, 2023), https://www.sec.gov/newsroom/press-releases/2023-211.

25      [17] Plaintiffs do allege that Athene sold its life insurance business in 2013, but they do not even

26 attempt to argue this would have put fiduciaries on notice in 2019 that Athene was an imprudent option for a *non-life-insurance* product. AC ¶100.

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

[fiduciary] decision and not from the vantage point of hindsight" (citation omitted)); *Tibble v. Edison Int'l*, 729 F.3d 1110, 1136 (9th Cir. 2013) ("hindsight is the wrong metric for evaluating fiduciary duty"), *vacated in unrelated part,* 575 U.S. 523 (2015); *White v. Chevron Corp.*, 2017 WL 2352137, at *20-21 (N.D. Cal. May 31, 2017) (dismissing fiduciary-breach claim premised on "hindsight judgments" because the relevant information was not available at the time of the challenged conduct), *aff'd*, 752 F. App'x 453 (9th Cir. 2018); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *11 (S.D.N.Y. Oct. 7, 2019) (rejecting allegations based on data compiled in 2016 as "impermissibly hindsight-based" because that data "would not have been known to the fiduciaries earlier in the class period").

*Anderson* illustrates the point.  There, a fiduciary made investments in hedge funds and private equity funds in 2011, and plaintiffs later challenged those investments as imprudent—citing "a myriad of sources that Plaintiffs argue demonstrate the risks associated with hedge funds and private equity funds." *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 2021 WL 229235, at *10 (N.D. Cal. Jan. 21, 2021), *aff'd*, 137 F.4th 1015 (9th Cir. 2025).  The court, however, observed that "many of the sources that Plaintiffs cite to support these claims were not available in 2011," and naturally "[m]aterials published after 2011 do not support Plaintiffs' claim that a prudent fiduciary in 2011 had access to information that demonstrated the risks associated with investing in hedge funds and private equity." *Id.* at *10-11.  And while the plaintiffs in that case produced "a few … contemporary sources" warning about the purported risks associated with investing in hedge funds and private equity, the court reasoned that "Plaintiffs have failed to identify any case to support their allegation that the small sample of information allegedly available in 2011 was sufficient to render imprudent the Investment Committee's decision." *Id.* at *11.  The court therefore dismissed the claim. *Id.* at *12.

That reasoning applies here.  The Amended Complaint pleads virtually no facts about Athene (or anything else) as of January 2019, when the challenged fiduciary decision occurred. And what few contemporaneous facts are pled do not come close to raising a reasonable inference

SSGA TRUST CO.'S MOTION TO DISMISS – 10
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1    of imprudence or disloyalty.  Plaintiffs' fiduciary-breach claims should be dismissed for this

2    reason alone.

3    **B.  The Complaint Does Not Plausibly Allege that SSGA Trust Co. Acted Disloyally.**

4    Plaintiffs' claim for disloyalty also fails for an independent reason: it is based on

5    conclusory assertions that "State Street was conflicted, and its selection … of Athene was

6    influenced by its relationships with Weyerhaeuser, Athene, and Athene's affiliates." AC ¶169.

7    The premise for this assertion: that SSGA Trust Co. was "one of the largest shareholders of

8    Apollo" and therefore "had a financial incentive to use Athene as the annuity provider in PRTs."

9    AC ¶148.  One fundamental problem with this theory, however, is that Plaintiffs do not allege that

10   SSGA Trust Co. had any relationship with Athene or its affiliates (*e.g.*, Apollo) prior to January

11   2019.  In fact, Plaintiffs allege that "[p]rior to the PRT transaction at issue, State Street held *no*

12   *publicly traded shares in Apollo*." AC ¶126 (emphasis added).  They also acknowledge that

13   Athene did not become a subsidiary of Apollo until two years *after* the Weyerhaeuser PRT.  AC

14   ¶¶62, 67.  Thus, the purported predicate for any inference of disloyalty is belied by the Amended

15   Complaint's own allegations.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.

16   2001) ("[A] plaintiff can … plead himself out of a claim" by pleading contradictory facts).

17   Plaintiffs' remaining theory of disloyalty by SSGA Trust Co. is predicated on a supposed

18   "conflicted" interest in favor of its "corporate partner," Weyerhaeuser.  AC ¶169.  But the

19   Complaint fails to plead any factual basis for an actual conflict, rather than merely the *potential*

20   for conflict.  That is not enough.

21   "To state a claim for breach of the duty of loyalty, the complaint must allege facts from

22   which it plausibly can be inferred that the Plan's fiduciaries *subjectively intended* to benefit

23   themselves or a third party at the expense of the Plan's participants." *Wehner v. Genentech, Inc.*,

24   2021 WL 2417098, at *10 (N.D. Cal. June 14, 2021) (emphasis added).  The Ninth Circuit has

25   made clear that "'the potential for a conflict, without more, is not synonymous with a plausible

26   claim of fiduciary disloyalty.'" *Anderson*, 137 F.4th at 1026 (quoting *Kopp v. Klein*, 894 F.3d

214, 222 (5th Cir. 2018)).  That is because ERISA "does not prohibit 'the mere act of becoming a trustee with conflicting interests.'"  *Id.* (quoting *Friend v. Sanwa Bank California*, 35 F.3d 466, 469 (9th Cir. 1994)).  Thus, "a plaintiff seeking to establish a claim of disloyalty under ERISA must provide specific facts that move the needle on his claim from 'speculative' to 'plausible.'" *Hutchins v. HP Inc.*, 767 F. Supp. 3d 912, 925 (N.D. Cal. 2025).

