THE HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREGORY MANEMAN, ANNETTE WILLIAMS, CASSANDRA WRIGHT, JAMES HOLLINS, AND PIERRE DONABY, individually and as representatives on behalf of a class of similarly situated persons,

Plaintiffs,

v.

WEYERHAEUSER COMPANY, WEYERHAEUSER COMPANY ANNUITY COMMITTEE, WEYERHAEUSER COMPANY ADMINISTRATIVE COMMITTEE, STATE STREET GLOBAL ADVISORS TRUST COMPANY, and JOHN DOES 1-5,

Defendants.

No. 2:24-cv-02050-KKE

**STATE STREET GLOBAL ADVISORS TRUST COMPANY'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

**NOTE ON MOTION CALENDAR:** AUGUST 28, 2026

ORAL ARGUMENT REQUESTED

SSGA TRUST CO.'S MOTION TO DISMISS
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 2

I.      SSGA Trust Co. and Its Role With Respect to The Weyerhaeuser PRT
        Transaction. ................................................................................................................ 2

II.     Plaintiffs File this Action, Amend Their Complaint After Defendants Moved
        to Dismiss, and the Court Dismisses the Amended Complaint. ................................. 5

III.    The Second Amended Complaint. ............................................................................... 6

LEGAL STANDARD ............................................................................................................... 7

ARGUMENT .......................................................................................................................... 8

I.      The SAC Fails to State a Claim Against SSGA Trust Co. for Breach of
        Fiduciary Duty. ........................................................................................................... 8

        A.      The Court Must Disregard Allegations that Do Not Address the
                Circumstances Prevailing at the Time of the PRT in January 2019. ............. 8

        B.      The SAC Fails to Allege a More Prudent Choice of Annuity Provider Was
                Actually Available Because It Does Not Identify Any Appropriate
                Comparators. ................................................................................................. 11

        C.      The Factors that Allegedly Distinguished Athene in January 2019 from
                Other Insurers Do Not Plausibly Support a Claim of Imprudence. .............. 13

                1.      Surplus and Liabilities. ...................................................................... 13

                2.      Affiliated Investments and ModCo. .................................................. 16

                3.      Athene's Separate Account. ............................................................... 18

                4.      Athene's Connection to Private Equity. ............................................. 20

                5.      Plaintiffs' Reliance on Interpretative Bulletin 95-1 Is Flawed. ......... 21

        D.      The Complaint Does Not Plausibly Allege that SSGA Trust Co. Acted
                Disloyally. ..................................................................................................... 23

        E.      The Derivative Claims of Co-Fiduciary Liability and Knowing
                Participation Must Also Be Dismissed. ......................................................... 24

II.     The Prohibited-Transaction Claim Also Fails. ........................................................... 25

CONCLUSION ...................................................................................................................... 25

SSGA TRUST CO.'S MOTION TO DISMISS – i
(No. 2:24-cv-02050-KKE)

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025) .............................1, 6, 7, 8, 11, 12, 15, 17, 18, 20, 21, 23, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................................7

*Bussian v. RJR Nabisco, Inc.*,
223 F.3d 286 (5th Cir. 2000) .........................................................................................13, 21

*Ferguson v. Ruane Cunniff & Goldfarb Inc.*,
2019 WL 4466714 (S.D.N.Y. Sept. 18, 2019)......................................................................24

*Fifth Third Bancorp v. Dudenhoeffer*,
573 U.S. 409 (2014).................................................................... 1-2, 7, 8, 13, 15, 23

*In re Finjan Holdings, Inc.*,
58 F.4th 1048 (9th Cir. 2023) ..............................................................................................19

*Hughes v. Northwestern Univ.*,
595 U.S. 170 (2022)..................................................................................................7, 19, 21

*Johnson v. Providence Health & Servs.*,
2018 WL 1427421 (W.D. Wash. Mar. 22, 2018) ..................................................................24

*Lee v. Verizon Commc'ns, Inc.*,
837 F.3d 523 (5th Cir. 2016) ...............................................................................................22

*Martin v. CareerBuilder, LLC*,
2020 WL 3578022 (N.D. Ill. July 1, 2020).........................................................................24

*Nicolas v. Trs. of Princeton Univ.*,
2017 WL 4455897 (D.N.J. Sept. 25, 2017) ........................................................................24

*Piercy v. AT&T Inc.*,
2025 WL 2505660 (D. Mass. Aug. 29, 2025) ...............................................14, 16, 18, 21, 23

*Riley v. Murdock*,
83 F.3d 415 (4th Cir. 1996) .................................................................................................21

*Robainas v. Metro. Life Ins. Co.*,
2015 WL 5918200 (S.D.N.Y. Oct. 9, 2015) .........................................................................15

SSGA TRUST CO.'S MOTION TO DISMISS – ii
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

*SEC v. Prakash*,
    718 F. Supp. 3d 1098 (N.D. Cal. 2024) ...................................................................................2

*Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*,
    733 F.3d 1251 (9th Cir. 2013) .................................................................................................7

*Slack v. Int'l Union of Operating Eng'rs*,
    2014 WL 4090383 (N.D. Cal. Aug. 19, 2014) ....................................................................25

*Sulyma v. Intel Corp. Inv. Pol'y Comm.*,
    909 F.3d 1069 (9th Cir. 2018) ...............................................................................................20

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ...................................................................................................2

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)................................................................................................................22

*White v. Chevron Corp.*,
    2017 WL 2352137 (N.D. Cal. May 31, 2017) .....................................................................24

*Wildman v. Am. Century Servs., LLC*,
    237 F. Supp. 3d 902 (W.D. Mo. 2017) .................................................................................24

**Statutes**

ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A) ...........................................................................8

ERISA § 404(a)(1)(A)(ii), 29 U.S.C. § 1104(a)(1)(A)(ii) ...............................................................22

ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B) ...........................................................8, 10, 17

ERISA § 405(a), 29 U.S.C. § 1105(a) ............................................................................................24

Iowa Code § 507C.2.14.b ...............................................................................................................20

Iowa Code § 508A.1 ....................................................................................................................5, 14

**Regulations**

29 C.F.R. § 2509.95-1(c) ...............................................................................1, 13, 18, 21, 22

29 C.F.R. § 2509.95-1(c)(5).............................................................................................................18

29 C.F.R. § 2509.95-1(d) ................................................................................................................22

SSGA TRUST CO.'S MOTION TO DISMISS – iii
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

**Other Authorities**

Alex Barinka, *Athene Raises $1.08 Billion in 3rd-Biggest U.S. IPO of 2016*, Bloomberg (Dec. 8, 2016), https://www.bloomberg.com/news/articles/2016-12-08/athene-said-to-raise-1-08-billion-in-initial-public-offering ..........................................11

Department of Labor, Report to Congress on Employee Benefits Security Administration's Interpretive Bulletin 95-1 (June 2024), https://tinyurl.com/bdu59ery.................................................................................. 17-18

ERISA Advisory Council, *Consultation Paper on Interpretive Bulletin 95-1* (July 2023), https://tinyurl.com/mtyycza8 ...............................................................................3

GAO, *Defined Benefit Pension Plans* (Feb. 2012), https://www.gao.gov/assets/gao-12-324.pdf .............................................................................................................................20

Meg Fletcher, *ELIC'S Collapse Forces Regulatory Changes*, Business Insurance (May 9, 1999), https://tinyurl.com/bdzdrsh3 ...............................................................3

Moody's, *Credit Opinion: Athene Holding Ltd.* (July 2, 2025), https://bit.ly/4fosVey ..................4

Sergio Padilla, *Moody's: Default Rates for Private Equity-Backed Companies on the Rise*, Private Debt Investor (Oct. 14, 2024), https://www.privatedebtinvestor.com/moodys-default-rates-for-private-equity-backed-companies-on-the-rise/ ...................................................................................21

Cezary Podkul & Gunjan Banerji, *Inflated Bond Ratings Helped Spur the Financial Crisis. They're Back.*, Wall St. J. (Aug. 7, 2019), https://bit.ly/4jQX7Ph.................................9

James M. Poterba, *The History of Annuities in the United States*, Nat'l Bureau of Econ. Rsch., Working Paper 6001 (1997), https://tinyurl.com/2s4b2npu ...............................3

Restatement (Third) of Trusts § 78 (2007) ................................................................................24

SEC, *In the Matter of Kroll Bond Rating Agency, LLC Admin. Proc. File No. 3-20097*, https://www.sec.gov/divisions/enforce/claims/kroll-bond-rating agency.htm ..............................................................................................................................9

SEC, *SEC Charges Two Credit Rating Agencies, DBRS and KBRA, with Longstanding Recordkeeping Failures* (Sept. 29, 2023), https://www.sec.gov/newsroom/press-releases/2023-211 ......................................................9

SSGA TRUST CO.'S MOTION TO DISMISS – iv
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

**PRELIMINARY STATEMENT**

Plaintiffs' challenge to the widespread and legal use of pension risk transfers ("PRTs") should be dismissed because it fails to state a claim—just like the previous complaint. The Second Amended Complaint ("SAC") adds no significant factual allegations addressing the Court's rationales for dismissing the duty-of-loyalty and prohibited-transaction claims. Those claims should therefore be dismissed for the same reasons.

