THE HONORABLE KYMBERLY K. EVANSON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREGORY MANEMAN, ANNETTE WILLIAMS, CASSANDRA WRIGHT, JAMES HOLLINS, AND PIERRE DONABY, individually and as representatives on behalf of a class of similarly situated persons,

Plaintiffs,

v.

WEYERHAEUSER COMPANY, WEYERHAEUSER COMPANY ANNUITY COMMITTEE, WEYERHAEUSER COMPANY ADMINISTRATIVE COMMITTEE, STATE STREET GLOBAL ADVISORS TRUST COMPANY, and JOHN DOES 1-5,

Defendants.

No. 2:24-cv-02050-KKE

**WEYERHAEUSER DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT**

**NOTE ON MOTION CALENDAR: AUGUST 28, 2026**

**ORAL ARGUMENT REQUESTED**

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .....................................................................................................................1

I.       PENSION RISK TRANSFERS ....................................................................................1

II.      FACTS........................................................................................................................3

    A.      The Plan............................................................................................................3

    B.      The Plan's PRT .................................................................................................3

III.     PRIOR PROCEEDINGS.............................................................................................5

    A.      Prior Complaints...............................................................................................5

    B.      Defendants' Motion To Dismiss The Amended Complaint.................................6

IV.      THE SECOND AMENDED COMPLAINT ...................................................................7

LEGAL STANDARD .............................................................................................................8

ARGUMENT ..........................................................................................................................9

I.       THE SAC SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR
    FAILURE TO STATE A CLAIM FOR RELIEF ..........................................................9

    A.      The SAC Does Not Plausibly Allege A Breach Of Fiduciary Duty Claim
        Against The Weyerhaeuser Defendants ............................................................9

    B.      The SAC Does Not Plausibly Allege Prohibited Transaction Claims ................10

    C.      The SAC Does Not Plausibly Allege A Claim For Co-Fiduciary Liability  Or
        Knowing Participation In A Breach Of Fiduciary Duty.....................................11

        1.      Co-Fiduciary Liability Claims...............................................................11

        2.      Claims For Knowing Participation In A Fiduciary Breach ......................12

II.      THE SAC SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1) FOR
    LACK OF ARTICLE III STANDING...........................................................................13

    A.      The Allegations Of Diminution In The Value Of Plaintiffs' Annuities Do Not
        Clearly Establish Article III Standing ..............................................................16

    B.      Plaintiffs Have Failed To Allege A Risk Of Future Harm That Is "Certainly
        Impending".....................................................................................................19

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – i
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

1.    The SAC Fails To Plausibly Allege A Certainly Impending Risk That Athene Will Default And Fail To Pay Benefits .......................................20

2.    The SAC Fails To Plausibly Allege A Substantial Likelihood Of Regulatory Action That Interrupts Benefit Payments ..............................23

C.    Plaintiffs' Other Purported Grounds For Satisfying Article III's Standing Requirements Are Insufficient ...............................................................25

CONCLUSION ....................................................................................................................26

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – ii
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Aguilar v. Coast to Coast Comput. Prods., Inc.*,
No. 23-cv-3996, 2024 WL 635314 (C.D. Cal. Jan. 8, 2024) ......................................................8

*Askins v. U.S. Dep't of Homeland Sec.*,
899 F.3d 1035 (9th Cir. 2018) ...............................................................................................13

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) ..................................................................................................22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..................................................................................................................8

*Blair v. Assurance IQ LLC*,
No. 23-cv-16-KKE, 2023 WL 6622415 (W.D. Wash. Oct. 11, 2023) ..................................26

*Bristol-Myers Squibb Co. v. Doherty*,
No. 25-3014, Dkt. 22 (2d Cir. Apr. 8, 2026) ...........................................................................1

*Bueno v. Gen. Elec. Co.*,
No. 24-cv-822, 2025 WL 2719995 (N.D.N.Y. Sept. 24, 2025) ..............15, 17, 20, 21, 22, 25

*Camire v. Alcoa USA Corp.*,
No. 24-cv-1062, 2025 WL 947526 (D.D.C. Mar. 28, 2025)...............................19, 20, 21, 23

*Carney v. Adams*,
592 U.S. 53 (2020) ..................................................................................................................22

*Carter v. San Pasqual Fiduciary Tr. Co.*,
No. 15-cv-1507, 2016 WL 6803768 (C.D. Cal. Apr. 18, 2016) ..............................................9

*Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*,
497 F.3d 972 (9th Cir. 2007)....................................................................................................8

*Chan v. Prudential Ins. Co. of Am.*,
No. 13-cv-524, 2013 WL 4511437 (W.D. Wash. Aug. 23, 2013) .........................................23

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......................................................................19, 20, 21, 23, 24, 25

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – iii
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*David v. Alphin*,
    704 F.3d 327 (4th Cir. 2013) ............................................................................................14

*Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*,
    No. 17-cv-7243, 2019 WL 6841222 (N.D. Cal. Dec. 16, 2019) .........................................12

*Dempsey v. Verizon Commc'ns, Inc.*,
    No. 24-cv-10004, 2026 WL 72197 (S.D.N.Y. Jan. 8, 2026).............................................14

*Doherty v. Bristol-Myers Squibb Co.*,
    No. 24-cv-6628, 2025 WL 2774406 (S.D.N.Y. Sept. 29, 2025).........................................10

*FDA v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024) ........................................................................................................14

*Gleason v. Orth*,
    No. 22-cv-305, 2022 WL 4534405 (W.D. Wash. Sept. 28, 2022).....................................9, 12

*Guenther v. BP Ret. Accumulation Plan*,
    No. 16-cv-995, 2017 WL 6611634 (S.D. Tex. Feb. 17, 2017) ..........................................14

*Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*,
    530 U.S. 238 (2000) ....................................................................................................12, 13

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999) ........................................................................................................14

*In re Merrill Lynch & Co*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003) ...............................................................................22

*Int'l Partners for Ethical Care Inc. v. Ferguson*,
    146 F.4th 841 (9th Cir. 2025)...........................................................................................22

*Lockheed Martin Corp. v. Konya*,
    No. 25-180, Dkt. 24 (4th Cir. Sept. 9, 2025)........................................................................1

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992) ........................................................................................................13

*Moore v. Urquhart*,
    899 F.3d 1094 (9th Cir. 2018)..........................................................................................22

*NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*,
    513 U.S. 251 (1995) ........................................................................................................10

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – iv
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs*,
   693 F.3d 145 (2d Cir. 2012) ........................................................................................17, 18

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs*,
   743 F. Supp. 2d 288 (S.D.N.Y. 2010) ..................................................................................18

*Paieri v. W. Conf. of Teamsters Pension Tr.*,
   No. 23-cv-922, 2024 WL 4554616 (W.D. Wash. Oct. 23, 2024) ............................................8

*Ruilova v. Yale-New Haven Hosp. Inc.*,
   No. 22-cv-111, 2023 WL 2301962 (D. Conn. Mar. 1, 2023)..................................................13

*Schoen v. ATI, Inc.*,
   No. 24-cv-1109, 2025 WL 2970339 (W.D. Pa. Oct. 7, 2025) ...............................................21

*SEC v. First City Fin. Corp.*,
   890 F.2d 1215 (D.C. Cir. 1989) ...........................................................................................21

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016) ..........................................................................................8, 13, 26

*Su v. Alerus Fin., N.A.*,
   No. 23-cv-537, 2024 WL 4681323 (D. Idaho Nov. 4, 2024)..................................................11

*Tetra Tech EC, Inc., v. EPA*,
   No. 20-cv-8100, 2022 WL 4372073 (N.D. Cal. Sept. 21, 2022) ...........................................19

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020) ................................................................................................ passim

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ............................................................................................13, 16, 26

*Truong v. KPC Healthcare, Inc.*,
   No. 23-cv-1384, 2024 WL 1984569 (C.D. Cal. May 3, 2024) .............................................12