The Complaint does not plead those specific facts.  Plaintiffs' assertion that SSGA Trust Co. was "conflicted" is apparently based on the allegation that its parent company, State Street Corporation, "held a substantial ownership interest in Weyerhaeuser's publicly traded securities," AC ¶125, and thus "had an interest in favoring Weyerhaeuser by selecting an annuity provider that provided reduced premium payments …, thereby providing a direct financial benefit to Weyerhaeuser and its shareholders," AC ¶129.  This theory fails for two reasons.

**First**, this allegation supports, at most, *"*the potential for conflicts of interest, with nothing more"—which the Ninth Circuit has held does "not adequately plead a claim of breach of the duty of loyalty." *Anderson*, 137 F.4th at 1027.  In *Anderson*, for example, the plaintiff alleged that the plan's "fiduciaries' investment in certain hedge funds and private equity funds 'had the potential to benefit'" the corporation's in-house venture capital arm. *Id.*  Yet the complaint was devoid of factual allegations to "support an inference that such individuals acted disloyally while discharging their fiduciary duties." *Id.*  Indeed, courts routinely hold that such "incidental" benefits arising from "a common business relationship" do not support an inference of disloyalty. *Patterson*, 2019 WL 4934834, at *14  ("[T]he mere fact that Morgan Stanley might incidentally benefit from its relationship with BlackRock is not enough to raise an inference of disloyalty by Defendants."); *see also Bloom v. AllianceBernstein L.P.*, 725 F. Supp. 3d 325, 337 (S.D.N.Y. 2024) (similar).

"Put simply, the mere existence of a business relationship between two large financial institutions is not enough to lift Plaintiffs' otherwise deficient disloyalty claims above the bar set by *Twombly*." *Patterson*, 2019 WL 4934834, at *14.  The same is true here of Plaintiffs' allegations that SSGA Trust Co. and Weyerhaeuser have a "corporate partner[ship]." AC ¶169.

SSGA TRUST CO.'S MOTION TO DISMISS – 12
(No. 2:24-cv-02050-KKE)

Fennemore Craig, P.C.
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1  Plaintiffs fail to plausibly allege anything more than a *potential* conflict arising from SSGA Trust

2  Co.'s parent company's nominal holdings.

3       ***Second***, judicially noticeable documents show that State Street IM's purported

4  Weyerhaeuser "holdings" in fact belong to State Street IM-advised *funds*; State Street IM is merely

5  the nominal holder on behalf of its clients, who are the beneficial owner of the shares. *See supra*

6  p. 2. Accordingly, State Street IM had no economic interest in the share price of Weyerhaeuser's

7  stock. Moreover, over 98% of State Street IM's $2.5 *trillion* in equity assets under management

8  are held in index funds,[18] as to which the portfolio manager (State Street IM) invests in the

9  securities comprising an underlying index (like the Russell 1000 Index) that is generated by a third

10  party (Russell). And Weyerhaeuser is a component of the Russell 1000 Index.[19] In other words,

11  *State Street IM* doesn't choose to invest in Weyerhaeuser stock; Russell does and could change its

12  Index's holdings to add or remove whatever stocks it deems appropriate. Given this context, it

13  simply is not plausible to suggest that SSGA Trust Co. acted out of corporate favoritism.

14      **C.  Plaintiffs Plead No Facts Plausibly Alleging that SSGA Trust Co. Employed an Imprudent Process.**

15       Plaintiffs also allege that SSGA Trust Co. imprudently selected Athene because, based on

16  "objective criteria and relative to other providers in the market," SSGA Trust Co. failed to select

17  the "safest annuity available," which, they claim, is required under the DOL's Interpretive Bulletin

18  95-1 ("IB 95-1"), 29 C.F.R. § 2509.95-1. AC ¶¶168-169. Even aside from the temporal disconnect

19  between Plaintiffs' claim and allegations, *see supra* pp. 6-11, Plaintiffs' conclusory allegations do

20  not plausibly raise an inference of imprudence. To the contrary, the Amended Complaint

21  affirmatively shows that the choice was squarely consistent with decisions made by other

22  fiduciaries in like circumstances, in keeping with industry standards.

---

[18] Ex. 4, State Street Corp., Annual Report (Form 10-K) at 8, 70 (Feb. 15, 2024).

[19] Ex. 13, *Weyerhaeuser Company Named Top 100 Best Corporate Citizens*, Weyerhaeuser.com (Mar. 2, 2010), https://bit.ly/4hvDNWg (Weyerhaeuser listed "among the large-cap Russell 1000 companies").

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

ERISA's prudence obligation requires a fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B).  As noted above, the relevant question is not whether the outcome was optimal, but rather whether the fiduciary *process* for reaching a decision was sound. *See Anderson*, 137 F.4th at 1021 (courts "evaluate prudence prospectively, based on the methods the fiduciaries employed, rather than retrospectively, based on the results they achieved"); *supra* pp. 6-7.  Thus, "a plaintiff can plead a breach of the duty of prudence by alleging facts that would *directly* show that the fiduciaries employed unsound methods in making their investment decisions," or "[a]lternatively, a plaintiff can make circumstantial factual allegations from which the court may reasonably infer from what is alleged that the process was flawed." *Anderson*, 137 F.4th at 1021 (citation and internal quotation marks omitted; emphasis added).