The amended allegations relate to the duty-of-prudence claim, attempting to plug the hole of missing pre-2019 facts, as identified in the Court's previous dismissal order. To that end, the SAC unfavorably compares Athene to three insurance companies—New York Life Insurance Company ("New York Life"), Pacific Life Insurance Company ("Pacific Life"), and Teachers Insurance & Annuity Association ("TIAA")—in the pre-2019 period. Yet the market for PRTs above $1 billion is very narrow; only a handful of annuity providers compete for transactions of that size. The SAC never alleges that New York Life, Pacific Life, or TIAA were even participants in that niche market, or that any of them were willing or capable of performing a PRT comparable in size to Weyerhaeuser's. (They were not.) Even by Plaintiffs' own standard, then, nothing in these allegations indicates Defendants failed to "take steps calculated to obtain the safest annuity *available*" in the marketplace, 29 C.F.R. § 2509.95-1(c) (emphasis added). Indeed, those insurers' different roles in the PRT market means the "putative comparators" are not "truly comparable." *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1023 (9th Cir. 2025), *cert. granted*, No. 25-498 (U.S. Jan. 16, 2026). And without "a sound basis for comparison," Plaintiffs fail to "nudg[e] an inference of imprudence from possible to plausible." *Id.* at 1022 (citation omitted).

In any event, Plaintiffs' scattershot allegations concerning Athene's surplus and liabilities, "affiliated investments," "ModCo," its separate account, and its connection to private equity are missing critical context that render any inference of imprudence implausible and unreasonable. In evaluating an ERISA complaint, courts must perform a "*careful, context-sensitive scrutiny* of a complaint's allegations" to "divide the plausible sheep from the meritless goats." *Fifth Third*

SSGA TRUST CO.'S MOTION TO DISMISS – 1
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

*Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (emphasis added).  The SAC cannot survive that scrutiny.

Finally, as an independent basis for dismissal, Defendant State Street Global Advisors Trust Company ("SSGA Trust Co.")[1] joins Weyerhaeuser's[2] renewed arguments that Plaintiffs lack standing because they do not allege injury in fact.  The Court previously reached the opposite conclusion, but given the importance of the issue, the division among other courts, and the Court's candid recognition that "the question is a close one," Dkt. No. 90 at 2, Defendants respectfully submit that it warrants another look.

## BACKGROUND

**I.   SSGA Trust Co. and Its Role With Respect to The Weyerhaeuser PRT Transaction.**

State Street Corporation ("State Street Corp.") is a global financial services firm and bank holding company headquartered in Boston.[3]  Its investment management business, State Street IM, provides asset management, research, and advisory services to corporations, mutual funds, and other institutional investors.[4]  As of December 31, 2023, State Street IM had approximately $4.13 trillion in assets under management ("AUM").[5]  State Street IM is not the beneficial owner of these assets.  Rather, these assets are held in trust for the benefit of its clients, the investment funds it advises, and those funds' beneficial owners.[6]

---

[1] SSGA Trust Co. is a wholly-owned subsidiary of State Street Bank and Trust Company (a wholly-owned subsidiary of State Street Corporation), and is one of the legal entities that comprises State Street Investment Management ("State Street IM"), formerly State Street Global Advisors, the global investment management business of State Street Corporation.

[2] "Weyerhaeuser" refers collectively to Defendants Weyerhaeuser Company, Weyerhaeuser Company Annuity Committee, and Weyerhaeuser Company Administrative Committee.

[3] Dkt. No. 68-4, State Street Corp., Annual Report (Form 10-K) at 1, 6-7 (Feb. 15, 2024).  The Court may consider "documents incorporated by reference in the complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see SEC v. Prakash*, 718 F. Supp. 3d 1098, 1105-06 (N.D. Cal. 2024) (taking judicial notice of SEC filings and other public records).

[4] Dkt. No. 68-4 at 7-8, 180.

[5] *Id.* at 8.

[6] For example, the SPDR Series Trust holds securities (*i.e.*, stocks) in trust for the beneficial interest of the 83 investment funds established under the trust.  Dkt. No. 68-5, SPDR Series Trust Annual Report (Form N-CSR) at 234 (Sept. 7, 2023).

SSGA TRUST CO.'S MOTION TO DISMISS – 2
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

SSGA Trust Co.'s Independent Fiduciary Services Team ("IFS") separately offers independent fiduciary services.[7]  Through IFS, SSGA Trust Co. is a leading provider of independent fiduciary services for PRTs and has served as independent fiduciary for over 90 PRTs, including some of the largest on record.[8]

PRTs are a secure way to fulfill an employer's pension obligations because annuities are backed by a significant amount of assets, including assets transferred from the original plan, and are managed by regulated insurers who specialize in such products.  Annuity contracts have been used widely for over a century to fund pension plan obligations.[9]  They have become even safer after improvements in regulatory oversight prompted by watershed moments such as the collapse of Executive Life Insurance Company (SAC ¶52) and the 2008 financial crisis.[10]  Today, annuitants benefit from numerous structural protections including strict regulation under state insurance law, separation of assets used to fund annuity payments through a "separate account" structure, reinsurance, and backing by State Guaranty Associations in the event of the insurer's insolvency.  ERISA Advisory Council, *Consultation Paper on Interpretive Bulletin 95-1*, at 1, 24, 29, 33-35 (July 2023), https://tinyurl.com/mtyycza8 ("*Consultation Paper*") (cited in SAC ¶59).

In an amicus brief filed in a related case, the U.S. Secretary of Labor explained that "PRTs are a vital component of the delicate calibration established by Congress."  Amicus Br. of the U.S. Sec'y of Labor 25, *Konya v. Lockheed Martin Corp.*, No. 25-2061 (4th Cir. filed Jan. 9, 2026) ("DOL Amicus Br.").[11]  And, crucially, the Secretary observed that "not one plan participant/beneficiary has lost even a single red cent due to a PRT in the last thirty years." *Id.* Likewise, a coalition of States led by Iowa—which regulates Athene Annuity and Life Company

---

[7] State Street IM, *DC DNA: How Independent Fiduciary Services Evolved and What It Means Today* (Oct. 30, 2025), https://tinyurl.com/Ex-28-STATE-STREET.

[8] *Id.*

[9] *See generally* James M. Poterba, *The History of Annuities in the United States*, Nat'l Bureau of Econ. Rsch., Working Paper 6001 (1997), https://tinyurl.com/2s4b2npu.

[10] Meg Fletcher, *ELIC'S Collapse Forces Regulatory Changes*, Business Insurance (May 9, 1999), https://tinyurl.com/bdzdrsh3.

[11] The DOL Amicus Br. was filed in this Court at Dkt. No. 86-2.

SSGA TRUST CO.'S MOTION TO DISMISS – 3
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

("Athene")—detailed the "sophisticated regulatory work that States and state insurance regulators perform in modeling the safety and security of [annuity] products for consumers," including "apply[ing] a risk-based capital model to measure solvency" and "verification [of investment risk] by independent auditors during financial statement audits and by regulators during exams and transaction reviews." Br. of Amici Curiae Iowa and 8 Additional States at 8-24, *Konya v. Lockheed Martin Corp.*, No. 25-2061 (4th Cir. filed Dec. 10, 2025) ("Iowa Amicus Br."), https://www.iowaattorneygeneral.gov/media/cms/12_908A6D3D74F4E.pdf.