*Voss v. Sutardja*,
   No. 14-cv-1581-LHK, 2015 WL 349444 (N.D. Cal. Jan. 26, 2015).....................................19

*Waller v. Blue Cross of Cal.*,
   32 F.3d 1337 (9th Cir. 1994)................................................................................................11

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
   62 F.4th 517 (9th Cir. 2023)...........................................................................................13, 26

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – v
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*Wright v. SEIU Loc. 503*,
    48 F.4th 1112 (9th Cir. 2022)................................................................19, 24

*Zavala v. Kruse-W., Inc.*,
    No. 19-cv-239, 2021 WL 5883125 (E.D. Cal. Dec. 13, 2021) .............................................12

**STATUTES & RULES**

29 U.S.C. § 1002 ................................................................................................10

29 U.S.C. § 1056 ................................................................................................17

29 U.S.C. § 1104 .................................................................................................5

29 U.S.C. § 1105 .................................................................................................5

29 U.S.C. § 1106 .................................................................................................6

Ala. Code § 27-44-1 *et seq.*.................................................................................2

Iowa Code § 507C.12(1) ...................................................................................24

Miss. Code Ann. § 83-23-201 *et seq.*.................................................................2

N.Y. Ins. Law § 3402 ........................................................................................24

Wash. Rev. Code Ann. § 48.32A *et seq.*.............................................................2

**OTHER AUTHORITIES**

Consumer Protection Comparison: The Federal Pension System and the State
    Insurance System, Nat'l Org. of Life and Health Ins. Guar. Ass'ns (May 22,
    2016)..................................................................................................................2

DOL Opinion Letter No. 76-36, 1976 WL 5051 (Jan. 15, 1976) ...............................................10

I.R.S. Gen. Couns. Mem. 39882, 1992 WL 311700 (Oct. 26, 1992).........................................17

Julie A. Su, Acting Secretary of Labor, Department of Labor Report to Congress
    on Employee Benefits Security Administration's Interpretive Bulletin 95-1
    (June 2024) .......................................................................................................1

*Statement of the 2023 Advisory Council on Employee Welfare and Pension
    Benefit Plans to the U.S. Department of Labor Regarding Interpretive
    Bulletin 95-1* (Aug. 29, 2023) .........................................................................2

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – vi
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**PRELIMINARY STATEMENT**

Following this Court's ruling dismissing the Amended Complaint for failure to state a claim for relief ("Order," Dkt. 90), Plaintiffs filed a Second Amended Complaint ("SAC," Dkt. 91) in an attempt to rectify the Amended Complaint's (Dkt. 62, "AC") shortcomings. It fares no better than the last attempt. For the reasons stated in Defendant State Street Global Advisors Trust Company's ("SSGA Trust Co.") motion to dismiss, in which the Weyerhaeuser Defendants[1] join, the new allegations do not alter the conclusion that Plaintiffs have failed to allege a viable claim that SSGA Trust Co. breached its fiduciary duty when selecting Athene Annuity and Life Company ("Athene") to serve as the annuity provider in connection with the Weyerhaeuser Pension Plan's (the "Plan") Pension Risk Transfer ("PRT") in 2019. And for the reasons previously articulated by this Court, among others, the various other claims that have been replicated in the SAC are not viable and should be dismissed. *See* Order at 27-29.

The SAC independently should be dismissed for failing to satisfy Article III's standing requirements. Although this Court previously found Plaintiffs' allegations sufficient to demonstrate standing, it recognized that this was a close question and that several courts had dismissed virtually identical PRT lawsuits for want of standing. Order at 8, 18-19.[2] The Weyerhaeuser Defendants respectfully request that the Court consider this argument anew.

**BACKGROUND**

**I.    PENSION RISK TRANSFERS**

As this Court recognized, the transfer of pension obligations through PRTs is a common transaction authorized by ERISA. Order at 4, 10; *see also* Julie A. Su, Acting Secretary of

---

[1] The "Weyerhaeuser Defendants" refers to Weyerhaeuser Company ("Weyerhaeuser"), Weyerhaeuser Company Annuity Committee, and Weyerhaeuser Company Administrative Committee.

[2] In only two of these cases did courts deny motions to dismiss. In each, defendants were granted leave to file an interlocutory appeal, each of which is pending. *See Lockheed Martin Corp. v. Konya*, No. 25-180, Dkt. 24 (4th Cir. Sept. 9, 2025); *Bristol-Myers Squibb Co. v. Doherty*, No. 25-3014, Dkt. 22 (2d Cir. Apr. 8, 2026).

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 1
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Labor, Department of Labor Report to Congress on Employee Benefits Security Administration's Interpretive Bulletin 95-1 (June 2024).[3]  Although Plaintiffs contend that PRTs adversely affect plan participants by removing the protections of ERISA and the Pension Benefit Guaranty Corporation ("PBGC") (*see* SAC ¶¶ 12-14, 43-45), in fact, annuities provided by insurers have greater protections than pensions provided by single-employer pension plans because they are subject to stricter financial standards than those imposed by ERISA.  Whereas ERISA-governed pension plans "can and oftentimes do run for years at a time with total assets lower than their pension obligations," "life insurers must at all times maintain assets significantly in excess of their insurance obligations."  Consumer Protection Comparison: The Federal Pension System and the State Insurance System, Nat'l Org. of Life and Health Ins. Guar. Ass'ns (May 22, 2016)[4] at 19.  Furthermore, even if a PRT annuity provider were to fail, the state guaranty associations ("SGAs") in the states where Plaintiffs reside would provide $250,000 to $500,000 in benefits protection per individual.  *See, e.g.*, Wash. Rev. Code Ann. § 48.32A *et seq.*; Miss. Code Ann. § 83-23-201 *et seq.*; Ala. Code § 27-44-1 *et seq*.  The result of these protections is self-evident: in the past 30 years not one annuity provider that assumed benefit obligations through a PRT has defaulted or failed.  *See Statement of the 2023 Advisory Council on Employee Welfare and Pension Benefit Plans to the U.S. Department of Labor Regarding Interpretive Bulletin 95-1* (Aug. 29, 2023)[5] at 4.  During this same period, participants in ERISA-governed plans lost at least $8.5 billion because their employers could not fully fund their plans and the minimum benefits guaranteed by the PBGC were insufficient

---

[3] https://www.dol.gov/sites/dolgov/files/EBSA/laws-and-regulations/laws/secure-2.0/report-to-congress-on-interpretive-bulletin-95-1.pdf.

[4] https://www.athene.com/binaries/content/assets/ausa-assets/advocacy/national-organization-of-life-and-health-insurance-guaranty-associations_pension-report.pdf.

[5] https://www.dol.gov/sites/dolgov/files/ebsa/about-ebsa/about-us/erisa-advisory-council/statement-regarding-interpretive-bulletin-95-1.pdf.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 2
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

to cover the funding shortfall. *Id.*

## II.   FACTS

### A.   The Plan

The Plan is a defined-benefit pension plan governed by ERISA.  SAC ¶ 20. Weyerhaeuser is the settlor and sponsor of the Plan, and funds the benefits provided by the Plan. *Id*. ¶¶ 29, 38.  The Plan provides retirees "a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020).