Here, the Amended Complaint does not contain a single allegation directly concerning SSGA Trust Co.'s process for selecting Athene.  Instead, Plaintiffs rely on speculative and conclusory allegations about Athene, which they say support an inference that its selection by a leading, professional independent fiduciary could not have been the product of a prudent decision-making process.  These allegations are insufficient to raise an inference of imprudence because they plead no facts "showing that the process by which the fiduciaries chose [Athene] was somehow flawed or imprudent." *White*, 2017 WL 2352137, at *11.

### 1.  Plaintiffs' Reliance On Interpretative Bulletin 95-1 Is Flawed

The only authority Plaintiffs cite in support of their prudence claim is the DOL's non-binding guidance in IB 95-1, which sets forth a non-exhaustive list of six factors fiduciaries "should consider" in selecting an annuity provider for a PRT.  *See* 29 C.F.R. § 2509.95-1(c).  Tellingly, Plaintiffs do not allege that  SSGA Trust Co. failed to consider the IB 95-1 (or other) factors.  Instead, Plaintiffs focus on language in IB 95-1 that, they claim, requires fiduciaries "to obtain the 'safest annuity available.'"  AC ¶¶4, 34.  They are incorrect.

SSGA TRUST CO.'S MOTION TO DISMISS – 14
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

***First***, "no federal court has adopted" the "'safest available' standard" Plaintiffs proffer. *Riley v. Murdock*, 83 F.3d 415, 415 (4th Cir. 1996) (unpublished). Indeed, that interpretation is unmoored from ERISA's text, which contemplates a wide "range of reasonable judgments a fiduciary may make" for any given decision. *Hughes v. Nw. Univ.*, 595 U.S. 170, 177 (2022). A prescriptive, outcome-oriented "safest annuity available" rule contravenes ERISA's flexible, process-based standard, which is why courts have rejected it as inconsistent with the statutory text. *See Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 297-298 (5th Cir. 2000). This Court should not be the first to adopt it.

***Second***, even IB 95-1 expressly states that the purported "safest" provider need not be chosen if, "under the circumstances it would be in the interests of participants and beneficiaries to do otherwise." 29 C.F.R. § 2509.95-1(c); s*ee also id.* § 2509.95-1(d) ("there are situations where it may be in the interest of the participants and beneficiaries to purchase other than the safest available annuity"). A partial PRT like Weyerhaeuser's provides one such obvious situation in which taking costs into account makes particularly good sense. Here, the Plan was *not* terminated in connection with the PRT, and SSGA Trust Co. owed fiduciary duties to Plan participants whose benefit obligations were not assumed by Athene and who remained in the Plan.[20] If, as Plaintiffs conclusorily suggest,[21] Athene charged less than its competitors (AC ¶¶145-149), the resulting savings would necessarily benefit those participants who remained in the Plan after the PRT and for whom the remaining Plan assets would pay their benefits in retirement. Indeed, taking costs into account is demonstrably consistent with ERISA's fiduciary obligations to the participants remaining in the Plan not to incur unreasonable expenses in effecting the PRT. *See* 29 U.S.C. § 1104(a)(1)(A)(ii) (a fiduciary shall "defray[] reasonable expenses of administering the plan"); *see also Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996) (fiduciaries "need to preserve assets to

---

[20] Ex. 2, SSGA Trust Co. Agreement § 2(ii) (SSGA Trust Co. must "[r]epresent the interests of the Plan and ***all of its participants***") (emphasis added).

[21] It is conspicuous that, in a lawsuit repeatedly criticizing the purported selection of an annuity based on cost rather than safety, Plaintiffs provide *no* allegations regarding the comparative costs of available annuities.

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1   satisfy future, as well as present, claims" and must consider "the interests of all beneficiaries");

2   *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 540-541 (5th Cir. 2016) (discussing competing

3   claims of plan transferees and those remaining in the plan premised in part on the potential for

4   incurring unreasonable expenses in purchasing annuity contracts).

5       **Third**, Plaintiffs' allegations about Athene's unsuitability are largely untethered to the

6   actual IB 95-1 factors. Plaintiffs allege that unnamed "[i]ndustry professionals" focus on four

7   "prevalent factors" in assessing an insurer's risk profile that do not appear in IB 95-1. AC ¶63.

8   And where Plaintiffs challenge Athene's suitability based on factors that do appear in the Bulletin,

9   their allegations are implausible. For example, Plaintiffs challenge the adequacy of the "level of

10   [Athene's] capital and surplus" (IB 95-1 factor 3) by claiming that Athene had a low surplus-to-

11   liability ratio. AC ¶¶69-71. But Plaintiffs do not allege that surplus-to-liability ratio is a

12   commonly used industry metric. Rather, an insurer's risk-based capital ratio (RBC) is the primary

13   measure by which insurance regulators evaluate the capital adequacy of insurers. *See Robainas v.*

14   *Metro. Life Ins. Co.*, 2015 WL 5918200, at *1 (S.D.N.Y. Oct. 9, 2015). Plaintiffs do not even

15   attempt to allege that Athene's RBC was inadequate. Nor could they: the Commitment Agreement

16   includes an express representation that Athene's RBC "is at least 350%," as calculated "consistent

17   with the requirements and methodologies prescribed under Iowa law."[22] And Athene's recent SEC

18   filings show $26 billion in regulatory capital and a RBC ratio of 416%,[23] which is double the

19   amount required by the NAIC model statute adopted by Iowa and New York[24] and exceeds the

20   RBC ratios of other large pension annuity providers.[25]

21       Even assuming that surplus-to-liability ratio is relevant, Plaintiffs' allegations offer an

22   improper apples-to-oranges comparison. Plaintiffs allege that the surplus-to-liability ratio of

---

[22] Ex. 1, Commitment Agreement §§ 7(a)(xi), 9(iii).