Weyerhaeuser decided to transfer some of its pension obligations to an annuity provider through a partial PRT; the Plan fiduciaries hired SSGA Trust Co.'s IFS Team to select an annuity provider. SAC ¶32. In January 2019, SSGA Trust Co. selected Athene as the annuity provider for a $1.5 billion partial PRT for the Weyerhaeuser Plan. SAC ¶¶178-179. Athene is an insurance and retirement services company that, among other things, issues retirement savings products including annuities.[12] Like multiple other insurers, Athene is today a subsidiary of a company that also has a private equity arm—here, Apollo Global Management, Inc. ("Apollo"). SAC ¶64. As the SAC notes, Apollo became Athene's parent company through a merger that took place in 2022—years *after* the Weyerhaeuser PRT. *Id.*

Athene is subject to the same insurance requirements and oversight by regulators as other insurers and is a recognized leader in the pension annuity field. *See* DOL Amicus Br. 11. As Plaintiffs acknowledge, "Athene has a Moody's rating of A1." SAC ¶156. That Moody's rating states that "the A1 insurance financial strength (IFS) rating of [the Athene] US and Bermuda-based life insurance operating companies reflects the company's strong market position in its core insurance products"—and Moody's overall "outlook" for Athene is "stable."[13] Athene's regulator explains that "Athene and its sibling companies … are well-regulated by Iowa's insurance division to ensure that their products are safe and secured." Iowa Amicus Br. 3-4; *id.* at 14-15 (explaining

---

[12] Dkt. No. 68-7, Athene Holding Ltd. 2023 10-K at 10.

[13] Moody's, *Credit Opinion: Athene Holding Ltd.* at 1 (July 2, 2025), https://bit.ly/4fosVey.

SSGA TRUST CO.'S MOTION TO DISMISS – 4
(No. 2:24-cv-02050-KKE)

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

that, under industry-standard "risk-based capital model," Athene has "a significant surplus over liabilities," which "shows [its] safety").

Once the Weyerhaeuser PRT was executed, Athene became responsible in perpetuity for the monthly payments of plan participants receiving $1,085 or less per month. SAC ¶¶178, 185-188; Dkt. No. 68-3, Amendment No. 7 to Weyerhaeuser Pension Plan at 1-3 (Jan. 23, 2019). The Weyerhaeuser PRT was structured such that Athene would pay the pension benefits from "a dedicated separate account and guaranteed by its general account." Dkt. No. 68-1, Commitment Agreement at 1 (Jan. 23, 2019); SAC ¶¶131, 162-163 (same). If that separate account were to be overdrawn, Athene must cover the liabilities from its general account; if the general account could not cover the liabilities, then Athene's reinsurers would be on the hook. *Id.* The separate account is regulated under Iowa Code § 508A.1, where "none of the assets allocated to the Dedicated Account … will be chargeable with liabilities arising out of any other business of Athene." Declaration of Joseph E. Clark, Ex. 1, Group Annuity Contract ("GAC") ¶1.6.

Athene began making monthly payments to Plaintiffs and other Weyerhaeuser retirees in May 2019. SAC ¶186. Plaintiffs do not allege that Athene has ever missed a payment.

II.    **Plaintiffs File this Action, Amend Their Complaint After Defendants Moved to Dismiss, and the Court Dismisses the Amended Complaint.**

Plaintiffs filed this action in December 2024, alleging that Defendants breached their fiduciary duties and committed prohibited transactions in selecting Athene for the Weyerhaeuser PRT. Dkt. No. 1. Defendants moved to dismiss the complaint for lack of standing and failure to state a claim. Dkt. Nos. 32-33. Plaintiffs opposed those motions, Dkt. No. 49, but then filed an amended complaint before Defendants replied, Dkt. No. 62. Defendants once again moved to dismiss the amended complaint on the same grounds. Dkt. Nos. 66-67.

In March 2026, after briefing and oral argument, the Court dismissed the amended complaint in full. Dkt. No. 90 ("Order"). The Court first "conclude[d] that Plaintiffs have adequately alleged an injury in fact at this stage of the case," while recognizing that "the question

SSGA TRUST CO.'S MOTION TO DISMISS – 5
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

is a close one." *Id.* at 2, 19.  The Court dismissed the duty-of-prudence claim because most of Plaintiffs' "specific factual allegations concerning Athene's risk factors postdate January 2019," and "Plaintiffs' pre-2019 allegations are simply too meagre to provide the requisite factual enhancement to take their claim across the line between possibility and plausibility." *Id.* at 22, 23 (quoting *Anderson*, 137 F.4th at 1021 (brackets and quotation marks omitted)).  The Court also dismissed the duty-of-loyalty claim because "some of the purported conflicts Plaintiffs identify arose after the Weyerhaeuser PRT transaction," and the remaining allegations were "at most, a 'potential for conflict'—and a tenuous potential at that." *Id.* at 25-26 (quoting *Anderson*, 137 F.4th at 1026).

The Court also dismissed the prohibited-transaction claims.  The Court rejected "Plaintiffs' circular argument that the PRT transaction itself made Athene a 'party in interest'" under ERISA § 406(a), explaining that Plaintiffs' position "would lead to the absurd result of prohibiting *all* PRTs ... even though ERISA expressly authorizes them elsewhere."  Order 27.  Next, considering Plaintiffs' claim that Defendants engaged in prohibited self-dealing under ERISA § 406(b) by selecting Athene "to maximize Weyerhaeuser's profits," the Court held that the Ninth Circuit had "squarely rejected 406(b) liability based on the theory Plaintiffs advance." *Id.* at 28.

Finally, the Court dismissed Plaintiffs' derivative claims but, finding "Plaintiffs could still 'possibly' cure the deficiencies in their Amended Complaint with additional factual allegations," granted leave to amend.  Order 29.

**III.   The Second Amended Complaint.**

The SAC asserts the same counts on the same theories as the prior complaints.  It adds some new factual allegations, none of which significantly addresses the Court's rationales for dismissing the duty-of-loyalty and prohibited-transaction claims. Rather, the new factual allegations largely pertain to (1) Athene's business in the years prior to the Weyerhaeuser PRT in 2019 (SAC ¶¶65-81, 89-97, 102-103, 124) and (2) Athene's separate account supporting the group annuity contracts in the Weyerhaeuser PRT (SAC ¶¶162-172).

SSGA TRUST CO.'S MOTION TO DISMISS – 6
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," which must go beyond pleading "facts that are 'merely consistent with' a defendant's liability." *Id.* (citation omitted). Likewise, "naked assertions" or "conclusory statements" are insufficient. *Id.* (brackets and citation omitted). And courts "are not 'required to accept as true allegations that contradict exhibits attached to the [c]omplaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'" *Seven Arts Filmed Ent., Ltd. v. Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013) (citation omitted).

It is particularly important that courts rigorously enforce these standards in ERISA cases because, as the Supreme Court and Ninth Circuit have explained, "the circumstances facing an ERISA fiduciary will implicate difficult tradeoffs, and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Anderson*, 137 F.4th at 1021 (quoting *Hughes v. Northwestern Univ.*, 595 U.S. 170, 177 (2022)). In evaluating a motion to dismiss an ERISA complaint, therefore, courts must perform a "*careful, context-sensitive scrutiny* of a complaint's allegations" to "divide the plausible sheep from the meritless goats." *Dudenhoeffer*, 573 U.S. at 425 (emphasis added).

Moreover, courts must "assess a fiduciary's actions based upon information available to the fiduciary at the time of" the relevant fiduciary decision, "and not from the vantage point of hindsight." *Anderson*, 137 F.4th at 1021 (citation omitted). Accordingly, "it is not enough for a plaintiff simply to allege that the fiduciaries could have obtained better results—whether higher returns, *lower risks*, or reduced costs." *Id.* (emphasis added).

SSGA TRUST CO.'S MOTION TO DISMISS – 7
(No. 2:24-cv-02050-KKE)

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

**ARGUMENT**

**I.      The SAC Fails to State a Claim Against SSGA Trust Co. for Breach of Fiduciary Duty.**

Count I alleges that SSGA Trust Co. violated ERISA § 404(a)(1)(A) (duty of loyalty) and 404(a)(1)(B) (duty of prudence), 29 U.S.C. § 1104(a)(1)(A), (B).  SAC ¶¶217-219.  The SAC fails to state a claim against SSGA Trust Co. for breach of these duties.