### B.   The Plan's PRT

On January 23, 2019, Weyerhaeuser entered into an agreement (the "Commitment Agreement") with SSGA Trust Co. acting as independent fiduciary on behalf of the Plan – and Athene, pursuant to which the Plan purchased a group annuity contract from Athene (the "GAC").  *See* SAC ¶ 178.  Under this agreement, Athene assumed responsibility for paying annuities to approximately 28,500 former Plan participants (the "Transferred Group").  *Id.*  The GAC expressly prohibits annuitants in the Transferred Group from assigning, transferring, or otherwise alienating their annuity rights under the contract.  *See* Declaration of Joseph E. Clark, Exhibit 1 ("Ex. 1"), at § 2.3.[6]

Before the Commitment Agreement was consummated, a duly-appointed committee of the Plan appointed SSGA Trust Co. to serve as an independent fiduciary with respect to the PRT, and expressly delegated to SSGA Trust Co. the "sole" responsibility for selecting the annuity provider.  SAC ¶ 179.  SSGA Trust Co. also assumed fiduciary responsibility for representing the interests of the Plan and its participants and beneficiaries in negotiating the terms of the PRT, and directing the Plan to purchase the GAC from the annuity provider.  *Id.*

---

[6] Exhibit 1 includes only the pages of the GAC that are relevant to the Motion.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 3
(No. 2:24-CV-02050-KKE)

SSGA Trust Co. selected Athene as the annuity provider for the PRT.  Order at 6-7.  Athene has served as annuity provider in PRTs involving at least $50 billion in liabilities, covering more than 500,000 people.  *See Konya v. Lockheed Martin Corp.*, No. 24-cv-750 (D. Md.) ("*Konya I*"), Dkt. 1 ¶ 47; Amicus Curiae Br. of U.S. Secretary of Labor in Support of Appellant and Reversal at 11, *Konya v. Lockheed Martin Corp.,* No. 25-2061 (4th Cir.) ("*Konya II*"), Dkt. 55-1; SAC ¶ 97.  According to the Secretary of Labor, Athene "has never failed to pay any participant or beneficiary what is owed."  *Konya II*, Dkt. 55-1 at 11-12.

As described in further detail in SSGA Trust Co.'s motion, Athene has many features that make it a reliable payer of the annuities owing to the Transferred Group.  To begin with, Athene retains an A+ credit rating from Standard & Poor's, and an A1 rating from Moody's.  *See* SAC ¶ 156.  These ratings denote a 5-percent default rate over a twenty-year time horizon.  *See id.*; *Konya II*, Dkt. 55-1 at 17 (Department of Labor describing these ratings as "indicating a strong capacity to meet obligations, low risk, and a potential for 5-percent default rate over a twenty-year period").

Second, pursuant to the  GAC, Athene maintains a "Dedicated Account" consisting of assets that are intended to be invested primarily in investment-grade, fixed income securities (Ex. 1 at 4 & 5 (defining "Dedicated Account" and "Separate Account"); *id.* at §§ 1.4, 1.5), and that are available exclusively to pay annuities to the Transferred Group, together with any administrative expenses and required interest reserve.  *See* Ex. 1 at § 1.7.  Although the SAC insinuates that the Dedicated Account can be commingled or used to support obligations under other annuity contracts, in fact it may be used for other purposes only: (i) to the extent the value of account's assets exceeds 102 percent of the value of the payment obligations to the Transferred Group and interest reserve (*id.* at pg. 5, §§ 1.6, 1.7, 2.5); or (ii) if the market value of assets in the account falls below $50 million, in which case Athene may merge the assets into a commingled account that is used to fund Weyerhaeuser's and other group annuity contracts,

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 4
(No. 2:24-CV-02050-KKE)

which can be used for other purposes only to the extent the assets in the account exceed the combined annuity obligations. *Id.* at §§ 1.6, 1.7. Tellingly, the SAC does not allege that the Dedicated Account's assets have been withdrawn or used for any purpose other than the GAC.

Finally, if the assets held for the GAC—whether in the Dedicated Account or a commingled account—become insufficient to satisfy payment obligations under the GAC, Athene must use assets from its general account to satisfy such obligations. *Id.* at §§ 1.3, 1.7.

## III.    PRIOR PROCEEDINGS

### A.    Prior Complaints

Plaintiffs, who are members of the Transferred Group (SAC ¶¶ 22-26, 186), commenced this action on December 12, 2024. The Weyerhaeuser Defendants and SSGA Trust Co. each moved to dismiss. Before these motions were fully submitted, Plaintiffs filed their Amended Complaint, which asserted four claims against the Defendants pertaining to Athene's selection and the PRT with Athene. *See* AC ¶¶ 131-32, 144, 176, 186. Specifically:

Count I claimed that Defendants breached their ERISA fiduciary duties of prudence and/or loyalty, in violation of ERISA Sections 404(a)(1)(A) & (a)(1)(B), 29 U.S.C. § 1104 (a)(1)(A) & (a)(1)(B), or their responsibilities as co-fiduciaries under ERISA Sections 405(a)(1)-(3), 29 U.S.C. § 1105(a)(1)-(3), by selecting Athene, because Athene allegedly was neither the safest available annuity provider nor the one that would best promote the interests of the Transferred Group; and that Defendants selected Athene to save Weyerhaeuser money and increase corporate profits. AC ¶¶ 167-69, 172.

Count II claimed that any Defendants not acting as fiduciaries in connection with Athene's selection were liable as non-fiduciaries who knowingly participated in violations of ERISA. *Id.* ¶ 176.

Count III claimed that Defendants engaged in prohibited transactions under ERISA

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 5
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Sections 406(a) and 406(b), 29 U.S.C. § 1106(a) & (b), by: (i) exchanging property with, receiving services from, and/or transferring Plan assets to Athene, an alleged "party in interest" under ERISA; and (ii) dealing with Plan assets "in their own interest" and "for their own account," allegedly because Athene was a lower-cost annuity provider that Defendants selected in order to save money and increase Weyerhaeuser's profits. AC ¶¶ 179-83. This Count also included claims of co-fiduciary liability and liability for non-fiduciary participation in the underlying prohibited transactions. *Id*. ¶¶ 185-86.

Count IV claimed that the Weyerhaeuser Defendants breached their fiduciary duty to monitor SSGA Trust Co.'s process for selecting an annuity provider. *Id.* ¶¶ 188-90.

The Amended Complaint did *not* allege that Plaintiffs or members of the Transferred Group have ever experienced a reduction to or interruption in their annuity payments. Indeed, the Amended Complaint's primary theory of harm was based on the assertion that Athene was "substantially likely to fail in the near future" or be subject to regulatory intervention that would cause a loss of or interruption in benefit payments. *Id.* ¶¶ 9-10. As a secondary argument, the Amended Complaint alleged that Plaintiffs already had experienced harm because: (i) Athene's risky features "diminished" the "value" of Plaintiffs' annuities in the "marketplace," (*see*, *e.g.*, *id.* ¶¶ 11, 156, 158, 161, 170); (ii) Defendants' fiduciary breaches caused "intangible, yet concrete injuries—namely, the invasion of legally protected interests—that were actionable at common law" (*id*. ¶ 14); and (iii) the PRT caused Plaintiffs to lose "critical rights and benefits that they enjoyed under ERISA." *Id*. ¶ 15.

### B.    Defendants' Motion To Dismiss The Amended Complaint

Defendants moved to dismiss the Amended Complaint for failure to satisfy the Article III standing requirements and state a viable claim for relief. *See* Dkts. 66-67. By Order dated March 31, 2026, this Court found that, although the question was "a close one" (Order at 8), Plaintiffs had satisfied the "injury-in-fact" requirements for Article III standing by alleging that

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 6
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

the increased risk of default resulting from Athene's selection diminished the value of their annuities.  Order at 9-19.  The Court nevertheless dismissed the Amended Complaint for failure to allege a viable claim for relief, but granted leave to amend.  *Id.* at 20-29.

## IV.    THE SECOND AMENDED COMPLAINT

Pursuant to the Court's order, Plaintiffs filed their SAC, which contains additional allegations in support of their previously-stated claims of fiduciary breach and theories of Article III standing.  With respect to standing, the SAC alleges that Athene is at greater risk of default, or of regulatory intervention that will restrict the payment of annuities, for the following reasons:

(i)    In light of the "powerful influence" of Apollo Global Management, Inc. ("Apollo"), a private equity firm that merged with Athene in 2022, Athene's investment portfolio is riskier than the investments of other annuity providers. *See, e.g.,* SAC ¶¶ 64-65, 84-85, 108.