[23] Ex. Ex. 7, Athene Holding Ltd. 2023 10-K at 80-81, 108.

[24] Ex. 20, NAIC, Risk-Based Capital (May 9, 2024); Ex. 21, NAIC Risk Based Capital (RBC) for Insurers Model Act, MO-312-1 (Jan. 2012); *see* Iowa Code § 521E; N.Y. Ins. Law § 1322.

[25] *See* Ex. 23, MetLife, Inc. 2023 10-K at 18 (risk-based capital ratio of 380%); Ex. 24, Prudential Fin., Inc. 2023 10-K at 122 (risk-based capital ratio of 383%).

SSGA TRUST CO.'S MOTION TO DISMISS – 16
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1   Athene Annuity and Life Co. (*i.e.*, one subsidiary of Athene Holding Ltd.) was 1.44% as of year-

2   end 2023,[26] which they say compares unfavorably to the ratio of several "peer insurers," including

3   New York Life, which "maintained a surplus-to-liability ratio of 12.24%."  AC ¶¶69-70.  But

4   Plaintiffs' 12.24% figure is based on New York Life Insurance Company, which is a *parent*

5   *company* that operates several insurance subsidiaries, including New York Life Insurance and

6   Annuity Company.[27]  This sleight of hand is no mistake: Parent Athene Holding Ltd.'s 2023

7   surplus and liabilities were $21.8 billion and $279 billion, respectively,[28] resulting in a surplus-to-

8   liability ratio of 7.8%, which exceeds the national average and the ratios of Nationwide Life

9   Insurance Company (6.77%) and Pacific Life Insurance Company (6.50%) alleged by Plaintiffs

10  (in its original Complaint, at ¶58).  In short, Plaintiffs surplus-to-liability allegation is an "apples

11  to oranges" comparison, which courts have consistently held cannot support any inference of

12  imprudence under ERISA.  *See Anderson*, 137 F.4th at 1025 ("Comparing apples and oranges is

13  not a way to show that one is better or worse than the other." (quoting *Davis v. Wash. Univ. in St.*

14  *Louis*, 960 F.3d 478, 485 (8th Cir. 2020)));  *see also, e.g.*, *Matney v. Barrick Gold of N. Am.*, 80

15  F.4th 1136, 1149 (10th Cir. 2023); *Singh v. Deloitte LLP*, 123 F.4th 88, 94 (2d Cir. 2024).

16          Similarly, Plaintiffs allege that Athene's separate account used to pay Weyerhaeuser

17  retirees (IB 95-1 factor 5) "may … be used by Athene to support payment obligations for other

18  [group annuity contracts] issued by Athene."  AC ¶98.  This allegation does nothing to undermine

19  the security of Athene's separate account.  To start, in 2019 Athene had relatively few such group

20  annuity contracts, as the Amended Complaint acknowledges.  AC ¶148 (alleging that, in 2019, the

---

[26] It is clear from publicly-available documents that the 1.44% surplus-to-liability ratio that Plaintiffs attribute to "Athene" (AC ¶69) is the surplus-to-liability ratio for subsidiary Athene Annuity and Life Co., whose reported surplus and liabilities as of year-end 2023 were $2,865,879,257 and $199,104,571,460, respectively, resulting in the 1.44% ratio Plaintiffs allege.  Ex. 8, Fourth Quarter 2023 Statutory Financial Statement for Athene Annuity and Life Company at 3.

[27] Ex. 9, New York Life Insurance Company Audited Financial Statements (Dec. 31, 2023), https://tinyurl.com/NY-Life-financials, at 3 (reporting total surplus of $25.3 billion and total liabilities of $206.6 billion); *see also id.* at 8, 97, 101, 102 ("New York Life Insurance Company … and its subsidiaries offer a wide range of insurance and investment products.").

[28] Ex. 7, Athene Holding Ltd. 2023 10-K at 108, 122-123.

Weyerhaeuser PRT "represented approximately 25% of Athene's pension group annuity sales"). The prospect of overdrawing the separate account was, therefore, especially remote at the time the fiduciary decision was made. And it is still remote today. Regulatory filings show that Athene's separate account maintains a surplus of $875 million in excess of the $50 billion it holds to cover liabilities.[29] In other words, Athene's separate account has on hand today the money necessary to cover all of its future obligations under separate group annuity contracts, and then some. Plaintiffs do not allege any facts to the contrary. Plaintiffs' suggestion (¶98) that Athene's separate accounts "are not truly … insulated from Athene's general liabilities" because separate account assets can be transferred to Athene's general account is equally misplaced. As the very same paragraph recognizes, separate-account funds may be transferred to Athene's general account *only* "if the market value of the assets in the separate account exceeds Athene's liabilities under the GACs." *Id.* Accordingly, the separate account remains separate up to the actual annuity liabilities—only *excess* may be used to support general-account obligations.