**A.   The Court Must Disregard Allegations that Do Not Address the Circumstances Prevailing at the Time of the PRT in January 2019.**

ERISA requires fiduciaries to act "with the care, skill, prudence, and diligence *under the circumstances then prevailing* that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).  Accordingly, "the content of the duty of prudence turns on 'the circumstances ... prevailing' *at the time the fiduciary acts*, § 1104(a)(1)(B), [and] the appropriate inquiry will necessarily be context specific."  *Dudenhoeffer*, 573 U.S. at 425 (emphasis added).  As the Ninth Circuit recently held, the inquiry is "whether the individual trustees, *at the time they engaged in the challenged transactions*, employed the appropriate methods" in discharging their duties.  *Anderson*, 137 F.4th at 1021 (citation omitted; emphasis added).

The alleged breach—the selection of Athene—occurred in January 2019.  SAC ¶178.  Yet, as with the prior complaints, most of the SAC's "specific factual allegations concerning Athene's risk factors postdate January 2019" and therefore "do not support Plaintiffs' duty of prudence claim."  Order at 22.  These include (emphases added):

- Apollo's merger with Athene in 2022, "Athene's second quarter 2024 investments," and "Apollo-owned companies [that] have defaulted *since 2022*" (¶¶64, 82-84);

- general default rates of "private equity-owned companies" "[b]etween *January 2022 and August 2024*" (¶83);

SSGA TRUST CO.'S MOTION TO DISMISS – 8
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

- Athene's collateralized loan obligations in 2023, Athene's surplus-to-liability ratio in 2023, Athene's "funding agreement-backed notes" in 2024 and 2025, "the growth rate of Athene's liabilities … from 2019-2023," and Athene's "investments in affiliated assets" from 2019-2023 (¶¶93, 96, 104-108);

- Athene's "risky assets … as of 2022" (¶127);

- The "reserve credit" being provided to U.S. life insurers from offshore reinsurers "[b]y the end *of 2023*" (¶120);

- warnings provided to the industry in 2021 and 2024 (¶87), "December 2023" (¶129), 2024 (¶121 & n.21), and 2025 (¶121 & n.20);

- a NISA study evaluating candidates for PRT annuities *as of 2022* (¶¶149-155);

- an *August 2019* article about private credit ratings agencies (¶159[14]), and other articles from 2025 (¶¶113-114);

- SEC fines issued to two private ratings agencies *in 2020 and 2023* (¶158[15]);

- an unrelated penalty paid by Athene to New York regulators *in 2020* (¶161);

- SSGA Trust Co.'s parent corporation's holdings in Apollo at various times *after* the Weyerhaeuser PRT (¶174);

- Allegations that "approximately 20% of Athene's portfolio *is* invested in risky asset-backed securities and leveraged loans, and approximately 80% of its PRT liabilities *are* reinsured through Bermuda-based affiliates" (¶76);

- claims *published in 2023* regarding allegedly excessive "investment management fees" charged by Apollo to Athene, as judged by "Apollo insiders" (¶81 & n.6); and

---

[14] Cezary Podkul & Gunjan Banerji, *Inflated Bond Ratings Helped Spur the Financial Crisis. They're Back.*, Wall St. J. (Aug. 7, 2019), https://bit.ly/4jQX7Ph.

[15] SEC, *In the Matter of Kroll Bond Rating Agency, LLC Admin. Proc. File No. 3-20097*, https://www.sec.gov/divisions/enforce/claims/kroll-bond-rating-agency.htm; SEC, *SEC Charges Two Credit Rating Agencies, DBRS and KBRA, with Longstanding Recordkeeping Failures* (Sept. 29, 2023), https://www.sec.gov/newsroom/press-releases/2023-211.

SSGA TRUST CO.'S MOTION TO DISMISS – 9
(No. 2:24-cv-02050-KKE)

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

- Apollo's sale to Athene "*in early 2026*" of part of its real estate investment trust and Apollo's redemption requests "during the first quarter of 2026" (¶¶79, 85).

These allegations are categorically irrelevant to Plaintiffs' claim for fiduciary breach, as the Court previously recognized. Order at 21-23.

By the same token, many of the SAC's new factual allegations are irrelevant because they refer to circumstances *several years before* the Weyerhaeuser PRT without any allegation that those years-old alleged events persisted or meaningfully affected "the circumstances … prevailing" in January 2019. 29 U.S.C. § 1104(a)(1)(B). These new allegations include:

- Athene's creation in 2009 and subsequent investments in "high-risk residential mortgage-backed securities" (¶72);
- Athene's 2011 acquisition of Liberty Life Insurance Company and supposed "high-risk investments" in 2011 and 2012 (¶73);
- Apollo's 2008 buyout of Caesar's casino, Athene's 2013 investment in Caesar's, a related investigation by New York's Department of Financial Services, and Caesar's bankruptcy in 2015 (¶77);
- a loan transaction between Athene and Apollo in 2016, which "was ultimately repaid" (¶78); and
- "Athene's investment portfolio" before it "issued shares to the public in late 2016" (¶76).

Whatever dubious bearing these allegations would otherwise have on Athene's condition from 2009-2016, they indicate nothing whatsoever about Athene's stability *years later*, in January 2019. Nor does the SAC allege that they do. In fact, the SAC affirmatively alleges that Athene's business was subsequently transformed in significant part, including because "Athene completely transitioned out of the [life insurance] business" in 2016 (SAC ¶136), launched its public offering in 2016 (SAC ¶76), and began executing PRTs in 2017, providing over $30 billion in PRT annuities since then (SAC ¶¶197-198). A selective compilation of isolated investments and

SSGA TRUST CO.'S MOTION TO DISMISS – 10
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

transactions conducted by Athene several years before the Weyerhaeuser PRT—when Athene had never even done a PRT, still operated a life insurance business, and had not yet "[r]aise[d] $1.08 Billion in 3rd Biggest U.S. IPO of 2016"[16]—sheds no light on whether, under the circumstances prevailing *in January 2019*, Athene was a prudent choice, much less on whether the fiduciary process for selecting Athene was sound.

### B. The SAC Fails to Allege a More Prudent Choice of Annuity Provider Was Actually Available Because It Does Not Identify Any Appropriate Comparators.

There are two ways to plead a duty-of-prudence breach: (1) "alleging facts that would directly show that the fiduciaries employed unsound methods," or (2) "make circumstantial factual allegations from which the court may reasonably infer from what is alleged that the process was flawed." *Anderson*, 137 F.4th 1021-22 (quotation marks and citation omitted). The SAC does not make any non-conclusory *direct* allegations about SSGA Trust Co.'s fiduciary process in selecting Athene. Rather, Plaintiffs "attempt[] to show a breach of the duty of prudence only through the circumstantial route." *Id.* at 1022.

"When an ERISA plaintiff attempts to do so," as Plaintiffs do here, "by relying on a theory that 'a prudent fiduciary in like circumstances' would have selected a different [annuity provider] …, that plaintiff must provide a sound basis for comparison." *Anderson*, 137 F.4th at 1022. (quotation marks and citation omitted). Thus, "when a plaintiff alleges imprudence based on a fiduciary's decision to make one [selection] rather than an alternative, the key to nudging an inference of imprudence from possible to plausible is providing a sound basis for comparison—a meaningful benchmark." *Id.* (brackets, quotation marks and citation omitted).

Here, the SAC attempts to satisfy this standard by unfavorably comparing Athene with three insurance companies in the years prior to the Weyerhaeuser PRT: New York Life, TIAA, and Pacific Life. *See* SAC ¶¶89-96 (comparing Athene's surplus-to-liability ratio, surplus, and

---

[16] Alex Barinka, *Athene Raises $1.08 Billion in 3rd-Biggest U.S. IPO of 2016*, Bloomberg (Dec. 8, 2016), https://www.bloomberg.com/news/articles/2016-12-08/athene-said-to-raise-1-08-billion-in-initial-public-offering.