(ii)    Recent economic events affecting *Apollo's* financial well-being have increased *Athene's* financial risk.  *See, e.g., id.* ¶¶ 82, 86, 112.

(iii)    Certain of Athene's metrics, including its "surplus to liability ratio" and "growth rate in liabilities" are less favorable than those of "traditional" insurers, and Athene is more reliant than "traditional" insurers on affiliated, Bermuda-based reinsurers.  *See* Dkt. 66 at 8 n.4; SAC ¶¶ 76, 117, 122.

(iv)    Athene's practices "closely resemble" those of four insurers that, in 2024, "failed" or were subject to intervention by state insurance regulators.  SAC ¶¶ 138-147.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 7
(No. 2:24-CV-02050-KKE)

## LEGAL STANDARD

To withstand a motion to dismiss for lack of standing pursuant to Fed R. Civ. P. 12(b)(1), plaintiffs bear the burden of clearly alleging facts demonstrating each element of standing under Article III of the U.S. Constitution. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "There is no ERISA exception to Article III." *Thole*, 590 U.S. at 547. As in any case, the Court need not "accept as true conclusory allegations which are contradicted by documents referred to in the complaint," *Cedars-Sinai Medical Center v. National League of Postmasters of United States*, 497 F.3d 972, 975 (9th Cir. 2007), and "sparse and conclusory allegations are insufficient to open the Article III door." *Aguilar v. Coast to Coast Comput. Prods., Inc.*, No. 23-cv-3996, 2024 WL 635314, at \*3 (C.D. Cal. Jan. 8, 2024).

To withstand a motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), plaintiffs must allege facts plausibly supporting each element of their claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To do so, plaintiffs must allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. Rather, a complaint's well-pleaded facts must "raise a right to relief above the speculative level[.]" *Id*.

When evaluating a facial challenge to standing under Rule 12(b)(1), or a Rule 12(b)(6) motion, "a court may consider 'materials incorporated into the complaint by reference, and matters of which [it] may take judicial notice.'" *Paieri v. W. Conf. of Teamsters Pension Tr.*, No. 23-cv-922, 2024 WL 4554616, at \*4 (W.D. Wash. Oct. 23, 2024). Thus, in deciding this Motion the Court may consider the GAC underlying the Weyerhaeuser PRT, since the SAC specifically relies upon and refers to it. *See, e.g.*, SAC ¶¶ 29, 134, 163-65, 171, 178.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 8
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**ARGUMENT**

**I.    THE SAC SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM FOR RELIEF.**

For the reasons stated in SSGA Trust Co.'s Motion to Dismiss the SAC, with which the Weyerhaeuser Defendants join, the new allegations in the SAC provide no basis for altering the Court's previous decision to dismiss Plaintiffs' fiduciary breach claims. Even if that were not the case, there still would be no viable fiduciary claims against the Weyerhaeuser Defendants. And for the reasons previously stated by this Court and supplemented below, there are no other viable claims for relief against any Defendants.

**A.    The SAC Does Not Plausibly Allege A Breach Of Fiduciary Duty Claim Against The Weyerhaeuser Defendants.**

As this Court acknowledged (Order at 4, 10), the decision to engage in a PRT is a *settlor* decision that is not subject to ERISA's fiduciary requirements. Although "the *selection* of an annuity provider in a PRT transaction is a fiduciary function," *see* Order at 4, 10-11, responsibility for that decision was delegated to SSGA. *Id.* at 6. Thus, there is no viable claim for a breach of the fiduciary duties of prudence or loyalty against the Weyerhaeuser Defendants. Nor is there a viable claim for breach of a fiduciary duty to monitor, since the SAC contains no specific allegations to support such a claim. *See Carter v. San Pasqual Fiduciary Tr. Co.*, No. 15-cv-1507, 2016 WL 6803768, at *5 (C.D. Cal. Apr. 18, 2016) (granting motion to dismiss where "Plaintiffs allege[d] no facts regarding whether, when, and to what extent Defendants monitored" their appointees); *Gleason v. Orth*, No. 22-cv-305, 2022 WL 4534405, at *7-8 (W.D. Wash. Sept. 28, 2022) (concluding that "[t]o defeat a motion to dismiss for failure to monitor, the nonmovant must point to allegations of specific facts about the extent a fiduciary did not monitor its appointee," and dismissing duty to monitor claim because "[t]he complaint [did] not show how [defendant] specifically failed to monitor" his appointee).

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 9
(No. 2:24-CV-02050-KKE)

Accordingly, the Court should dismiss Counts I and IV of the SAC for failure to state a claim.

**B.        The SAC Does Not Plausibly Allege Prohibited Transaction Claims.**

There is no viable prohibited transaction claim against the Weyerhaeuser Defendants because such a claim can be asserted only against plan fiduciaries and, as explained above, the Weyerhaeuser Defendants acted only in a settlor capacity in connection with the PRT.  *See* ERISA Section 406(a) ("A fiduciary with respect to a plan shall not cause the plan to engage in" the types of transactions listed in subsections (a)(1)(A)-(a)(1)(E)); ERISA Section 406(b) ("A fiduciary with respect to a plan shall not" engage in conduct set forth in subsections (b)(1)-(b)(3)).  The prohibited transaction claims are also dismissible for independent reasons, including those previously recognized by this Court.  Order at 27-29.  The SAC contains no new allegations to suggest otherwise.

The claims under ERISA Section 406(a) are mistakenly predicated on the assumption that Athene is a "party-in-interest" as that term is defined by ERISA (*see* 29 U.S.C. § 1002(14)(B)).  As the Court concluded, Athene was not a party-in-interest for purposes of Section 406(a) because "the only service Athene allegedly provided . . . was the sale of the [GAC] at issue in the 2019 PRT transaction itself."  Order at 27-28.  The Section 406(a) claims also fail because the sale of annuities was not a provision of services.  *See NationsBank of N.C., N.A. v. Variable Annuity Life Ins. Co.*, 513 U.S. 251, 259 (1995) ("[A]nnuities are widely recognized as . . . investment products."); DOL Opinion Letter No. 76-36, 1976 WL 5051 (Jan. 15, 1976) ("[T]he sale by an insurance company of a group insurance policy to an employer to fund an employee benefit plan would not alone cause the insurance company to become a party in interest to the plan."); *see also Doherty v. Bristol-Myers Squibb Co.*, No. 24-cv-6628, 2025 WL 2774406, at *12 (S.D.N.Y. Sept. 29, 2025) (granting motion to dismiss claim under Section 406(a)because "an annuity contract is a product" and plaintiffs did not allege anything else

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 10
(No. 2:24-CV-02050-KKE)

suggesting Athene provided *services* to the plan).  Plaintiffs' ERISA Section 406(b) claims likewise fail because, as the Court held, "absent a prohibited party-in-interest transaction, purchasing annuities to terminate a pension plan does not constitute[] a per se violation of ERISA, even if accomplished through an infirm bidding process or for improper purposes such as maxim[izing] the amount of [the employer's] reversion."  Order at 28-29 (quotations and citations omitted); *see Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1346 (9th Cir. 1994) (affirming dismissal of ERISA Section 406(b) claims where annuity providers to PRT were not parties-in-interest under ERISA).  Accordingly, the Court should dismiss Plaintiffs' prohibited transaction claims.

**C.     The SAC Does Not Plausibly Allege A Claim For Co-Fiduciary Liability Or Knowing Participation In A Breach Of Fiduciary Duty.**

As the Court previously found, *see* Order at 26, in the absence of viable fiduciary breach or prohibited transaction claims, Plaintiffs have no viable claims for co-fiduciary liability or knowing participation in a breach of fiduciary duty.  These claims also fail for independent reasons.