### 2. Athene's Supposed Credit Risk

Plaintiffs allege that SSGA Trust Co.'s process must have been deficient based, in part, on an October 2022 report authored by NISA Investment Advisors—which, again, post-dated the PRT transaction. AC ¶¶112-120. The NISA report purportedly quantifies a 14% economic loss for Athene PRT beneficiaries as a result of Athene's purported "credit risk." AC ¶113. NISA quantifies this supposed credit risk by taking a given insurance company's bond spread and subtracting the bond spread of New York Life (NISA's preferred provider). *Id.* ¶114. This analysis is not relevant here. Despite acknowledging that the "use of a separate account will indeed improve the credit risk of all the insurers [analyzed by NISA], assuming each is willing to offer that additional safeguard," the NISA report does not even attempt to measure risk for such products

---

[29] *See* Ex. 14, Ann. Stmt. of the Condition and Affairs of the Sep. Accts. of Athene Annuity & Life Co. at 3, line 21 (Dec. 31, 2023).

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

or inquire whether all the insurers it analyzed provide the separate account feature.[30]  Because Athene utilizes a separate account to pay Weyerhaeuser retirees, the NISA report does not offer an "apples-to-apples" comparison that could support any inference of imprudence.  *See Anderson*, 137 F.4th at 1025; *supra* p. 17.

Moreover, the NISA Report offers a single data point that is subject to significant fluctuation, and therefore is not probative of the absence of a prudent process—particularly one that *preceded* by years the date of the NISA analysis.  For example, NISA's December 2024 report shows that the supposed "loss" from Athene has declined nearly two-thirds, from 14% in 2022 (AC ¶¶112-113) to 4.5% in 2024.[31]  That fluctuation undermines Plaintiffs' reliance on this metric, and it especially undermines any inference to be drawn from an outdated number.  Notably, NISA's December 2024 report identifies Prudential as NISA's current preferred provider—yet, two weeks after the original Complaint was filed in this action, other plaintiffs separately sued SSGA Trust Co. for selecting *Prudential* for a different PRT.  *See* Compl., *Dempsey v. Verizon*, No. 1:24-cv-10004 (S.D.N.Y. Dec. 30, 2024).  That underscores the implausibility of relying on NISA as a circumstantial indicator of an imprudent process.

In all events, NISA simply represents one opinion of one market actor (an asset manager and competitor of Athene's[32]), that "argue[s]" that fiduciaries should not "ignore" certain factors under IB 95-1.[33]  But citing that one opinion is not tantamount to plausibly alleging that *SSGA Trust Co.* ignored relevant information or failed to conduct an "objective, thorough and analytical search."  AC ¶34.  If all market participants shared the precise same view as to credit-worthiness,

---

[30] Ex. 10, David G. Eichhorn, *Pension Risk Transfers May be Transferring Risk to Beneficiaries*, NISA (Oct. 13, 2022), https://tinyurl.com/mrx8kdsx ("Calculating the adjusted ELB [for separate-account annuities] is outside the scope of this paper ….") (cited in AC ¶¶112-117 & n.22).

[31] Ex. 12, PRT Credit Risk Monitor, NISA, https://tinyurl.com/yc2yhhma.

[32] NISA's website notes that it is a "leader in liability-driven investing (LDI) and de-risking strategies for defined benefit (DB) pension plans and other liability-driven investors"—*i.e.*, a de-risking alternative to a PRT.   Ex. 11, NISA, *Defined Benefit (DB):Pension Risk Management,* https://tinyurl.com/3wrkcmhc.

[33] Ex. 10, David G. Eichhorn, *Pension Risk Transfers May be Transferring Risk to Beneficiaries*, NISA (Oct. 13, 2022), https://tinyurl.com/mrx8kdsx (cited in AC ¶¶112-117 & n.22).

SSGA TRUST CO.'S MOTION TO DISMISS – 19
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1    then there would be no need for the "objective, thorough and analytical search" that Plaintiffs'

2    own authority—IB 95-1—suggests.  *See* 29 C.F.R. § 2509.95-1(c) (listing factors).  Indeed, courts

3    recognize that "negative analyst reports," like NISA's, "are insufficient to create a duty …. to

4    question the prudence of [an investment]."  *In re RCN Litig.*, 2006 WL 1273834, at *8 (D.N.J.

5    Mar. 22, 2006) (dismissing complaint).

### 3.    Athene's Connection to Private Equity

7         The Amended Complaint asserts that Athene's affiliation with Apollo, which separately

8    engages in private equity investing, prevents Athene from being a prudent annuity provider for a

9    PRT because the "mission [of private equity firms] does not align with the best interests of

10   policyholders."  AC ¶57.  But the Amended Complaint admits that Apollo's merger with Athene

11   happened years *after* the Weyerhaeuser PRT.  AC ¶¶62, 67.  In any event, Plaintiffs acknowledge

12   that involvement with private equity is common in the industry.  AC ¶57 ("private equity firms

13   have heightened their influence over the life and annuity industry significantly").  Moreover,

14   Plaintiffs' conclusory assertion that the "mission" of private equity is inconsistent with the needs

15   of retirees ignores the reality of pension plans.  As courts have recognized, it is common for