SSGA TRUST CO.'S MOTION TO DISMISS – 11
(No. 2:24-cv-02050-KKE)

liabilities growth rate to those of New York Life, TIAA, and Pacific Life); ¶¶102-103 (comparing Athene's increase in affiliated investments to that of New York Life's); ¶124 (comparing Athene's use of modified co-insurance ("ModCo") with that of New York Life, TIAA, and Pacific Life); ¶¶162-168 (comparing Athene's separate account to that of New York Life). The SAC alleges that "[e]ach of these carriers are relevant comparisons" to Athene. ¶90. But "simply labeling [alternatives] as 'comparable' or 'a peer' is insufficient to establish that those [alternatives] are meaningful benchmarks." *Anderson*, 137 F.4th at 1023 (citation omitted). The SAC must show that the "putative comparators" are "truly comparable." *Id.*

Plaintiffs have not done that. Crucially, the SAC fails to allege that New York Life, TIAA, or Pacific Life were able or willing to offer annuity contracts for a transaction on the scale of the Weyerhaeuser PRT, which involved $1.5 billion in pension obligations. SAC ¶178. It does not allege that New York Life, TIAA, or Pacific Life have *ever* done a PRT of that size, or that any of those insurers were capable of doing so in January 2019. In 2020, the New York Department of Financial Services stated that "[t]he U.S. PRT Transaction market consists of approximately 15 insurers" and only "[a]pproximately two to four insurers typically compete for transactions that involve more than $1 billion in liabilities." Dkt. No. 68-15 ¶9, *In re Athene Annuity & Life Co.*, N.Y. State Dept. of Fin. Servs. (Apr. 13, 2020), https://tinyurl.com/m8pumk5r.[17] The SAC, however, never alleges that New York Life, TIAA, or Pacific Life were relevant participants in this niche market for PRTs exceeding $1 billion in 2019. (Nor could Plaintiffs so allege—indeed, SSGA Trust Co. is unaware of any of the purported comparator insurance companies bidding for a PRT of this size in or before 2019, and conspicuously not one of the many recent PRT lawsuits that have been filed by the same Plaintiffs' lawyers alleges that any of these companies participate in PRTs in this space.)

The Plaintiffs have therefore failed to allege what *Anderson* requires in this context: "appropriate comparators," which of course must be alternatives that "actually existed." 137 F.4th

---

[17] This consent order is both incorporated by reference, SAC ¶161, and judicially noticeable.

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

at 1025 (holding, in the context of imprudence claims based on fund underperformance, that an ERISA plaintiff who "does not allege that any funds with comparable risk profiles and greater returns actually existed" fails to state a claim for breach).  Indeed, even the standard urged by Plaintiffs requires only that the fiduciary "take steps calculated to obtain the safest annuity *available*," 29 C.F.R. § 2509.95-1(c) (emphasis added); *see* SAC ¶¶4, 35, 218-219; *see also Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 302 (5th Cir. 2000) (explaining that the fiduciary must conduct "a proper investigation of *potential* annuity providers" and, "[h]aving concluded that all *remaining* providers are comparable in their ability to serve the best interests of plan beneficiaries and participants, a fiduciary does not violate ERISA's commands by subsequently considering which provider offers its annuity at a lower price" (emphasis added)).  Because the SAC never alleges that New York Life, TIAA, or Pacific Life were "available" in 2019 as annuity providers for a PRT on the scale of the Weyerhaeuser PRT, those insurers cannot supply a sound basis for comparison or support Plaintiffs' claim for imprudence in selecting Athene.

### C. The Factors that Allegedly Distinguished Athene in January 2019 from Other Insurers Do Not Plausibly Support a Claim of Imprudence.

As an additional basis for dismissal, the factors that Plaintiffs allege distinguished Athene in 2019 from insurers such as New York Life, TIAA, and Pacific Life do not support an inference of imprudence.

#### 1.  Surplus and Liabilities.

Plaintiffs place great weight on Athene's "surplus-to-liability ratio" (2.17% in 2018), "the small amount of Athene's surplus relative to other carriers" ($1.2 billion in 2018), and "the growth rate of Athene's liabilities" (30.9% from 2014-2018).  SAC ¶¶89-99.  But a "careful, context-sensitive scrutiny of [the] complaint's allegations," *Dudenhoeffer*, 573 U.S. at 425, demonstrates that these numbers do not reflect any supposed risk to Athene's annuities supporting the Weyerhaeuser PRT.

SSGA TRUST CO.'S MOTION TO DISMISS – 13
(No. 2:24-cv-02050-KKE)

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

*First*, Plaintiffs exclusively cite numbers that include Athene's *general account*. But the Weyerhaeuser PRT annuities are backed by assets in a dedicated *separate* account, which—by statute and contractual obligation alike—is "[i]nsulat[ed]" from "liabilities arising out of any other business of Athene." GAC ¶1.6 (citing Iowa Code § 508A.1); *see* SAC ¶¶131, 123, 162-163.[18] So even if Athene's general-account surpluses and liabilities were as Plaintiffs suggest, that has little relevance to the security of the annuities paid to the former Weyerhaeuser Plan participants and beneficiaries, which depends first and foremost on the security of the *separate account*. This is a "major gap in [the SAC's] chain of circumstantial inference." *Piercy v. AT&T Inc.*, 2025 WL 2505660, at *40 (D. Mass. Aug. 29, 2025), *report and recommendation adopted*, 2025 WL 2809008 (D. Mass. Sept. 30, 2025). "In selecting an annuity provider in this case," *Piercy* explains, "the fiduciaries plainly did not limit their inquiry to the creditworthiness of Athene as a company, but instead considered the safety and soundness of the particular annuities being purchased"—which "were *not* simply backed by the creditworthiness of Athene itself," but "also backed by a separate account, evidently dedicated to holding assets to secure the annuity obligations." *Id.*

Here, too, the SAC acknowledges (and the GAC incorporated by reference confirms) that the annuities at issue were backed by a dedicated separate account. Yet Plaintiffs make no allegations about the surplus-to-liability ratio *of the separate account*. The document the SAC relies on does, however, disclose the surpluses and liabilities of Athene's various separate accounts taken together, which reveals a surplus-to-liability ratio of 6.78% in 2018.[19] The SAC does not allege that a 6.78% surplus-to-liability ratio was a red flag for a prudent fiduciary; in fact, that was

---

[18] The SAC incorrectly alleges "the separate account assets may *also* be used to support Athene's payment obligations under other, separate GACs issued by Athene." SAC ¶¶169-171. That is contradicted by the GAC, as discussed *infra*, p. 19.

[19] Annual Statement of the Athene Annuity and Life Company for the Year Ended December 31, 2018, at 3, https://bit.ly/4u1E0WG (listing $319,495,719 of separate-account surplus and $4,709,678,697 of separate-account liabilities). This statutory annual statement is both a judicially noticeable public document and incorporated by reference, because the SAC relies on it to determine Athene's 2.17% surplus-to-liability ratio ($1,224,163,823 / $56,762,788,380) and surplus in 2018. *Id.*; SAC ¶¶89 n.11, 91, 94, 100 (stating the SAC relies on "Athene's standalone annual statement").

SSGA TRUST CO.'S MOTION TO DISMISS – 14
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

just shy of the national average in 2018 (7.30%) and *greater* than Pacific Life's last year (6.45%). SAC ¶¶91, 93.

*Second*, the SAC acknowledges that the Athene parent entity, Athene Holding Ltd., has an "ample surplus." SAC ¶100. Despite dismissing the parent's surplus as irrelevant, *id.*, the SAC's calculation of New York Life's surplus-to-liability ratio (13.21% in 2018) likewise refers to the *parent* entity (New York Life Insurance Company) rather than the relevant subsidiary (New York Life Insurance and Annuity Corporation). SAC ¶¶58, 91.[20] The subsidiary reported a surplus-to-liability ratio of 5.91% in 2018,[21] less than Athene's separate-accounts' surplus-to-liability ratio that year (6.78%). The SAC does not explain why it compares the surplus of an Athene *subsidiary* to that of New York Life's *parent*. This is an "apples to oranges" comparison, which courts have consistently held cannot support any inference of imprudence under ERISA. *See Anderson*, 137 F.4th at 1025 ("Comparing apples and oranges is not a way to show that one is better or worse than the other." (citation omitted)).

*Third*, the SAC does not allege that surplus-to-liability ratio is the industry standard metric for assessing solvency. Rather, the SAC elsewhere acknowledges a *different* metric: Risk Based Capital ("RBC") ratio. SAC ¶126. Indeed, RBC is the primary measure by which insurance regulators evaluate the capital adequacy of insurers. *See* Iowa Amicus Br. 10-11 ("[A]ll United States insurance regulators apply a risk-based capital model to measure solvency."); *Robainas v. Metro. Life Ins. Co.*, 2015 WL 5918200, at *1 (S.D.N.Y. Oct. 9, 2015). Plaintiffs do not even attempt to allege that Athene's RBC was inadequate. Nor could they: the Commitment Agreement

---

[20] In 2018, the parent reported a 13.21% surplus-to-liability ratio ($21,006,470,366 / $159,029,754,011). Annual Statement for the Year Ended December 31, 2018 of the Condition and Affairs of the N.Y. Life Ins. Co. at 3, https://www.newyorklife.com/assets/docs/pdfs/financial-info/2018/NYLIC-4th-Qtr-2018-Statement.pdf.