**1.     Co-Fiduciary Liability Claims.**

Under ERISA Section 405(a), a fiduciary is liable as a co-fiduciary if he: knowingly participated in or concealed another fiduciary's breach (Section 405(a)(1)); breached his own fiduciary responsibilities in enabling another fiduciary's breach (Section 405(a)(2)); or had knowledge of a breach and failed to take steps to remedy it (Section 405(a)(3)).  This claim (included in Counts I and III) does not plausibly allege that the Weyerhaeuser Defendants had knowledge that SSGA Trust Co. breached its fiduciary duties, let alone that they knowingly concealed such a breach.  *See Su v. Alerus Fin., N.A.*, No. 23-cv-537, 2024 WL 4681323, at *5 (D. Idaho Nov. 4, 2024) (dismissing co-fiduciary liability claim where complaint lacked sufficient factual support for concluding that defendant knew of other fiduciary's breaches);

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 11
(No. 2:24-CV-02050-KKE)

*Zavala v. Kruse-W., Inc.*, No. 19-cv-239, 2021 WL 5883125, at \*10 (E.D. Cal. Dec. 13, 2021) (explaining that to be subject to co-fiduciary liability under ERISA Sections 405(a)(1) and (a)(3), a fiduciary "must know the other person is a fiduciary with respect to the plan, must know that he participated in the act that constituted a breach, and must know that it was a breach." (quotation marks omitted)).  Nor does it plausibly allege that the Weyerhaeuser Defendants breached their fiduciary duties in enabling another breach.  *See Gleason*, 2022 WL 4534405, at \*8 (dismissing claim under ERISA Section 405(a)(2) because plaintiffs failed to adequately plead that defendants breached their fiduciary duties by failing to monitor other allegedly breaching fiduciary).

### 2.     <u>Claims For Knowing Participation In A Fiduciary Breach</u>.

To state a claim against a non-fiduciary for knowing participation in a breach of fiduciary duty, "the plaintiff must plead facts sufficient to show: '(1) that there is a remediable wrong . . . (2) that the relief sought is appropriate equitable relief; and (3) that the defendant has actual or constructive knowledge of the circumstances'" that rendered the ERISA violation wrongful.  *Truong v. KPC Healthcare, Inc.*, No. 23-cv-1384, 2024 WL 1984569, at \*12 (C.D. Cal. May 3, 2024).  *See Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 251 (2000) (holding that to sustain a non-fiduciary knowing participation claim in connection with an underlying prohibited transaction, plaintiff must show that the non-fiduciary entered the transaction with knowledge that the fiduciary was knowingly violating ERISA).  The SAC fails to plausibly allege that the Weyerhaeuser Defendants knew that the conduct alleged in the SAC was unlawful.  *See Del Castillo v. Cmty. Child Care Council of Santa Clara Cnty., Inc.*, No. 17-cv-7243, 2019 WL 6841222, at \*6 (N.D. Cal. Dec. 16, 2019) ("[M]ere knowledge that a transaction is (or might be) 'prohibited' . . . does not mean that [defendants] knew or should

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 12
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

have known of any wrongdoing, as required under *Harris*."); *Ruilova v. Yale-New Haven Hosp. Inc.*, No. 22-cv-111, 2023 WL 2301962, at *23 (D. Conn. Mar. 1, 2023) (dismissing non-fiduciary knowing participation claim that was based on conclusory statements that defendant had requisite knowledge of and knowingly participated in alleged fiduciary breaches).

Accordingly, Plaintiffs' co-fiduciary liability and knowing participation claims should be dismissed.

## II.   THE SAC SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(1) FOR LACK OF ARTICLE III STANDING.

The SAC also should be dismissed because it fails to demonstrate that Plaintiffs suffered a legally-cognizable injury-in-fact.[7]  To adequately allege standing under Article III of the Constitution, a plaintiff bears the burden of demonstrating that: (i) she suffered an injury-in-fact; (ii) the injury is traceable to the challenged conduct; and (iii) the injury likely would "be redressed by the requested judicial relief."  *Thole*, 590 U.S. at 540 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) ("At the pleading stage, plaintiffs must 'clearly . . . allege facts demonstrating each element'" of Article III standing).  To satisfy the requirement of showing injury-in-fact, a plaintiff must show an "invasion of a *legally protected interest* that is concrete and particularized and actual or imminent, not conjectural or hypothetical."  *Winsor*, 62 F.4th at 523 (emphasis added); *see also* Order at 9-11 (holding same); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) ("No concrete harm, no standing.").  Furthermore, to be "concrete," an injury must be "'real,' and not 'abstract'"—that is, "it must actually exist."  *Spokeo*, 578 U.S. at 340.  And to be "actual or imminent," the injury must "not [be]

---

[7] The Court's prior ruling on Article III standing is not binding under the "law of the case" doctrine because an amended complaint filed after a complaint is dismissed without prejudice "is a new complaint" that is not subject to that doctrine.  *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1043 (9th Cir. 2018).

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 13
(No. 2:24-CV-02050-KKE)

speculative—meaning that the injury must have already occurred or be likely to occur soon." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024).

In *Thole*, the Supreme Court applied the Article III standing requirements to ERISA breach of fiduciary duty claims brought by participants in a defined benefit plan who alleged that defendants breached their fiduciary duties through mismanagement of the plan's investments, causing the plan to become underfunded.  590 U.S. at 546-47.  The Court held that plaintiffs lacked Article III standing because they "failed to plausibly and clearly allege a concrete injury."  *Id.* at 544.  In so holding, the Court concluded that even if the *plan* had been "injured" by defendants' alleged mismanagement of investments, *plaintiffs* were not harmed because they had received all of their annuity payments owing from the plan.  *Id.* at 541-43.

Consistent with *Thole*, several courts have held that, because the only legally-protected interest of defined-benefit plan participants is the receipt of their benefit payments, only a loss or reduction in those payments can constitute a present Article III injury for such participants. *See, e.g, David v. Alphin*, 704 F.3d 327, 333-34, 338 (4th Cir. 2013) (holding that "a participant in a defined benefit pension plan has an interest in his fixed future payments only[,]" (citing *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439-40 (1999)); *Dempsey v. Verizon Commc'ns, Inc.*, No. 24-cv-10004, 2026 WL 72197, at *9 (S.D.N.Y. Jan. 8, 2026) ("[I]n defined-benefit plan cases a Plaintiff must allege harm to the receipt of benefits themselves . . . Plaintiffs have no ability to benefit from or be harmed by changes in the present value of the pension benefits."); *Guenther v. BP Ret. Accumulation Plan*, No. 16-cv-995, 2017 WL 6611634, at *6 (S.D. Tex. Feb. 17, 2017) (concluding that defined-benefit plan participants who had been receiving their benefits under the plan lacked Article III standing because "a participant's interest in [such] plan is 'his nonforfeitable right only to the defined level of benefits established under the plan'") (quotation marks omitted).

Despite these rulings, this Court found that the standing requirements were satisfied by

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 14
(No. 2:24-CV-02050-KKE)

Plaintiffs' allegations that "they suffered a present, concrete injury in the form of a riskier—and, thus, less valuable—annuity than they would have received had Defendants met their fiduciary obligations." Order at 12. In so ruling, the Court distinguished *Thole* on two grounds. First, "[u]nlike this case, *Thole* involved allegations of mismanagement that simply imposed no material risks on pensioners," because the employer served as ultimate guarantor that the plan would maintain enough funds to make its required pension payments. *Id.* at 14-15. Second, the Court stated that "Plaintiffs' theory of injury is not based on the diminution in the value of the plan's assets (which *Thole* makes clear, participants have 'no equitable or property interest in'), but of *their annuities*. . . . It is the decline in value of *that* interest—not of the underlying plan assets—that supports standing here." *Id.* at 15 n.3 (quoting *Thole*, 509 U.S. at 543).