16   employer pension plans to be heavily invested in private equity.  *See Sulyma v. Intel Corp. Inv.*

17   *Pol'y Comm.*, 909 F.3d 1069, 1077 (9th Cir. 2018), *aff'd*, 589 U.S. 178 (2020).[34]  And the Ninth

18   Circuit has recently rejected a similar theory that investment in private equity is "*inherently*" so

19   "risky" as to support an inference of fiduciary breach.  *Anderson*, 137 F.4th at 1024.  Plaintiffs'

20   generalized grievances with private equity-affiliated insurers are "conclusory and insufficient,

21   given that Plaintiff[s] fail[] to offer specific facts about [SSGA Trust Co.'s] purportedly flawed

22   process."  *Hutchins*, 767 F. Supp. 3d at 926.

23        Plaintiffs' insinuation that Athene is at risk of default because "nearly 25% of Apollo-

24   owned companies have defaulted since 2022," AC ¶64 (emphasis deleted), is likewise implausible

25

26        [34] GAO, *Defined Benefit Pension Plans* (Feb. 2012), https://www.gao.gov/assets/gao-12-324.pdf
     (in 2010, 92% of large defined-benefit plans invested in private equity).

SSGA TRUST CO.'S MOTION TO DISMISS – 20
(No. 2:24-cv-02050-KKE)

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

because it fundamentally misconstrues Athene's affiliation with Apollo.  Unlike the Apollo portfolio companies referenced in the Moody report Plaintiff relies upon,[35] Athene is *not* owned by Apollo's private-equity arm.  Instead, Athene is separately regulated by state insurance commissioners and is part of Apollo's "retirement services" business line, which is separate and distinct from its private equity business.[36]  This is yet another unenlightening "apples to oranges" comparison.  *Anderson*, 137 F.4th at 1025 (citation omitted).

Plaintiffs also assert that "20% of Athene's portfolio is invested in risky asset-backed securities and leveraged loans" and that Athene has held a "higher ratio" of "unfavorable BBB" collateralized loan obligations (CLOs) "than most other U.S. life industry participants."  AC ¶68.  First, this allegation does not plausibly raise an inference of imprudence; Plaintiffs do not even explain what "U.S. life industry participants" means.  They do not allege that they are comparing Athene only to other insurers, let alone insurers that participate in the PRT market.

In any event, the conclusion that Athene's portfolio is "risky" is directly refuted by Athene's SEC-filed financial statements, which show that over 95% of Athene's investments are "investment grade," bearing the highest NAIC ratings of 1 or 2.[37]  And Plaintiffs' conclusory allegation about BBB CLOs is similarly unavailing:  a BBB rating corresponds to the second-highest NAIC rating and is considered "investment grade."[38]  Indeed, as the Amended Complaint admits, all credit ratings agencies have affirmed Athene's creditworthiness with A1 or A+ ratings.[39]  AC ¶¶117-119.  Plaintiffs themselves allege that 95% of issuers holding an average

---

[35] Sergio Padilla, *Moody's: Default rates for private equity-backed companies on the rise*, Private Debt Investor (Oct. 14, 2024), https://www.privatedebtinvestor.com/moodys-default-rates-for-private-equity-backed-companies-on-the-rise/.

[36] Ex. 6, Apollo Global Management, Inc., 2023 10-K at 13, 17 (Athene is part of Apollo's "Retirement Services" business, whereas Apollo's private equity franchise is part of its "Asset Management" business).

[37] Ex. 7, Athene Holding Ltd. 2023 10-K at 86-87.  Plaintiffs do not allege that the less than 5% of Athene's portfolio comprised of "below investment grade" holdings is out of step with industry norms.

[38] *Id.* at 85-87.

[39] *Id.*, Item 1 at 20-21 ("each of our significant insurance subsidiaries is rated 'A+', 'A1' or 'A' by the four rating agencies").

Fennemore Craig, P.C.
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

rating of "A" from the rating agencies—a rating that is inferior to Athene's average rating—do not

default over a twenty-year horizon.  AC ¶119.

### 4.  Bermuda-Based Reinsurers

Next, Plaintiffs suggest that Athene is an imprudent choice because it uses Bermuda-based

reinsurers and Bermuda law is less stringent than other jurisdictions.  AC ¶¶83-87, 94.  That

contention is a red herring: judicially noticeable public disclosures demonstrate that Athene

requires its Bermuda subsidiaries to adhere to the same capital, risk, and disclosure standards ***as

its U.S. subsidiaries***.[40]  The Amended Complaint does not allege otherwise.  Accordingly, at the

end of 2023, Athene's Bermuda-based reinsurance affiliates had billions in surplus assets, a risk-

based capital ratio of 400% (double U.S. requirements), and the same A+ and A1 ratings as

Athene.[41]  In all events, Bermuda is an established, well-regulated jurisdiction for insurance, one

of only three globally to be deemed regulatorily equivalent to the U.S. by NAIC.  AC ¶86.[42]

Moreover, the use of Bermudian reinsurers is commonplace, as Plaintiffs' own sources

show.[43]  Other major life insurers that similarly leverage Bermuda reinsurance include AIG,

MetLife, and Prudential—one of NISA's preferred providers.  *See supra* p. 19.