[21] Annual Statement for the Year Ended December 31, 2018 of the Condition and Affairs of the N.Y. Life Ins. and Annuity Corp. at 3, https://www.newyorklife.com/assets/docs/pdfs/financial-info/2018/NYLIAC-4th-Qtr-2018-Statement.pdf ($8,561,110,493 / $144,871,550,177); *see id.* at 51 (identifying New York Life Insurance Company as the "Parent").

SSGA TRUST CO.'S MOTION TO DISMISS – 15
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

includes an express representation that Athene's RBC "is at least 350%," as calculated "consistent with the requirements and methodologies prescribed under Iowa law."[22]

### 2.  Affiliated Investments and ModCo.

Plaintiffs also unfavorably compare Athene's use of "affiliated investments" (SAC ¶¶101-103) and "ModCo" (*id.* ¶124) to that of other insurers prior to the Weyerhaeuser PRT.  These allegations do not move the needle, either.

To start, Plaintiffs' allegations about "affiliated investments" and "ModCo" again include Athene's *general* account.  As discussed above, given the dedicated separate account backing the annuities here—which Plaintiffs never allege was actually underfunded—the SAC's allegations about the general account reflect a "major gap in its chain of circumstantial inference."  *Piercy,* 2025 WL 2505660, at *40; *see* pp. 13-14, *supra.*

In any event, these allegations do not support any inference of imprudence.  It is unclear what the SAC means by "affiliated investments" or "investment in affiliated assets"—the SAC does not elaborate.  SAC ¶¶101-104.  Nor is it clear what the concern would be.  The SAC apparently attempts to explain by alleging that "[w]hen an annuity provider is subjected to a regulatory event such as 'rehabilitation' or 'conservation,' its affiliated investments suffer a more significant and rapid asset value write-down compared to unaffiliated investments."  *Id.* ¶101.  But there is no allegation that Athene was ever subjected to such a regulatory event or that a prudent fiduciary would have had reason in January 2019 to believe such a regulatory event would occur.  Nor does the SAC contain any allegations explaining what effect, if any, the purported "more significant and rapid asset value write-down compared to unaffiliated investments" would have on the annuities for the Weyerhaeuser PRT in particular.

The same is true of Plaintiffs' allegations regarding ModCo, which is just "a type of reinsurance."  SAC ¶123.  It is, moreover, "a safer form of reinsurance than pure coinsurance" and is one of the "most common collateral arrangements" according to Athene's regulator.  Iowa

---

[22] Dkt. No. 68-1, Commitment Agreement §§ 7(a)(xi), 9(iii).

SSGA TRUST CO.'S MOTION TO DISMISS – 16
(No. 2:24-cv-02050-KKE)

Amicus Br. 13-14. Notably, Plaintiffs engage in yet another apples-to-oranges comparison, citing figures for Athene's "exposure in ModCo" in 2017 and 2018, which the SAC compares to "other insurers, including New York Life, TIAA, and Pacific Life, [that] reported zero in ModCo *with offshore affiliates* for the time periods specified."  SAC ¶124 (emphasis added).  But the SAC offers no relevant comparison to those insurers' use of ModCo *generally*—including with non-offshore affiliates.  "Comparing apples and oranges is not a way to show that one is better or worse than the other."  *Anderson*, 137 F.4th at 1025 (citation omitted).

Moreover, Plaintiffs do not explain how Athene's use of ModCo informs whether SSGA Trust Co.'s fiduciary process was prudent.  They allege the use of ModCo somehow "obscure[d] Athene's true financial condition," and "obscure[d] the actual risks associated with the assets involved and … enabled [Athene] to maintain a lower level of surplus."  SAC ¶¶125-126. Critically, however, the SAC nowhere alleges that SSGA Trust Co. was in any way duped by this supposedly "highly complex and opaque Bermuda-based structure," or did not actually have a correct understanding of Athene's "true financial condition."  SAC ¶¶12, 125.  Whether or not a layperson could easily grasp the effect of ModCo, the SAC never alleges that *SSGA Trust Co.* relied on faulty numbers or otherwise failed to account for these factors in its fiduciary process. Rather, it acknowledges that SSGA Trust Co. was "an experienced investment consultant," SAC ¶199, and therefore fully equipped to evaluate Athene's finances and transactions.[23] [24]  A fiduciary's decisions are not judged against a layperson's understanding: ERISA explicitly defines prudence through comparison to "a prudent man acting in a like capacity and *familiar with such matters*."  29 U.S.C. § 1104(a)(1)(B) (emphasis added).

While Plaintiffs may believe ModCo transactions are somehow less transparent, that does not make them (or Athene) less safe.  Indeed, in its recent report regarding PRT transactions, DOL

---

[23] SSGA Trust Co.'s process was also supported by a separate consultant, Mercer Health & Benefits ("Mercer"), along with counsel K&L Gates.  Dkt. No. 68-1, Commitment Agreement § 7(c)(iv)(4).

[24] The effect of ModCo on an insurer's RBC requirements is spelled out expressly by the relevant National Association of Insurance Commissioners (NAIC) Risk Based Capital Instructions.  *See* Iowa Amicus Br. 14-15.

SSGA TRUST CO.'S MOTION TO DISMISS – 17
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

expressly noted varying views on the use of ModCo arrangements but declined to make any changes to regulatory guidance regarding PRTs involving insurers who use modified coinsurance arrangements; DOL instead simply noted that "[m]ost stakeholders agreed that" reinsurance arrangements "should be part of a fiduciary's analysis when selecting an insurer." DOL Report to Congress on Employee Benefits Security Administration's Interpretive Bulletin 95-1, at 17-18 (June 2024), https://tinyurl.com/bdu59ery ("DOL Report to Congress"); *see id.* at 3. What matters is that the fiduciary is able to evaluate the true financial picture, and the SAC does not allege any facts suggesting SSGA Trust Co. and Mercer had any trouble doing so.

### 3. Athene's Separate Account.

The SAC admits that Athene's separate account provides "relative safety [for] that pool of assets." SAC ¶162. Interpretive Bulletin 95-1, on which Plaintiffs heavily rely, expressly directs fiduciaries to consider (among other factors) "[t]he structure of the annuity contract and guarantees supporting the annuities, *such as the use of separate accounts*." 29 C.F.R. § 2509.95-1(c)(5) (emphasis added). Indeed, "[t]he DOL June 2024 Report to Congress on IB 95-1 reinforces the importance of considering separate accounts in evaluating annuities." *Piercy*, 2025 WL 2505660, at *41 (citing DOL Report to Congress 19-20).

Unable to deny the "relative safety" of Athene's separate account, the SAC asserts that the separate accounts of "traditional, highly-rated insurers such as New York Life or Metropolitan Life" would be even safer. SAC ¶¶162, 166. As discussed above, however, the SAC does not allege that New York Life was actually "available" to undertake a PRT of this size, 29 C.F.R. § 2509.95-1(c); pp. 12-13, *supra*. With respect to Metropolitan Life, the SAC provides *no information* indicating that it is "a sound basis for comparison" to permit the inference that a prudent fiduciary in January 2019 would or should have selected it for the Weyerhaeuser PRT. *Anderson*, 137 F.4th at 1022 (citation omitted). Thus, while Plaintiffs allege that "Athene placed a significantly smaller amount of assets in the separate account to fund Plaintiffs' Weyerhaeuser annuities than large, highly-rated insurers would have placed in their separate account to fund *a*

SSGA TRUST CO.'S MOTION TO DISMISS – 18
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

*comparable set of benefits*," SAC ¶164 (emphasis added)—they refer to *hypothetical* highly-rated insurers willing to fund a comparable set of benefits in January 2019, without alleging that any particular insurer(s) meeting those criteria "actually existed." *Anderson*, 137 F.4th at 1025.