Defendants respectfully submit that this aspect of the Court's ruling was mistaken. To start, the fact that the employer remained the plan sponsor in *Thole* should not suggest a greater level of protection than from a PRT annuity provider such as Athene, since, for the reasons previously stated (*supra* p. 2), annuity providers have proven to be *more* reliable than ERISA-governed pension plans funded by sponsoring employers. More importantly, the alleged decline in the value of Plaintiffs' annuities does not translate into a *present,* concrete harm suffered by Plaintiffs, given that their legal right at issue here is to the annuity payments themselves and nothing more. At best, the alleged decline poses a risk to that right in the future. As another court persuasively explained, this theory of Article III standing "is essentially identical to [an] argument related to a substantial risk of future injury," and fails "to acknowledge the large body of case law related to future injury or explain why such case law does not apply[.]" *Bueno v. Gen. Elec. Co.*, No. 24-cv-822, 2025 WL 2719995, at *11 & n.2 (N.D.N.Y. Sept. 24, 2025).

Stripped of any basis to allege a *present,* concrete harm, Plaintiffs are left to clearly demonstrate standing based on the alleged risk of a *future* harm. As discussed below, the

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 15
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

Supreme Court has carefully limited the circumstances under which a plaintiff can satisfy the Article III standing requirements based on allegations of a risk of future harm – and these circumstances have not been plausibly alleged in the SAC.  The Weyerhaeuser Defendants accordingly request that the Court reconsider its prior conclusion, and hold that Plaintiffs have failed to adequately plead Article III standing under a theory of present or future harm, or any other theory advanced in the SAC.

### A.     The Allegations Of Diminution In The Value Of Plaintiffs' Annuities Do Not Clearly Demonstrate Article III Standing.

In concluding that the Amended Complaint satisfied Article III's injury-in-fact requirement, the Court relied on the Supreme Court's ruling in *TransUnion* and found that the alleged diminution in value of Plaintiffs' annuities, which allegedly resulted from an increased risk of future nonpayment, "is a traditional, 'monetary harm[]' that 'readily' qualifies as a concrete injury under Article III."  Order at 12 (citing *TransUnion*, 594 U.S. at 425).  Respectfully, the Weyerhaeuser Defendants submit that the Court's reliance on *TransUnion* was misplaced.

A diminution in value based on a future risk of default can be a form of present, monetary harm that gives rise to Article III standing, but only if that monetary harm is experienced by the plaintiff.  Notwithstanding the other bases on which the Court distinguished *Thole*, that ruling clearly established that losses to a defined benefit plan could not satisfy Article III standing requirements for a participant claim absent a showing that these losses caused a concrete harm *to the participant*.  *Supra* p. 14.  Similarly here, even assuming there is some "harm" associated with the hypothetical reduction in the value of Plaintiffs' annuities in the abstract, this cannot support Article III standing for *Plaintiffs* unless it results in a concrete

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 16
(No. 2:24-CV-02050-KKE)

harm to them.  Because Plaintiffs have no legal right to anything more than their monthly payments, and there is no dispute that Plaintiffs have been receiving these payments, they have yet to suffer any concrete harm.  *See Bueno*, 2025 WL 2719995, at *11 & n.2 (concluding that the alleged diminution in value of plaintiffs' annuities was an insufficient basis for standing, and "far from . . . a 'classic economic injury,'" because "[t]here is no suggestion that the PRT, or the transfer to Athene specifically, resulted in [plaintiffs] being entitled to or receiving any lesser amount of benefits than they were entitled to or receiving when those benefits were administered" by the ERISA plan sponsor).  *Supra* p. 14.  Any doubt about this is resolved by the legal and contractual prohibition on the transfer or sale of Plaintiffs' annuities.  *See* 29 U.S.C. § 1056(d)(1) (prohibiting assignment and alienation of pension benefits); I.R.S. Gen. Couns. Mem. 39882, 1992 WL 311700 (Oct. 26, 1992) (applying anti-assignment rule to annuities following a PRT); Ex. 1 at § 2.3 (prohibiting any transfers of annuities by Transferred Group).  As a result of this prohibition, any "harm" resulting from the alleged diminished value of the annuities cannot be one experienced by Plaintiffs, and thus cannot satisfy Article III's concrete harm requirement.  And since Plaintiffs have not alleged any other concrete harm that they suffered, they are left with nothing more than a potential harm that would result if, at some point in the future, their benefit payments actually ceased or were delayed.

   *NECA-IBEW Health & Welfare Fund v. Goldman Sachs*, 693 F.3d 145 (2d Cir. 2012) ("*NECA II*"), on which this Court previously relied in concluding there is a present harm based on the diminution in value of annuities (Order at 16-17), even absent an ability to sell them, is

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 17
(No. 2:24-CV-02050-KKE)

inapposite.[8]  The appeal in *NECA-IBEW* was of a district court ruling finding that the plaintiff retirement fund had failed to state a viable claim under the Securities Act of 1933 because the complaint, as originally pled, failed to allege that there was an existing market for the specific securities in question – mortgage backed securities ("MBS").  *NECA-IBEW Health & Welfare Fund v. Goldman Sachs*, 743 F. Supp. 2d 288, 291-92 (S.D.N.Y. 2010).  The district court's ruling was overturned in light of, among other things, a subsequent proposed amendment of the complaint (which the district court refused to consider) that alleged that there was a secondary market for the securities and that some of the securities had in fact been sold for a loss.  *NECA II*, 693 F.3d at 155-56.  The Article III issue that was addressed on appeal was whether the fund had constitutional standing to sue on behalf of a class of purchasers of the MBS's at issue.  In that context, the court stated that the diminution in the value of the securities constituted the requisite harm, but because the court had already determined that the securities were marketable (*see id.* at 155-56, 167), the decision is clearly distinguishable and, if anything, suggests that there would be no injury if (like the annuities here) the securities could not be sold.

In short, there is no legal basis for treating, as a *present* concrete harm, the alleged and speculative increased risk of default associated with the selection of Athene.  In the absence of any actual failure to pay annuities, the harm associated with this risk is properly addressed as a risk of future harm.

---

[8] The Court also found support for its ruling from the dictionary definition of the term "value," which it found to be distinguishable from "market price."  Order at 16.  But for the reasons stated in the text, the fact that the annuities may have a diminished value does not alter the fact that Plaintiffs have not suffered an Article III injury.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 18
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

**B.      Plaintiffs Have Failed To Allege A Risk Of Future Harm That Is "Certainly Impending."**

Once the proper standard is applied to Plaintiffs' allegations of threatened harm, it becomes apparent that Plaintiffs cannot satisfy the Article III requirements.  The Supreme Court recognizes that a plaintiff who has not suffered present harm may establish an Article III injury based on the risk or threat of future injury, but *only if* that threatened injury still satisfies the Article III "imminence" requirement.  In *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013), the Supreme Court explained that for a plaintiff to satisfy Article III's requirements this way, the threatened injury must be "certainly impending."  The Court also stated that the "allegations of *possible* future injury" do not satisfy the "certainly impending" requirement; nor does a threatened harm that "relies on a highly attenuated chain of possibilities."  *Id.* at 410 (emphasis added).

Consistent with *Clapper*, the Ninth Circuit and its district courts have held that allegations of hypothetical, possible, or even probable injury do not meet the *Clapper* standard; nor do allegations of threatened harm based on the hypothetical occurrence of a series of events. *See Wright v. SEIU Loc. 503*, 48 F.4th 1112, 1118-20 (9th Cir. 2022) (holding that plaintiff's allegations of future harm were "too speculative to confer standing" because they rested on "a 'highly attenuated chain' of inferences"); *Tetra Tech EC, Inc., v. EPA,* No. 20-cv-8100, 2022 WL 4372073, at *2 (N.D. Cal. Sept. 21, 2022) (granting motion to dismiss for lack of Article III standing where plaintiff alleged it was "reasonably probable," but not "likely," that it would suffer alleged future harm); *Voss v. Sutardja*, No. 14-cv-1581-LHK, 2015 WL 349444, at *11-12 (N.D. Cal. Jan. 26, 2015) (granting motion to dismiss for lack of standing where "claimed injury would, as of now, be the product of a series of hypotheticals" and therefore was "[f]ar from being '*certainly* impending,'" and instead "too speculative for Article III purposes").