### 5.  ModCo and Affiliated Transactions.

Plaintiffs' allegation that "ModCo transactions … obscure[d] the actual risks associated

with the assets involved and … enabled [Athene] to maintain a lower level of surplus" (AC ¶¶89-

91) supports no inference of imprudence.  The Amended Complaint nowhere alleges that SSGA

Trust Co. was in fact duped by this supposedly "highly complex and opaque Bermuda-based

---

[40] Ex. 7, Athene Holding Ltd. 2023 10-K at 19 ("We maintain the same reserving principles for our Bermuda reinsurance subsidiaries as we do for our US insurance subsidiaries."); *id.* at 25 ("Under the Bermuda rules, our Bermuda reinsurance subsidiaries are required to file with the BMA group audited financial statements prepared using accounting principles generally accepted in the US (US GAAP).").

[41] Ex. 7, Athene Holding Ltd. 2023 10-K at 21, 108, 187-188.

[42] *NAIC List of Reciprocal Jurisdictions*, NAIC, https://tinyurl.com/mwvdy263 (last visited Dec. 5, 2024).

[43] *See, e.g.*, Moody's Ratings, *Offshore reinsurance goes mainstream, raising counterparty risk*, at 2 (Feb. 4, 2025) (discussing "the shift to reinsuring US life insurance business offshore, mostly from the US to Bermuda").  This document is quoted in the Amended Complaint at ¶87 n.14.

SSGA TRUST CO.'S MOTION TO DISMISS – 22
(No. 2:24-cv-02050-KKE)

Fennemore Craig, P.C.
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

structure" or did not actually have a correct understanding of Athene's "true risk." AC ¶¶11, 96. Whether or not a layperson could easily grasp the effect of ModCo and affiliated reinsurance transactions, the Amended Complaint never alleges that *SSGA Trust Co.* relied on faulty numbers or otherwise failed to account for these factors in its fiduciary process. Rather, it acknowledges that SSGA Trust Co. was "an experienced investment consultant," AC ¶149, and therefore fully equipped to evaluate Athene's finances and transactions. Nothing in ERISA suggests that a fiduciary's decisions are judged against a layperson's understanding. To the contrary, the statute explicitly defines prudence through comparison to the conduct of "a prudent man acting in a like capacity and *familiar with such matters*." 29 U.S.C. § 1104(a)(1)(B) (emphasis added).

While Plaintiffs may believe that ModCo and affiliated reinsurance transactions are less transparent, that does not make them (or Athene) less safe—so long as the fiduciary is able to see and evaluate the true financial picture. The Amended Complaint does not, and could not, allege that SSGA Trust Co. had any trouble doing so.

### 6. Other Purported Concerns With Athene.

Plaintiffs further allege that Athene relies on "private letter ratings" from "smaller, private credit rating agencies" Kroll Bond Rating Agency ("KBRA") and DBRS Inc. ("DBRS") to make its investment portfolio appear to be of higher quality. AC ¶¶121-123. But KBRA and DBRS are not "suspect" ratings agencies; they are among the ten Nationally Recognized Statistical Rating Organizations (NRSROs), commonly known as credit ratings agencies, recognized by the SEC.[44] Moreover, Athene discloses both the "NAIC's [quality] designation" and the "NRSRO rating agency designation" of its investments (including CLOs).[45] In other words, Athene discloses

---

[44] Ex. 22, U.S. SEC, Off. of Credit Ratings, *Staff Report on Nationally Recognized Statistical Rating Agencies* at 3-4 (Feb. 2024), https://tinyurl.com/32u7eu7d. Plaintiffs also assert that "KBRA and DBRS have been subject to investigations by the SEC regarding their rating practices, resulting in millions of dollars in fines." AC ¶123. Those fines postdate the Weyerhaeuser PRT. *See supra* note 16, at 10. In any event, each of Plaintiffs' preferred "major rating agencies … S&P, Moody's, and Fitch," *id.*, have been fined millions **or billions** of dollars in connection with their ratings practices. *See* Exs. 16-19 (Settlement Agreements with SEC and DOJ reflecting penalties ranging from $15,000,000 to $1,375,000,000).

[45] Ex. 7, Athene Holding Ltd. 2023 10-K at 85-86.

Fennemore Craig, P.C.
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1    NAIC's purportedly more "stringent" ratings that Plaintiffs prefer.  AC ¶121.  In any event, Athene

2    does not rely exclusively on KBRA and DBRS.  Athene utilizes the ratings of S&P, Moody's, and

3    Fitch (Plaintiffs' preferred ratings agencies) as well as KBRA and DBRS.[46]  Thus, the notion that

4    Athene's additional use of KBRA's and DBRS's ratings should have been a cause of concern to

5    SSGA Trust Co. is implausible.

6           Plaintiffs also allege that in 2019 Athene was investigated by the State of New York

7    regarding its PRT business.  AC ¶124.  This investigation, however, did not relate to the alleged

8    riskiness of Athene's annuities.   Rather, it related to a purely jurisdictional matter—the

9    involvement of employees of Athene's non-New York-domiciled subsidiary in insurance

10   transactions involving New York residents.[47]  Athene cooperated fully with the investigation and

11   its New York-domiciled subsidiary was allowed to continue its PRT business in New York.[48]

12                              *****

13          In short, Plaintiffs' fiduciary-breach claims fail.  Their allegations—facts and data that they

14   say, if taken into account, would have caused fiduciaries to not select Athene—almost entirely

15   *postdate* the Weyerhaeuser PRT and therefore are irrelevant to whether SSGA Trust Co. acted

16   appropriately "under the circumstances … prevailing" in 2019.  In any event, with the relevant

17   "context" taken into account—as the Supreme Court has repeatedly admonished courts they must

18   consider, *Hughes*, 595 U.S. at 177 (quoting *Dudenhoeffer*, 573 U.S. at 425)—Plaintiffs' allegations

19   do not plausibly suggest that the selection of Athene was outside of the wide "range of reasonable

20   judgments a fiduciary may make based on [its] experience and expertise."  *Id.*

21

22

23

24       [46] *Id.* at 86.