Moreover, the SAC's criticism of Athene's separate account is contradicted by the GAC itself. The SAC wrongly alleges that "the separate account assets may *also* be used to support Athene's payment obligations under other, separate GACs issued by Athene." SAC ¶169; *id.* ¶134 (same). But that is true only of the Commingled Account, not the Dedicated Account, *i.e.*, the separate account. GAC ¶1.6. The only way for the Dedicated Account to be converted into a Commingled Account is if the assets of the Dedicated Account dip below $50 million, GAC ¶1.11; *see* SAC ¶170 (noting "Small Account Conversion" requirement), which Plaintiffs do not allege has occurred. "[W]here a complaint incorrectly summarizes or characterizes a legally operative document … incorporated by reference in the complaint, … the document itself is controlling." *In re Finjan Holdings, Inc.*, 58 F.4th 1048, 1052 n.1 (9th Cir. 2023).

Likewise, Plaintiffs assert that the assets in Athene's separate account are "far riskier" than those in New York Life and Metropolitan Life's separate accounts because, at some unspecified time, "Athene projected a … hypothetical return of at least 6.5%," while the other insurers "project lower returns of approximately 4%." SAC ¶¶165-167. But the SAC does not allege that these projections were made or disclosed as of January 2019—much less that a prudent fiduciary would have disqualified Athene on the basis of this 2.5% difference in projected returns. Moreover, the GAC provides that "[t]he Separate Account is intended to be invested *primarily* in investment-grade fixed income securities," while secondarily permitting other investments. GAC ¶1.5 (emphasis added). Plaintiffs do not allege that Athene did not abide by this commitment, and they cannot plausibly assert that selecting annuities backed by a separate account *primarily* invested in investment-grade fixed income securities and overseen by state regulators is outside the wide "range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes*, 595 U.S. at 177.

SSGA TRUST CO.'S MOTION TO DISMISS – 19
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

Equally misplaced is Plaintiffs' allegation that Athene's separate account is "not truly … insulated from Athene's general liabilities" because separate account assets can be transferred to Athene's general account.  SAC ¶134.  But the SAC admits that separate-account funds may be transferred to Athene's general account *only* "if the market value of the assets in the separate account exceeds Athene's liabilities under the GACs."  *Id.*; *id.* ¶169 (same); GAC ¶1.7.  The separate account therefore remains separate up to the actual annuity liabilities—only *excess* may be used to support general-account obligations.  This practice is entirely consistent with Iowa law.  Iowa Code § 507C.2.14.b.  Accordingly, Plaintiffs neither explain why that would be problematic nor allege that other insurers' separate accounts operated differently.

### 4.  Athene's Connection to Private Equity.

The SAC asserts that Athene's current affiliation with Apollo, which separately engages in private equity investing, prevented Athene from being a prudent annuity provider for a 2019 PRT because the "mission [of private equity firms] does not align with the best interests of policyholders."  SAC ¶58.  But the SAC admits that Apollo's merger with Athene happened years *after* the Weyerhaeuser PRT.  SAC ¶64.  In any event, Plaintiffs acknowledge that involvement with private equity is common in the industry.  SAC ¶58 ("private equity firms have heightened their influence over the life and annuity industry significantly").  Moreover, Plaintiffs' conclusory assertion that the "mission" of private equity is inconsistent with the needs of retirees ignores that employer pension plans also commonly invest in private equity.  *See Sulyma v. Intel Corp. Inv. Pol'y Comm.*, 909 F.3d 1069, 1077 (9th Cir. 2018), *aff'd*, 589 U.S. 178 (2020).[25]  Plaintiffs do not allege otherwise.  And the Ninth Circuit has recently rejected a similar theory that investment in private equity is "*inherently*" so "*risky*" as to support an inference of fiduciary breach.  *Anderson*, 137 F.4th at 1024.

---

[25] GAO, *Defined Benefit Pension Plans* at 19 (Feb. 2012), https://www.gao.gov/assets/gao-12-324.pdf (in 2010, 92% of large defined-benefit plans invested in private equity).

SSGA TRUST CO.'S MOTION TO DISMISS – 20
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

Plaintiffs' insinuation that Athene is at risk of default because "nearly 25% of Apollo-owned companies have defaulted since 2022," SAC ¶82 (emphasis deleted), is both irrelevant—because it postdates the Weyerhaeuser PRT—and omits crucial context. Unlike "Apollo's portfolio companies" (*id.*) referenced in the Moody's report Plaintiff relies upon,[26] Athene is not a portfolio company owned by Apollo's private-equity arm. Instead, Athene is (today) an Apollo "*subsidiary*" (SAC ¶64; emphasis added) that is separately regulated by state insurance commissioners and is part of Apollo's "retirement services" business line, which is distinct from its private equity business.[27] This is yet another unenlightening "apples and oranges" comparison. *Anderson*, 137 F.4th at 1025 (citation omitted).

### 5. Plaintiffs' Reliance on Interpretative Bulletin 95-1 Is Flawed.

The only authority Plaintiffs cite in support of their prudence claim is the DOL's non-binding guidance in IB 95-1, which sets forth a non-exhaustive list of six factors fiduciaries "should consider" in selecting an annuity provider for a PRT. 29 C.F.R. § 2509.95-1(c). Tellingly, Plaintiffs do not allege that SSGA Trust Co. failed to consider the IB 95-1 (or other) factors. Instead, Plaintiffs focus on language in IB 95-1 that, they claim, requires fiduciaries "to obtain the 'safest annuity available.'" SAC ¶¶4, 218. They are incorrect.

*First*, "no federal court has adopted" the "'safest available' standard" Plaintiffs proffer. *Riley v. Murdock*, 83 F.3d 415, 415 (4th Cir. 1996) (unpublished). Indeed, that interpretation is unmoored from ERISA's text, which contemplates a wide "range of reasonable judgments a fiduciary may make" for any given decision. *Hughes,* 595 U.S. at 177. A prescriptive, outcome-oriented "safest annuity available" rule contravenes ERISA's flexible, process-based standard, which is why "[c]ourts that have considered the point have rejected this assertion as untethered to

---

[26] Sergio Padilla, *Moody's: Default Rates for Private Equity-Backed Companies on the Rise*, Private Debt Investor (Oct. 14, 2024), https://www.privatedebtinvestor.com/moodys-default-rates-for-private-equity-backed-companies-on-the-rise/.

[27] Dkt. No. 68-6, Apollo Global Management, Inc., 2023 10-K at 13, 17 (Athene is part of Apollo's "Retirement Services" business, whereas Apollo's private equity franchise is part of its "Asset Management" business).

SSGA TRUST CO.'S MOTION TO DISMISS – 21
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

any statutory provision in ERISA." *Piercy*, 2025 WL 2505660, at \*27 (citing *Bussian*, 223 F.3d at 298). The Department of Labor likewise forcefully rejects Plaintiffs' interpretation of IB 95-1. *See* DOL Amicus Br. 20-23. This Court should not be the first to adopt it.

*Second,* even IB 95-1 expressly states that the purported "safest" provider need not be chosen if, "under the circumstances it would be in the interests of participants and beneficiaries to do otherwise." 29 C.F.R. § 2509.95-1(c); s*ee also id.* § 2509.95-1(d). A partial PRT like Weyerhaeuser's provides one such obvious situation in which taking costs into account makes particularly good sense. Here, the Plan was *not* terminated in connection with the PRT, and SSGA Trust Co. owed fiduciary duties to Plan participants whose benefit obligations were not assumed by Athene and who remained in the Plan. If Athene charged less than its competitors, as Plaintiffs conclusorily suggest (SAC ¶¶193-196),[28] the resulting savings would necessarily benefit those participants who remained in the Plan after the PRT and for whom the remaining Plan assets would pay their benefits in retirement. Indeed, taking costs into account is demonstrably consistent with ERISA's fiduciary obligations to the participants remaining in the Plan not to incur unreasonable expenses in effecting the PRT. *See* 29 U.S.C. § 1104(a)(1)(A)(ii) (a fiduciary shall "defray[] reasonable expenses of administering the plan"); *Varity Corp. v. Howe*, 516 U.S. 489, 514 (1996) (fiduciaries "need to preserve assets to satisfy future, as well as present, claims" and must consider "the interests of all beneficiaries"); *Lee v. Verizon Commc'ns, Inc.*, 837 F.3d 523, 540-541 (5th Cir. 2016) (discussing competing claims of plan transferees and those remaining in the plan premised in part on the potential for incurring unreasonable expenses in purchasing annuity contracts).