Applying these principles, the district court in *Camire* dismissed on standing grounds a

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 19
(No. 2:24-CV-02050-KKE)

complaint which, like the SAC, alleged a risk of future loss of or reduction in plaintiffs' benefits because those benefits were transferred to Athene pursuant to a PRT. *Camire v. Alcoa USA Corp.*, No. 24-cv-1062, 2025 WL 947526, at *6-7 (D.D.C. Mar. 28, 2025). The court found the complaint's allegations insufficient for two reasons: first, the allegations were "comparative – focusing on why Athene is riskier than other annuity providers . . . rather than absolute." *Id.* at *7. Second, applying *Clapper's* instruction that a threatened injury does not satisfy Article III if it "relies on a highly attenuated chain of possibilities," the court concluded that several distinct events would need to occur before plaintiffs "could ever experience the harm they are concerned about":

> First, Athene would need to fail, which means that it would have to (1) "suffer[] catastrophic losses;" (2) "fail[] to sufficiently mitigate any such losses to preserve Plaintiffs' benefits;" and (3) fail "to secure alternative funding sources." . . . Then, Plaintiffs would need to have benefits that actually exceed the amount that their SGAs cover, which is over $250,000 in most states. . . . Finally, Athene's accounts would need to be underfunded or insufficient to cover participants' losses in the event of failure. . . . Because Plaintiffs' allegations do not plausibly suggest that this "highly attenuated chain of possibilities" is likely, *Clapper*, 568 U.S. at 410, the court cannot conclude that any harm to Plaintiffs is "certainly impending."

*Id.*

Although the SAC contains some additional allegations not addressed in *Camire*, these allegations do not alter the conclusion that Plaintiffs have failed to satisfy the Article III requirements. *See also Bueno*, 2025 WL 2719995, at *4-5, *10 (dismissing amended complaint for lack of standing, despite its inclusion of factual allegations not raised or addressed in *Camire*).

**1.      The SAC Fails To Plausibly Allege A Certainly Impending Risk <u>That Athene Will Default And Fail To Pay Benefits</u>.**

First, the SAC fails to plausibly allege an Article III injury-in-fact based on allegations

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 20
(No. 2:24-CV-02050-KKE)

that Athene is "substantially likely to fail in the near future." SAC ¶ 9. Like the complaint in *Camire*, many of the SAC's allegations regarding the risk of default are based on comparisons to other "traditional" annuity providers. *See, e.g., id.* ¶¶ 69-76, 88-92 (allegations regarding, for example, Athene's surplus-to liability ratio and use of Bermuda-based reinsurers). These allegations do not plausibly show that the threat of Athene's failure is "certainly impending," and thus do not satisfy the *Clapper* standard. *Camire*, 2025 WL 947526, at *7, *supra* p. 20; *Bueno*, 2025 WL 2719995, at *18 (holding that plaintiffs in PRT case failed to adequately allege standing because "[a]lthough Plaintiffs identify a myriad of practices that might make Athene riskier than some other annuity providers, such fact does not make default a substantial risk from a constitutional standpoint (which . . . requires that the risk essentially be 'certainly impending')"); *Schoen v. ATI, Inc.*, No. 24-cv-1109, 2025 WL 2970339, at *7 & n.7 (W.D. Pa. Oct. 7, 2025) (reaching same conclusion as *Bueno* because "[p]laintiffs do no more than plead facts differentiating Athene from other viable annuity providers").

The relatively few allegations in the SAC that are not comparative in nature fare no better because they are too speculative and context-free to satisfy the plausibility requirement. *See Clapper*, 568 U.S. at 401 (holding that plaintiffs lacked standing because their "theory of future injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending'"). For example, the SAC alleges that a high percentage of Athene's investments are in Apollo-affiliated companies, several of which allegedly have failed (*see, e.g.,* SAC ¶¶ 82-84), but it provides no information about the circumstances in which these companies defaulted, or of any similarities between them and other companies in which Athene is invested; nor does it allege anything about the impact of the failed companies on *Athene's* financial well-being. Likewise, Plaintiffs' allegations regarding four recently "failed" insurers (*supra* p. 7) do not plausibly give rise to an inference that *Athene* is at risk of default, since the SAC provides little information about the nature or extent of these insurers' alleged financial

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 21
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

decline, and makes no effort to establish any similarity between the insurers and Athene.

The allegations in the SAC regarding recent events impacting Athene or Apollo's financial well-being fare no better. *See, e.g.,* SAC ¶¶ 79, 85, 109-16. As a threshold matter, these assertions should be ignored because they post-date the December 2024 filing of the original complaint. *See, e.g., Carney v. Adams*, 592 U.S. 53, 59-60 (2020) (Plaintiffs "bear[] the burden of establishing standing as of the time [they] *brought this lawsuit*") (emphasis added); *Moore v. Urquhart*, 899 F.3d 1094, 1099 (9th Cir. 2018) (same). Secondly, insofar as they are based on recent changes in the economic environment, such as interest rate and stock market movements, they are "inherently speculative." *In re Merrill Lynch & Co*, 273 F. Supp. 2d 351, 376–77 (S.D.N.Y. 2003), *aff'd*, 396 F.3d 161 (2d Cir. 2005); *see also SEC v. First City Fin. Corp.*, 890 F.2d 1215, 1231 (D.C. Cir. 1989) (even with "sophisticated econometric modelling, predicting stock market responses to alternative variables is . . . at best speculative"). Third, whether the allegations are directed at Apollo or Athene's financial circumstances, they do not suggest an impending risk that Athene will default on its payment obligations to Plaintiffs. As the court concluded in *Bueno,* one cannot "reconcil[e] a major credit rating agency's finding that Athene has a five-percent risk of default over a twenty-year period with a finding that it poses a substantial risk of default in a manner that would imminently prevent Plaintiffs from receiving their annuity payments." 2025 WL 2719995, at *18; *see also Int'l Partners for Ethical Care Inc. v. Ferguson*, 146 F.4th 841, 852 (9th Cir. 2025) ("Although probabilistic harm can create standing, it does not replace the foundational rule that a future injury must be imminent in order to satisfy the injury-in-fact requirement."); *Beck v. McDonald*, 848 F.3d 262, 275-76 (4th Cir. 2017) (agreeing with district court that allegation of 33 percent chance plaintiffs would suffer future identity theft following theft of device and files containing personal information failed to satisfy "certainly impending" standard or, alternatively, "substantial risk of harm" standard).

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 22
(No. 2:24-CV-02050-KKE)

At most, the SAC asserts a vague risk that the assets in Athene's Dedicated Account will diminish in value, thus causing them to be worth less than the liabilities associated with the Transferred Group's annuities. *See* SAC ¶¶ 131, 134. The only purported grounds for that assertion are unsupported allegations that Athene "placed the much riskier assets of its general account in the Weyerhaeuser [dedicated] account," and that the projected returns on these assets are overstated. *See id.* ¶¶ 163-68. These speculative and implausible allegations do not satisfy the pleading requirements. *See Chan v. Prudential Ins. Co. of Am.*, No. 13-cv-524, 2013 WL 4511437, at *1 (W.D. Wash. Aug. 23, 2013) (confirming that "[i]f the plaintiff 'ha[s] not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed'"). In any event, the mere supposition that the assets in the Dedicated Account may one day prove to be less than the value of its liabilities can hardly satisfy the "certainly impending" standard, particularly when a series of additional events still would have to materialize in order for Plaintiffs' annuities to be at risk, including: (i) Athene's general account is unable to serve as a backstop to the Dedicated Account, notwithstanding the requirement in the GAC that it do so; (ii) Athene's hypothetical mismanagement of the Dedicated and general accounts somehow goes unnoticed by state insurance regulators; (iii) Athene's reinsurers fail; (iv) Athene fails to protect Plaintiffs' benefits by securing alternative funding; *and* (v) the SGAs fail to provide back-up benefit payments to annuitants. This is precisely the type of "highly attenuated chain of possibilities" that the Supreme Court in *Clapper* found to be fatal to an assertion of Article III standing. *Clapper*, 568 U.S. at 410-11; *see Camire*, 2025 WL 947526, at *7, *supra* pp. 19-20.