25       [47] Ex. 15, Consent Order, *In re Athene Annuity and Life Co., Athene Holding Ltd.*, New York State
     Dept.  of  Fin.  Servs.  (Apr.  13,  2020),  https://www.dfs.ny.gov/system/files/documents/2020/
26   04/ea20200413_consent_order_athene.pdf.
         [48] *Id.* ¶¶18, 23-28.

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

**D.  Plaintiffs' Claim of Co-Fiduciary Liability Fails.**

Plaintiffs assert that SSGA Trust Co. is "liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a)."  AC ¶172.  As Weyerhaeuser argues in its MTD (which SSGA Trust Co. joins), Weyerhaeuser is not a relevant fiduciary, did not breach any duties, and did not commit any prohibited transactions.  Since "the existence of a fiduciary duty breach is a necessary pre-requisite to the existence of co-fiduciary liability," *Slack v. Int'l Union of Operating Eng'rs*, 2014 WL 4090383, at *17 (N.D. Cal. Aug. 19, 2014), Plaintiffs' claim for co-fiduciary liability must be dismissed.  *See, e.g.*, *Bloom*, 725 F. Supp. 3d at 344 (similar); *Izzarelli v. Rexene Prods. Co.*, 24 F.3d 1506, 1525 n. 34 (5th Cir. 1994) ("Because there was no breach of fiduciary duty on the part of the Rexene defendants, it goes without saying that the Bank cannot be liable as a co-fiduciary for the same conduct").

**II.   Count II Is Moot as to SSGA Trust Co.**

Count II is pleaded "in the alternative to Count I," applying only "[i]f any of the Defendants did not act as fiduciaries with respect to the selection of Athene."  AC ¶176.  Because the parties agree that SSGA Trust Co. acted as a fiduciary with respect to the selection of Athene, *see, e.g.*, AC ¶¶31, 131-132,  there is no live controversy regarding Count II as applied to SSGA Trust Co., and it should be dismissed as moot.

**III.  Plaintiffs' Prohibited Transaction Claim (Count III) Fails as a Matter of Law.**

Count III alleges that SSGA Trust Co. committed a prohibited transaction under ERISA § 406(a), 29 U.S.C. § 1106(a), by "caus[ing] the Plan to engage in the transactions" because Athene was supposedly a party in interest.  AC ¶¶177-181.  This claim fails for the reasons set forth in Weyerhaeuser's MTD, which SSGA Trust Co. joins.

## CONCLUSION

For the foregoing reasons, and those asserted by Weyerhaeuser, the Amended Complaint should be dismissed.

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600

1  //    DATED: July 31, 2025

2                         **FENNEMORE CRAIG, P.C.**

3

4              By   *s/ James P. Savitt*
                   James P. Savitt, WSBA #16847
5                  Jacob P. Freeman, WSBA #54123
                   1425 Fourth Avenue, Suite 800
6                  Seattle, WA  98101-2272
                   Tel: (206) 749-0500
7                  Fax  (206) 749-0600
                   Email: jsavitt@fennemorelaw.com
8                  Email: jfreeman@fennemorelaw.com

9                  **GOODWIN PROCTER LLP**

10                 Jaime A. Santos (*pro hac vice*)
                   1900 N Street NW
11                 Washington, D.C. 20036
                   Tel.: (202) 346-4000
12                 Email: JSantos@goodwinlaw.com

13                 James O. Fleckner (*pro hac vice*)
                   Alison V. Douglass (*pro hac vice*)
14                 Benjamin S. Reilly (*pro hac vice*)
                   100 Northern Avenue
15                 Boston, MA 02210
                   Tel.: (617) 570-1000
16                 Fax: (617) 523-1231
                   Email: JFleckner@goodwinlaw.com
17                 Email: ADouglass@goodwinlaw.com
                   Email: BReilly@goodwinlaw.com
18

19                 *Attorneys for Defendant State Street*
                   *Global Advisors Trust Company*
20

21                 *I certify that this memorandum contains 8,832 words, in*
                   *compliance with the Local Civil Rules and this Court's*
22                 *May 30, 2025 Order (Dkt. No. 63).*

23

24

25

26

**CERTIFICATE OF SERVICE**

I hereby declare under penalty of perjury under the laws of the United States of America that on this date, the foregoing document was filed electronically with the Court and thus served simultaneously upon all counsel of record.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on July 31, 2025.

_____
Xiaoshi Zhang

**Fennemore Craig, P.C.**
1425 Fourth Avenue, Suite 800
Seattle, Washington 98101-2272
Phone: (206) 749-0500
Fax: (206) 749-0600