\* \* \*

---

[28] It is conspicuous that, in a lawsuit repeatedly criticizing the purported selection of an annuity based on cost rather than safety, Plaintiffs provide *no* allegations regarding the comparative costs of available annuities.

SSGA TRUST CO.'S MOTION TO DISMISS – 22
(No. 2:24-cv-02050-KKE)

FENNEMORE CRAIG, P.C.
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

In sum, Plaintiffs ask this Court to infer an imprudent fiduciary process based on context-free allegations that do not withstand the "careful, context-sensitive scrutiny of a complaint's allegations" ERISA requires. *Dudenhoeffer*, 573 U.S. at 425.

### D. The Complaint Does Not Plausibly Allege that SSGA Trust Co. Acted Disloyally.

The SAC does not add any significant factual allegations addressing the Court's reasoning in dismissing Plaintiffs' claim for disloyalty. As before, "some of the purported conflicts Plaintiffs identify arose after the Weyerhaeuser PRT transaction." Order at 25; *see* SAC ¶174 ("Prior to the PRT transaction at issue, State Street held no publicly traded shares in Apollo."). And the SAC's allegations regarding "the ownership of Weyerhaeuser stock by SSGA's parent company" raise "at most, a 'potential for conflict'—and a tenuous potential at that." Order at 25 (quoting *Anderson*, 137 F.4th at 1026). Likewise, Plaintiffs' assertion that SSGA Trust Co. "was a 'repeat player' motivated to 'advance its client's interests' by (according to Plaintiffs) selecting a cheaper annuity" is insufficient to state a claim for disloyalty. *Id.* at 26.

Plaintiffs' theory of disloyalty predicated on SSGA Trust Co.'s parent's stock holdings independently fails for the reasons given by the court in *Piercy*, which rejected this theory as "wholly meretricious" because the complaint was "silent on the pertinent question, which is whether those shares of AT&T account for a significant share of [State Street IM] total assets under management, or—indeed—whether [State Street IM] even holds those shares for its own benefit." *Piercy*, 2025 WL 2505660, at \*24-25. In other words, "[c]ontext here is essential," yet the complaint failed to "supply the critical context" to support an inference of wrongdoing. *Id.* at \*25. Here, too, the SAC "contains no allegation that [State Street IM's] ownership of [Weyerhaeuser] shares involved anything other than routine handling of indexed products or providing custodial services," which "take[s] all the air out of the balloon." *Id.*

Nor can Plaintiffs bootstrap their allegations of imprudence into a disloyalty claim. Even *if* those allegations supported an inference of imprudence, courts in this and other Circuits routinely hold that "allegations of imprudence" cannot be "repackaged as a breach of the duty of

SSGA TRUST CO.'S MOTION TO DISMISS – 23
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

loyalty," because these are two "distinct breach[es] of fiduciary duty under ERISA." *Anderson*, 2021 WL 229235, at \*13 (collecting cases in this Circuit); *White v. Chevron Corp.*, 2017 WL 2352137, at \*6-7 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) (rejecting "allegations [that] do not distinguish between the duty of prudence and the duty of loyalty"); *see also Martin v. CareerBuilder, LLC*, 2020 WL 3578022, at \*6 (N.D. Ill. July 1, 2020) (collecting cases and quoting Restatement (Third) of Trusts § 78 (2007) ("a plaintiff must do more than simply recast purported breaches of the duty of prudence as disloyal acts")); *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, 2019 WL 4466714, at \*4 (S.D.N.Y. Sept. 18, 2019) (dismissing "allegations [that] merely ride the coattails of Plaintiffs' duty-of-prudence allegations and are insufficient to state a breach of loyalty claim"); *Nicolas v. Trs. of Princeton Univ.*, 2017 WL 4455897, at \*3 (D.N.J. Sept. 25, 2017) (disloyalty claim involved "mere[] characterizations that piggyback off of the prudence claims, without any independent factual predicate").

The Court's prior Order stated in passing that "[a]llegations supporting a duty of prudence violation may also support a plausible inference of disloyalty," Order at 24 (citing *Johnson v. Providence Health & Servs.*, 2018 WL 1427421, at \*8 (W.D. Wash. Mar. 22, 2018) and *Wildman v. Am. Century Servs., LLC*, 237 F. Supp. 3d 902, 915 (W.D. Mo. 2017)).  But the district court's *Anderson* decision distinguished *Johnson* as involving allegations of "self-dealing or preferential treatment for" the investment manager.  *Johnson*, 2018 WL 1427421, at \*9; *see Anderson*, 2021 WL 229235, at \*13.  Here, the allegations of imprudence relate to the supposed riskiness of Athene—not allegations of self-dealing.  Those allegations cannot be "repackaged as a breach of the duty of loyalty." *Anderson*, 2021 WL 229235, at \*13.

### E. The Derivative Claims of Co-Fiduciary Liability and Knowing Participation Must Also Be Dismissed.

Plaintiffs assert that SSGA Trust Co. is "liable for the breaches of its co-fiduciaries under 29 U.S.C. § 1105(a)." SAC ¶222.  As Weyerhaeuser argues in its motion (which SSGA Trust Co. joins), Weyerhaeuser is not a relevant fiduciary, did not breach any duties, and did not commit any

prohibited transactions. Since "the existence of a fiduciary duty breach is a necessary pre-requisite to the existence of co-fiduciary liability," *Slack v. Int'l Union of Operating Eng'rs*, 2014 WL 4090383, at *17 (N.D. Cal. Aug. 19, 2014), Plaintiffs' claim for co-fiduciary liability must be dismissed. *See* Order at 26. Likewise, Count II's knowing participation claim is "derivative of an underlying ERISA violation" and must be dismissed. *Id.* at 29.

Count II is also moot as to SSGA Trust Co. Count II is pleaded "in the alternative to Count I," applying only "[i]f any of the Defendants did not act as fiduciaries with respect to the selection of Athene." SAC ¶226. Because the parties agree that SSGA Trust Co. acted as a fiduciary with respect to the selection of Athene, SAC ¶¶32, 179-180, there is no live controversy regarding Count II as applied to SSGA Trust Co., and it should be dismissed as moot.

## II.   The Prohibited-Transaction Claim Also Fails.

Count III alleges that SSGA Trust Co. engaged in a prohibited transaction. SAC ¶¶231-233. This claim must be dismissed for the reasons given in the Court's prior Order (at 27-29) and Weyerhaeuser's motion, which SSGA Trust Co. joins.

### CONCLUSION

For the foregoing reasons, and those asserted by Weyerhaeuser, the Second Amended Complaint should be dismissed.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

SSGA TRUST CO.'S MOTION TO DISMISS – 25
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

DATED: June 8, 2026

**FENNEMORE CRAIG, P.C.**

By   */s/Brandi Balanda*

Brandi Balanda, WSBA #48836
Jacob P. Freeman, WSBA #54123
999 Third Avenue, Suite 600
Seattle, WA  98104
Tel: (206) 749-0500
Fax: (206) 749-0600
Email: bbalanda@fennemorelaw.com
Email: jfreeman@fennemorelaw.com

**GOODWIN PROCTER LLP**

Jaime A. Santos (*pro hac vice*)
1900 N Street NW
Washington, D.C. 20036
Tel.: (202) 346-4000
Email: JSantos@goodwinlaw.com

James O. Fleckner (*pro hac vice*)
Alison V. Douglass (*pro hac vice*)
Benjamin S. Reilly (*pro hac vice*)
100 Northern Avenue
Boston, MA 02210
Tel.: (617) 570-1000
Fax: (617) 523-1231
Email: JFleckner@goodwinlaw.com
Email: ADouglass@goodwinlaw.com
Email: BReilly@goodwinlaw.com

*Attorneys for Defendant State Street
Global Advisors Trust Company*

*I certify that this memorandum contains 8,392 words, in
compliance with the Local Civil Rules and this Court's
May 12, 2026 Order*

SSGA TRUST CO.'S MOTION TO DISMISS – 26
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500

**CERTIFICATE OF SERVICE**

I hereby declare under penalty of perjury under the laws of the United States of America that on this date, the foregoing document was filed electronically with the Court and thus served simultaneously upon all counsel of record.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on June 8, 2026.

Amanda Saeteurn

CERTIFICATE OF SERVICE
(No. 2:24-cv-02050-KKE)

**FENNEMORE CRAIG, P.C.**
999 Third Avenue, Suite 600
Seattle, Washington 98104
(206) 749-0500