### 2. The SAC Fails To Plausibly Allege A Substantial Likelihood Of Regulatory Action That Interrupts Benefit Payments.

Plaintiffs separately seek to satisfy Article III by contending that unknown government representatives will place Athene into rehabilitation or conservation even before it defaults.

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 23
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000

*See, e.g.,* SAC ¶¶ 10-11, 133.  Insofar as this theory of Article III harm is predicated on the same allegations of Athene suffering a financial decline, it fails for the reasons previously stated.  But even if there were a substantial risk that Athene would fall into financial decline, Plaintiffs would still have failed to plausibly allege a certainly impending risk of government interference that will endanger their annuities.  As *Clapper* recognizes, plaintiffs cannot adequately allege Article III standing by relying on "speculation about 'the unfettered choices made by independent actors not before the courts.'"  *Clapper*, 568 U.S. at 414 & n.5; *see also Wright*, 48 F.4th at 1119-20 (holding that alleged future harm based on "inferences in which independent actors must act in a certain manner . . . rest[ed] on nothing more than rank speculation" and was not "certainly impending" (citations omitted)).

Plaintiffs do not allege that any government actors are currently contemplating regulatory action or are investigating Athene in connection with this PRT.  They merely make a conclusory assertion that Athene "will likely be subject to regulatory actions."  SAC ¶ 10.  Furthermore, the forms of intervention identified in the SAC, rehabilitation and conservation, are severe remedies that rarely are invoked.  This is evident from the examples cited in the SAC of other failed insurers.  In each case, the insurer was put into rehabilitation only after it had collapsed or was on the brink of failure.  *See id.* ¶ 145 (contending 777 Re had ceased insurance activities and dissolved); ¶¶ 141-42 (contending Columbian Mutual was put into rehabilitation months after its subsidiary, Columbian Life, had collapsed); ¶ 143 (contending state regulators intervened with PHL Variable only after insurer was facing a crisis and "attempted to stabilize itself").  In Iowa and New York, where the relevant Athene insurers are located, the government can apply for rehabilitation or conservation only by showing that an insurer has engaged in specific prohibited conduct, willfully violated the law, or is in a "condition that the further transaction of business" would be "financially hazardous to its policyholders, creditors, or the public."  Iowa Code § 507C.12(1); N.Y. Ins. Law § 3402.  The SAC does not allege that any of

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 24
(No. 2:24-CV-02050-KKE)

these conditions have been satisfied.

Finally, Plaintiffs fail to offer any nonconclusory allegations establishing why, even if regulatory action were taken, it would cause a delay or cessation in their benefit payments. *See, e.g.*, SAC ¶¶ 10-11, 108-110, 138-147. Of the four recently-failed insurers discussed in the SAC, only one (PHL Variable) was subject to a "moratorium" on certain benefits payments. *Id.* ¶ 143. This "moratorium" does not affect payments to policyholders who were receiving annuity payments when the moratorium was implemented,[9] and the SAC contains no specific allegations that any future action against the insurer will change this. Thus, taking the SAC at face value, even if state regulators took action against Athene, Plaintiffs' forecast that such action would impact Plaintiffs' benefits is entirely speculative and fails to meet both the *Clapper* standard and generally-applicable pleading rules. *See Bueno*, 2025 WL 2719995, at *17 (granting motion to dismiss for lack of Article III standing where similar allegations did not "create a substantial risk of default that will specifically render [Athene] unable to pay Plaintiffs' promised benefits").

In short, Plaintiffs allegations regarding the risks posed by Athene's financial condition fall well short of the Supreme Court's Article III requirement that any such risk be "certainly impending."

### C.    Plaintiffs' Other Purported Grounds For Satisfying Article III's Standing Requirements Are Insufficient.

In addition to the previously-addressed allegations of harm, Plaintiffs contend that they have suffered intangible harm due to (i) the loss of ERISA coverage and (ii) Defendants' alleged ERISA violations. In its prior ruling, this Court already recognized that the alleged loss of ERISA coverage does not constitute a basis for satisfying the Article III standing

---

[9] portal.ct.gov/cid/-/media/cid/1_legal/phl-general-faqs-2-6-2026.pdf?rev=c46c0e950fd54674bf549e7c33fedbfb&hash=94BD6C5D031292E9AB739F0829EC1EF3

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 25
(No. 2:24-CV-02050-KKE)

requirements because the loss of coverage is attributable to a settlor decision authorized by the statute.  Order at 10-11.  The second argument fares no better.  The plaintiffs in *Thole* similarly alleged a violation of ERISA's statutory fiduciary obligations, but the Supreme Court concluded that this did not change the calculus because "'Article III standing requires a concrete injury even in the context of a statutory violation.'" 590 U.S. at 544 (quoting *Spokeo*, 578 U.S. at 341); *see also TransUnion*, 594 U.S. at 442 (alleged statutory violation without cognizable "adverse effects" does not satisfy Article III).

Insofar as Plaintiffs contend that they need not meet this requirement because they seek equitable relief—specifically, disgorgement—this position is foreclosed by *Thole* (and Ninth Circuit precedent) as well.  *See Thole*, 590 U.S. at 544 (rejecting argument that plaintiffs had standing to bring claim under ERISA Section 502(a)(3) merely because "ERISA affords . . . a general cause of action to sue for . . . equitable relief"); *see also Winsor*, 62 F.4th at 527-29 (rejecting plaintiffs' argument that because they sought equitable remedies of disgorgement and surcharge, they need not allege "tangible out-of-pocket loss"); *Blair v. Assurance IQ LLC*, No. 23-cv-16-KKE, 2023 WL 6622415, at *4 (W.D. Wash. Oct. 11, 2023) ("The fact that a statute . . . provides for injunctive relief does not automatically convey standing to seek such relief. . . . [A] plaintiff must still show that his injury is concrete and likely to be redressed by the relief he seeks.").

In short, for the reasons explained above, Plaintiffs lack Article III standing.

## **CONCLUSION**

For the foregoing reasons, the Court should grant the Weyerhaeuser Defendants' Motion and dismiss the Second Amended Complaint with prejudice.

***

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 26
(No. 2:24-CV-02050-KKE)

I certify that this memorandum contains 8,388 words, in compliance with the Local Civil Rules.

June 8, 2026

Respectfully submitted,

By:  s/ *Kathleen M. O'Sullivan*
Kathleen M. O'Sullivan, WSBA No. 27850
Benjamin Lester, WSBA No. 62839
**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3099
Telephone: +1.206.359.8000
Facsimile: +1.206.359.9000
KOSullivan@perkinscoie.com
BLester@perkinscoie.com

Myron D. Rumeld (*pro hac vice*)
Joseph E. Clark (*pro hac vice*)
**Proskauer Rose LLP**
Eleven Times Square
New York, NY 10036-8299
Telephone: 212-969-3000
mrumeld@proskauer.com
jclark@proskauer.com

Attorneys for Defendants Weyerhaeuser Company, Weyerhaeuser Company Annuity Committee, and Weyerhaeuser Company Administrative Committee

WEYERHAEUSER DEFENDANTS'
MOTION TO DISMISS – 27
(No. 2:24-CV-02050-KKE)

**Perkins Coie LLP**
1301 Second Avenue, Suite 4200
Seattle, Washington 98101-3804
Phone: +1.206.359.8000
Fax: +1.206.359.9000